1  JASON D. RUSSELL (SBN 169219)
   jason.russell@skadden.com
2  WINSTON P. HSIAO (SBN 273638)
   winston.hsiao@skadden.com
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
4  Los Angeles, California 90071-3144
   Telephone:  (213) 687-5000
5  Facsimile:   (213) 687-5600

6  JAY B. KASNER (admitted *pro hac vice*)
   ROBERT A. FUMERTON (admitted *pro hac vice*)
7  MICHAEL W. RESTEY (admitted *pro hac vice*)
   Four Times Square
8  New York, New York 10036
   Telephone:  (212) 735-3000
9  Facsimile:   (212) 735-2000

10 *Attorneys for Defendants*
   *El Pollo Loco Holdings, Inc., Trimaran*
11 *Capital Partners, Trimaran Pollo Partners,*
   *L.L.C., Freeman Spogli & Co., Stephen J.*
12 *Sather, Laurance Roberts and Edward J.*
   *Valle*

13                    UNITED STATES DISTRICT COURT

14                   CENTRAL DISTRICT OF CALIFORNIA

15                           SOUTHERN DIVISION

16

17 DANIEL TUROCY, et al., Individually   )  Case No. 8:15-cv-01343-DOC-KES
   and on Behalf of All Others Similarly )  (**Consolidated**)
18 Situated,                             )
                                         )  DECLARATION OF JASON D.
19                          Plaintiffs,  )  RUSSELL IN SUPPORT OF
                                         )  DEFENDANTS' MEMORANDUM OF
20              vs.                      )  LAW IN OPPOSITION TO LEAD
                                         )  PLAINTIFFS' MOTION FOR CLASS
21 EL POLLO LOCO HOLDINGS, INC.,         )  CERTIFICATION
   et al.,                               )
22                                       )  Date:   May 14, 2018
                          Defendants.    )  Time:   8:30 a.m.
23                                       )  Judge:  Hon. David O. Carter
                                         )  Ctrm.:  9D
24 _____)

25

26  REDACTED VERSION
    OF DOCUMENT
27  PROPOSED TO BE
    FILED UNDER SEAL
28

## <u>DECLARATION OF JASON D. RUSSELL</u>

1.      I am an attorney admitted to practice before the courts of the State of California and have been admitted to this Court.  I am a partner in the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden Arps"), counsel for Defendants El Pollo Loco Holdings, Inc. ("EPL" or the "Company"), Trimaran Capital Partners, Trimaran Pollo Partners, L.L.C., Freeman Spogli & Co., Stephen J. Sather, Laurance Roberts and Edward J. Valle (collectively, the "Defendants").  I submit this declaration in support of Defendants' Memorandum of Law in Opposition to Lead Plaintiffs' Motion for Class Certification.  I make this declaration based on my own personal knowledge, and if called upon to do so, could and would testify competently thereto.

2.      Attached as **Exhibit 1** is a true and correct copy of excerpts from the transcript of the deposition of Dr. Richard J. Levy taken January 15, 2018.

3.      Attached as **Exhibit 2** is a true and correct copy of excerpts from the transcript of the deposition of Ron Huston taken January 26, 2018.

4.      Attached as **Exhibit 3** is a true and correct copy excerpts from the transcript of the deposition of Professor Steven Feinstein taken February 2, 2018.

5.      Attached as **Exhibit 4** is a true and correct copy of excerpts from the transcript of the deposition of Peter Kim taken February 13, 2018.

6.      Attached as **Exhibit 5** is a true and correct copy of the Report of Daniel R. Fischel dated March 8, 2018.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on March 8, 2018 in Los Angeles, California

By: _____*/s/ Jason D. Russell*_____
                                Jason D. Russell

1

# Exhibit 1

```
 1   UNITED STATES DISTRICT COURT
 2   CENTRAL DISTRICT OF CALIFORNIA
 3   SOUTHERN DIVISION
     ------------------------------------------
 4   DANIEL TUROCY, et al., Individually
 5   and on Behalf of All Others Similarly
     Situated,
 6                           Plaintiffs,
 7           -against-
     EL POLLO LOCO HOLDINGS, INC.,
 8   et al.,
 9                           Defendants.
10   Case No. 8:15-cv-01343-DOC-KES
     ------------------------------------------
11
12               January 25, 2018
                  9:09 a.m.
13
14              CONFIDENTIAL
15
16      VIDEOTAPED DEPOSITION of DR.RICHARD J.
17   LEVY, taken by Defendants, pursuant to
18   Notice, held at the offices of SKADDEN,
19   ARPS, SLATE, MEAGHER & FLOM, LLP, Four
20   Times Square, New York, New York before
21   Wayne Hock, a Notary Public of the
22   State of New York.
23
24   JOB No. 2783112
25   PAGES 1 - 221
```

Page 1

```
 1    A P P E A R A N C E S:
 2
         ROBBINS GELLER RUDMAN & DOWD LLP
 3       Attorneys for Plaintiffs
                 655 West Broadway
 4               San Diego, California 92101
 5       BY:     RYAN LLORENS, ESQ.
                 ryanl@rgrd.com
 6               KEVIN A. LAVELLE, ESQ.
                 klavelle@rgrd.com
 7
 8
         SKADDEN, ARPS, SLATE, MEAGHER &
 9       FLOM, LLP
         Attorneys for Defendants
10               Four Times Square
                 New York, New York 10036
11
         BY:     ROBERT A. FUMERTON, ESQ.
12               robert.fumerton@skadden.com
                 MICHAEL W. RESTEY, JR., ESQ.
13               michael.restey@skadden.com
14
15       ALSO PRESENT:
16
                 TOM DEVINE, Videographer
17               ERIC RIEDEL
18
19
20
21
22
23
24
25
```

                                              Page 2

Exhbiit 1
Page 3

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER: Good | 09:08:39 |
| 2 | morning.  We are going on the | 09:08:39 |
| 3 | record at 9:09 a.m. on January 25, | 09:08:44 |
| 4 | 2018. | 09:08:48 |
| 5 | Please note that the | 09:08:49 |
| 6 | microphones are sensitive and may | 09:08:51 |
| 7 | pick up whispering, private | 09:08:54 |
| 8 | conversations, and cellular | 09:08:55 |
| 9 | interference. | 09:08:58 |
| 10 | Please turn off all cell | 09:08:58 |
| 11 | phones or place them away from the | 09:09:01 |
| 12 | microphones as they can interfere | 09:09:02 |
| 13 | with the deposition audio. | 09:09:04 |
| 14 | Audio and video recording | 09:09:05 |
| 15 | will continue to take place unless | 09:09:06 |
| 16 | all parties agree to go off the | 09:09:09 |
| 17 | record. | 09:09:11 |
| 18 | This is media unit one of the | 09:09:11 |
| 19 | video recorded deposition of | 09:09:11 |
| 20 | Richard J. Levy in the matter of | 09:09:13 |
| 21 | Daniel Turocy V. El Pollo Loco | 09:09:14 |
| 22 | Holdings, Inc. filed in the U.S. | 09:09:18 |
| 23 | District Court, the Central | 09:09:21 |
| 24 | District of California, case number | 09:09:24 |
| 25 | 8:15-CV-01343-DOC-KES. | 09:09:25 |

Page 5

Exhbiit 1
Page 4

CONFIDENTIAL

```
 1              This deposition is being held        09:09:34

 2        at the offices of Skadden, Arps,          09:09:36

 3        Slate, Meagher and Flom, LLP             09:09:40

 4        located at 4 Times Square, New           09:09:41

 5        York, New York 10036.                    09:09:44

 6              My name is Thomas Devine from       09:09:46

 7        the firm Veritext California and         09:09:49

 8        I'm the videographer.  The court         09:09:52

 9        reporter is Wayne Hock also from         09:09:54

10        Veritext California.                     09:09:56

11              I am not authorized to             09:09:58

12        administer an oath, I am not             09:10:01

13        related to any party in this             09:10:01

14        action, nor am I financially             09:10:02

15        interested in the outcome.               09:10:03

16              Counsel and all present in         09:10:05

17        the room will now state their            09:10:07

18        appearances and affiliations for        09:10:09

19        the record.  If there are any            09:10:10

20        objections to the proceedings,           09:10:10

21        please state them at the time of        09:10:10

22        your appearance beginning with the      09:10:12

23        noticing attorney.                       09:10:13

24        MR. FUMERTON: Robert                     09:10:16

25        Fumerton, Mike Restey, Eric Riedel,     09:10:18
```

Page 6

Exhbiit 1
Page 5

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Skadden Arps, on behalf of the | 09:10:22 |
| 2 | defendants. | 09:10:24 |
| 3 | MR. LLORENS: Ryan Llorens, | 09:10:24 |
| 4 | Kevin Lavelle, Robbins Geller on | 09:10:26 |
| 5 | behalf of the witness. | 09:10:28 |
| 6 | THE VIDEOGRAPHER: Thank you. | 09:10:30 |
| 7 | Wayne, would you please swear | 09:10:30 |
| 8 | in the witness. | 09:10:32 |
| 9 | R I C H A R D   J.   L E V Y, having | 09:10:41 |
| 10 | been first duly sworn by a | 09:10:41 |
| 11 | Notary Public of the State of | 09:10:41 |
| 12 | New York, upon being examined, | 09:10:41 |
| 13 | testified as follows: | 09:10:41 |
| 14 | EXAMINATION BY | 09:10:41 |
| 15 | MR. FUMERTON: | 09:10:42 |
| 16 | Q.   Good morning, Dr. Levy. | 09:10:42 |
| 17 | A.   Good morning. | 09:10:45 |
| 18 | Q.   Please state your name and | 09:10:46 |
| 19 | address for the record. | 09:10:48 |
| 20 | A.   Sure. | 09:10:49 |
| 21 | Richard J. Levy, M.D., ███ | 09:10:52 |
| 22 | ████████████████████████ New | 09:10:52 |
| 23 | York, New York 10069. | 09:10:54 |
| 24 | Q.   Now, Dr. Levy, you understand | 09:10:56 |
| 25 | you've sued a number of defendants in | 09:10:58 |

Page 7

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL

```
 1    deposition take place in the Central          09:27:07

 2    District of California where you filed        09:27:10

 3    suit?                                         09:27:11

 4         A.    I do not know that.               09:27:11

 5         Q.    Counsel never made you aware       09:27:12

 6    of that request?                              09:27:19

 7         A.    No, sir.                           09:27:19

 8              MR. LLORENS: Objection.  It        09:27:20

 9         misstates the facts.                     09:27:25

10         Q.    Would it have been                 09:27:27

11    inconvenient for you to travel to             09:27:31

12    California to take this deposition?           09:27:32

13         A.    I have a pretty busy               09:27:34

14    schedule.  With adequate lead time and        09:27:42

15    with coordination with my attorneys, I        09:27:44

16    can certainly be available, but it has        09:27:49

17    to be with adequate lead time and with        09:27:52

18    coordination with them.                       09:27:55

19         Q.    And is it fair to say that         09:27:56

20    your availability to travel to --             09:27:57

21              MR. FUMERTON: Strike that.          09:27:59

22         Q.    Is it fair to say with all of      09:28:00

23    your work responsibilities your ability       09:28:03

24    to travel to California is limited?           09:28:04

25         A.    I wouldn't use that                09:28:06
```

Page 28

Exhbit 1
Page 7

| | | |
|---|---|---|
| 1 | terminology.  I would say it is -- my | 09:28:07 |
| 2 | schedule and schedule changes are | 09:28:13 |
| 3 | feasible but I'm sure, as with you, it | 09:28:15 |
| 4 | requires coordination of scheduling | 09:28:20 |
| 5 | with enough lead time. | 09:28:22 |
| 6 | Q.    What would adequate lead time | 09:28:23 |
| 7 | be to schedule a deposition in | 09:28:27 |
| 8 | California? | 09:28:28 |
| 9 | A.    Especially with this time of | 09:28:29 |
| 10 | year with the academic meetings, the | 09:28:31 |
| 11 | national meetings I go to in addition | 09:28:34 |
| 12 | to my clinical responsibilities, it | 09:28:36 |
| 13 | could take up to six months to actually | 09:28:38 |
| 14 | schedule a proper amount of time to | 09:28:40 |
| 15 | travel to the west coast. | 09:28:43 |
| 16 | Q.    Dr. Levy, can you generally | 09:28:54 |
| 17 | describe your educational background | 09:28:58 |
| 18 | starting with any secondary education? | 09:29:00 |
| 19 | A.    Sure. | 09:29:03 |
| 20 | I went to undergraduate | 09:29:04 |
| 21 | school in SUNY Binghampton, achieved a | 09:29:06 |
| 22 | BS in biology and a minor in biological | 09:29:10 |
| 23 | anthropology and then went and | 09:29:10 |
| 24 | completed my medical degree at New York | 09:29:16 |
| 25 | Medical College in Valhalla.  And then | 09:29:19 |

Page 29

Exhbiit 1
Page 8

| | | |
|---|---|---|
| 1 | I subsequently trained in pediatrics | 09:29:22 |
| 2 | and Board certified in pediatrics at | 09:29:22 |
| 3 | the Children's Hospital of | 09:29:24 |
| 4 | Philadelphia; anesthesiology, | 09:29:26 |
| 5 | anesthesia residency at the University | 09:29:28 |
| 6 | of Pennsylvania, Board certified in | 09:29:30 |
| 7 | that.  I then completed a pediatric | 09:29:31 |
| 8 | critical care medicine fellowship, | 09:29:35 |
| 9 | Board certified in that, at the | 09:29:36 |
| 10 | Children's Hospital of Philadelphia. | 09:29:37 |
| 11 | I then subsequently completed | 09:29:39 |
| 12 | pediatric critical care fellowships, | 09:29:41 |
| 13 | pediatric anesthesia fellowships, a T32 | 09:29:43 |
| 14 | research fellowship funded by the NIH | 09:29:46 |
| 15 | at UPENN in Children's Hospital of | 09:29:49 |
| 16 | Philadelphia.  And I'm Board certified | 09:29:51 |
| 17 | in pediatric anesthesiology as well. | 09:29:52 |
| 18 | Q.    Where are you currently | 09:29:58 |
| 19 | employed? | 09:29:59 |
| 20 | A.    I'm currently at Columbia | 09:30:00 |
| 21 | University Medical Center New York | 09:30:00 |
| 22 | Presbyterian Hospital System in New | 09:30:01 |
| 23 | York. | 09:30:04 |
| 24 | Q.    So you teach at Columbia | 09:30:04 |
| 25 | Medical Center? | 09:30:09 |

Page 30

Exhbiit 1
Page 9

CONFIDENTIAL

```
 1        A.    That's correct.  I also care        09:30:09

 2   for patients in the pediatric operating        09:30:11

 3   room and the division of pediatric             09:30:13

 4   anesthesiology in the department of            09:30:18

 5   anesthesia at Columbia University.             09:30:19

 6        Q.    And then you practice -- in          09:30:20

 7   addition to practicing at that hospital        09:30:23

 8   you practice at New York Presbyterian          09:30:25

 9   Morgan Stanley Children's Hospital?            09:30:29

10        A.    It's the same system.  It's         09:30:32

11   confusing but it's the same system.            09:30:33

12   It's all one hospital.                         09:30:33

13        Q.    How many hours a week do you         09:30:35

14   spend on your teaching activities?             09:30:38

15        A.    So teaching is incorporated         09:30:41

16   in what we do.  So in an academic              09:30:43

17   center, when you're in the operating           09:30:46

18   room, you're teaching fellows and              09:30:48

19   residents, so that's considered                09:30:50

20   teaching.  We also give formal didactic        09:30:53

21   to the fellows, the residents, and the         09:30:57

22   medical students.  So it's hard to             09:30:59

23   quantify hours but I can tell you that         09:31:02

24   it is a significant commitment.  I             09:31:04

25   would probably more quantify it in             09:31:07
```

Page 31

Exhbiit 1
Page 10

CONFIDENTIAL

```
 1    terms of percentage of time and it can      09:31:09

 2    be anywhere between twenty to fifty         09:31:12

 3    percent depending upon the day              09:31:14

 4    depending upon the week.                    09:31:16

 5          I also run an NIH-funded             09:31:17

 6    basic science laboratory which I spend      09:31:20

 7    about seventy percent of my time doing      09:31:23

 8    research and there is teaching that is      09:31:25

 9    involved in that as well with residents     09:31:27

10    and fellows.                                09:31:30

11    Q.    And then what percentage of          09:31:33

12    your time would you say you're actually     09:31:36

13    practicing medicine as opposed to           09:31:38

14    teaching to the extent you can divide       09:31:39

15    those up?                                   09:31:42

16    A.    I'm assuming you're asking           09:31:43

17    about caring for patients directly?         09:31:45

18    Q.    Correct.                             09:31:47

19    A.    So currently it is about             09:31:48

20    twenty percent of my time is actually       09:31:49

21    caring for patients directly.               09:31:52

22    Q.    So twenty percent caring for         09:31:58

23    patients directly; is that correct?        09:32:00

24    A.    That's correct.                      09:32:03

25    Q.    Twenty to fifty percent of           09:32:03
```

Page 32

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | your teaching activities which include | 09:32:07 |
| 2 | the clinical activities you've | 09:32:09 |
| 3 | described? | 09:32:12 |
| 4 | A.    Correct. | 09:32:12 |
| 5 | Q.    And then what constitutes the | 09:32:13 |
| 6 | remainder? | 09:32:17 |
| 7 | A.    So the remainder actually | 09:32:18 |
| 8 | would be under the umbrella of research | 09:32:21 |
| 9 | and what research entails is not only | 09:32:24 |
| 10 | doing experiments at the bench -- we | 09:32:26 |
| 11 | work with mice and mouse pups -- but | 09:32:30 |
| 12 | it's also writing, reading literature, | 09:32:32 |
| 13 | scientific writing of abstracts, | 09:32:36 |
| 14 | manuscripts, grants which can take an | 09:32:38 |
| 15 | exorbitant amount of time.  In reality, | 09:32:41 |
| 16 | it is a 24/7 proposition to write when | 09:32:45 |
| 17 | you're doing basic science research. | 09:32:48 |
| 18 | And so I'm doing that pretty much every | 09:32:51 |
| 19 | day.  But on paper, that's probably | 09:32:53 |
| 20 | about seventy-five percent of my time. | 09:32:57 |
| 21 | So the teaching is throughout and | 09:32:59 |
| 22 | incorporated. | 09:33:01 |
| 23 | Q.    So you've given us a rough | 09:33:04 |
| 24 | breakdown of your time. | 09:33:07 |
| 25 | How much time -- | 09:33:08 |

Page 33

Exhbiit 1
Page 12

CONFIDENTIAL

```
 1              MR. FUMERTON: Strike that.           09:33:09
 2       Q.    You've given us a rough              09:33:09
 3   breakdown of how you spend your time.          09:33:13
 4              How many hours a week do you         09:33:14
 5   typically work on all of these                 09:33:17
 6   different activities?                          09:33:19
 7       A.    It's quite variable.  When           09:33:19
 8   I'm in the operating room even though          09:33:21
 9   that's on paper twenty percent, the day        09:33:24
10   starts about 7:00 in the morning and           09:33:27
11   can end the next day.  If I'm on call          09:33:29
12   doing a heart transplant, for example,         09:33:33
13   I've had times where I've worked               09:33:35
14   twenty-four hours straight and that's          09:33:37
15   considered twenty percent of that week.        09:33:39
16   There are other times where the day            09:33:41
17   ends at 7:00 or 8:00 at night in the           09:33:43
18   operating room.  So it's quite                 09:33:45
19   variable.  It depends on the workload          09:33:48
20   and the cases that are -- that come in         09:33:49
21   in addition to my call                         09:33:53
22   responsibilities.                              09:33:54
23              The other days are a little         09:33:55
24   bit more predictable and manageable.           09:33:57
25   In the lab and in my office hours where        09:34:01
```

Page 34

Exhbiit 1
Page 13

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | I'm doing writing and scientific | 09:34:03 |
| 2 | reading, usually the day starts around | 09:34:07 |
| 3 | 8:30, 9:00 in the morning and I usually | 09:34:14 |
| 4 | finish around 4:00 or 5:00 but then | 09:34:14 |
| 5 | continue to do some work at night at | 09:34:17 |
| 6 | home, so it's quite variable and it's a | 09:34:18 |
| 7 | day-to-day. | 09:34:21 |
| 8 | Q.    If you had to estimate an | 09:34:22 |
| 9 | average number of hours you work during | 09:34:24 |
| 10 | the week, what would you say? | 09:34:26 |
| 11 | A.    I couldn't give you an actual | 09:34:27 |
| 12 | number because, as I said, when you're | 09:34:30 |
| 13 | doing research, it is a constant -- | 09:34:32 |
| 14 | it's constant work. | 09:34:35 |
| 15 | Q.    Sure. | 09:34:37 |
| 16 | And I'm not asking for a | 09:34:38 |
| 17 | specific type of work. | 09:34:39 |
| 18 | All of these activities that | 09:34:40 |
| 19 | you do, if you had to estimate a range | 09:34:42 |
| 20 | of hours per week on average -- | 09:34:45 |
| 21 | obviously some weeks will be more, some | 09:34:48 |
| 22 | weeks will be less -- what would you | 09:34:50 |
| 23 | estimate? | 09:34:53 |
| 24 | A.    On paper they will tell you | 09:34:54 |
| 25 | it's a forty-hour workweek but I can | 09:34:56 |

Page 35

Exhbiit 1
Page 14

CONFIDENTIAL

```
 1    tell you it's not, so it's going to be        09:35:00
 2    more than that.  And I couldn't give          09:35:02
 3    you an actual number because the only         09:35:03
 4    thing that I could really clock in and        09:35:05
 5    clock out the times that I worked is in       09:35:09
 6    the operating room.                           09:35:12
 7        Q.    Over fifty hours would you          09:35:12
 8    estimate?                                     09:35:12
 9        A.    Much more than that.                09:35:14
10        Q.    Over sixty hours?                   09:35:14
11        A.    It's more.  Because when I'm        09:35:15
12    at home reviewing the literature and         09:35:17
13    writing an abstract, that's work.  It's      09:35:19
14    not digging a hole for fixing the roads      09:35:22
15    but it's work, and so it's hard to           09:35:27
16    quantify.  It varies day to day, week        09:35:32
17    to week.  And weekends are included.         09:35:34
18        Q.    But it's fair to say your          09:35:36
19    schedule's very unpredictable; is that       09:35:38
20    correct?                                      09:35:42
21        A.    Absolutely.                         09:35:42
22        Q.    And who sets your schedule?        09:35:44
23    Who determines the times when you're         09:35:46
24    going to be in clinic teaching               09:35:48
25    residents versus times you're going to       09:35:51
```

Page 36

Exhbiit 1
Page 15

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | be operating versus the times you're | 09:35:53 |
| 2 | doing research, et cetera? | 09:35:55 |
| 3 | A.   It's coordinated with our | 09:35:56 |
| 4 | division head of clinical operations. | 09:36:00 |
| 5 | So we like it to be as predictable as | 09:36:04 |
| 6 | possible.  So my usual operating room | 09:36:07 |
| 7 | day is Monday and then the call | 09:36:11 |
| 8 | coincides with that so that the | 09:36:14 |
| 9 | remainder of the week I can then | 09:36:15 |
| 10 | coordinate my own schedule with regard | 09:36:18 |
| 11 | to experiments and lectures and writing | 09:36:20 |
| 12 | and reading. | 09:36:23 |
| 13 | Q.   But the operating schedule on | 09:36:23 |
| 14 | Monday is set by the head of the | 09:36:27 |
| 15 | clinic? | 09:36:29 |
| 16 | A.   Yeah, we've pretty much | 09:36:29 |
| 17 | agreed, when I came on staff, that | 09:36:31 |
| 18 | Mondays would be my day and we would | 09:36:34 |
| 19 | coincide the call with that so I would | 09:36:37 |
| 20 | take a full call commitment as with | 09:36:40 |
| 21 | every other member of the division. | 09:36:43 |
| 22 | And so basically that's why my days are | 09:36:44 |
| 23 | fairly long on Mondays and fairly | 09:36:47 |
| 24 | variable depending upon the load of | 09:36:50 |
| 25 | actual cases. | 09:36:52 |

Page 37

CONFIDENTIAL

```
 1        Q.     In terms of your lectures,        09:36:53

 2   these are like formal classroom-type          09:36:56

 3   lectures?                                      09:36:59

 4        A.     The classroom is something         09:36:59

 5   like this, some are bigger.  I also            09:37:01

 6   give visiting professor grand rounds at        09:37:04

 7   various institutions around the country        09:37:08

 8   and those are in grand rounds-type             09:37:10

 9   environments with the entire department        09:37:13

10   in an amphitheater-type setting or a           09:37:14

11   conference room.  So that is variable          09:37:18

12   as well.  And then the teaching at the         09:37:20

13   bedside is obviously teaching in the           09:37:23

14   operating room while you're caring for         09:37:24

15   patients directly at the bedside.              09:37:28

16        Q.     But the scheduling of the          09:37:30

17   lectures, who sets the schedule for the        09:37:32

18   lectures?                                      09:37:34

19        A.     Again, those are variable.         09:37:34

20   It depends on the venue.  If it's an           09:37:36

21   invited lecture, for example I'm going         09:37:36

22   to the University of Pittsburgh in             09:37:38

23   April to give an invited visiting             09:37:40

24   professor lectureship, that's set by          09:37:42

25   that department and those folks.              09:37:47
```

Page 38

Exhbiit 1
Page 17

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Within our own division, we have a | 09:37:48 |
| 2 | schedule where we have a number of | 09:37:51 |
| 3 | responsibilities for formal didactic to | 09:37:54 |
| 4 | fellows and residents.  And we are | 09:37:58 |
| 5 | either assigned or volunteered to give | 09:38:00 |
| 6 | various lectures and those are set by | 09:38:04 |
| 7 | the folks who schedule those lectures | 09:38:06 |
| 8 | throughout the year. | 09:38:08 |
| 9 | There's also medical student | 09:38:10 |
| 10 | lectures which is incorporated into the | 09:38:12 |
| 11 | medical student curriculum and that's | 09:38:14 |
| 12 | set by somebody else.  So these are | 09:38:15 |
| 13 | coordinated with the folks who set up | 09:38:18 |
| 14 | the curriculum for the various lectures | 09:38:20 |
| 15 | that are incorporated into them. | 09:38:24 |
| 16 | Q.    So Dr. Levy, you're obviously | 09:38:51 |
| 17 | an extremely busy person, but I want to | 09:38:54 |
| 18 | turn to your investing in general. | 09:38:58 |
| 19 | How often would you say that | 09:39:00 |
| 20 | you invest? | 09:39:02 |
| 21 | A.    Can you be more specific? | 09:39:03 |
| 22 | Q.    Just generally speaking, how | 09:39:07 |
| 23 | much time do you spend dealing with | 09:39:10 |
| 24 | your investments? | 09:39:13 |
| 25 | MR. LLORENS: Objection. | 09:39:16 |

Page 39

CONFIDENTIAL

```
 1        CERTIFICATION BY REPORTER

 2

 3        I, Wayne Hock, a Notary Public of the

 4    State of New York, do hereby certify:

 5        That the testimony in the within

 6    proceeding was held before me at the

 7    aforesaid time and place;

 8        That said witness was duly sworn

 9    before the commencement of the testimony,

10    and that the testimony was taken

11    stenographically by me, then transcribed

12    under my supervision, and that the within

13    transcript is a true record of the

14    testimony of said witness.

15        I further certify that I am not

16    related to any of the parties to this

17    action by blood or marriage, that I am not

18    interested directly or indirectly in the

19    matter in controversy, nor am I in the

20    employ of any of the counsel.

21        IN WITNESS WHEREOF, I have hereunto

22    set my hand this 30th day of January,

      2018.

23

24

          Wayne Hock

25        Wayne Hock
```

Page 221

# Exhibit 2

REDACTED VERSION OF
DOCUMENT PROPOSED TO BE
FILED UNDER SEAL

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
 1                 UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3                    SOUTHERN DIVISION

 4
        _____
 5     DANIEL TUROCY, et al.,        )
       Individually and on Behalf of)
 6     All Others Similarly          )
       Situated,                     )
 7                                   )
               Plaintiffs,           )  No. 8:15-cv-01343-DOC-KES
 8                                   )
            vs.                      )
 9                                   )
       EL POLLO LOCO HOLDINGS, INC.,)
10     et al.,                       )
                                     )
11               Defendants.         )
        _____)
12

13

14                  ** CONFIDENTIAL **

15           ** PURSUANT TO PROTECTIVE ORDER **

16       VIDEOTAPED DEPOSITION OF RON D. HUSTON

17               Los Angeles, California

18               Friday, January 26, 2018

19                      Volume I

20

21     Reported by:

22     NADIA NEWHART

23     CSR No. 8714

24     Job No. 2783118

25     PAGES 1 - 159
```

Page 1

Exhibit 2
Page 20

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
 1            UNITED STATES DISTRICT COURT

 2            CENTRAL DISTRICT OF CALIFORNIA

 3                 SOUTHERN DIVISION

 4
        _____
 5      DANIEL TUROCY, et al.,        )
        Individually and on Behalf of)
 6      All Others Similarly          )
        Situated,                     )
 7                                    )
               Plaintiffs,            )  No. 8:15-cv-01343-DOC-KES
 8                                    )
            vs.                       )
 9                                    )
        EL POLLO LOCO HOLDINGS, INC.,)
10      et al.,                       )
                                      )
11               Defendants.          )
        _____)
12

13

14

15

16           Videotaped deposition of RON D. HUSTON,

17      Volume I, taken on behalf of Defendants, at

18      300 South Grand Avenue, 32nd Floor, Los Angeles,

19      California, beginning at 9:14 a.m. and ending at

20      1:02 p.m. on Friday, January 26, 2018, before

21      NADIA NEWHART, Certified Shorthand Reporter

22      No. 8714.

23

24

25
                                        Page  2
```

Exhibit 2
Page 21

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
 1     APPEARANCES:

 2

 3     For Plaintiffs:

 4          THE ROSEN LAW FIRM, P.A.

 5          BY:  PHILLIP KIM

 6          Attorney at Law

 7          275 Madison Avenue, 34th Floor

 8          New York, New York 10016

 9          212-686-1060

10          pkim@rosenlegal.com

11

12     For Defendants El Pollo Loco Holdings, Inc.,

13     Trimaran Capital Partners, Trimaran Pollo Partners,

14     L.L.C., Freeman Spogli & Co., Stephen J.

15     Sather, Laurance Roberts and Edward J. Valle:

16          SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

17          BY:  ROBERT A. FUMERTON

18          BY:  MICHAEL W. RESTEY, JR.

19          Attorneys at Law

20          Four Times Square

21          New York, New York 10036

22          212-735-3000

23          robert.fumerton@skadden.com

24          michael.restey@skadden.com

25
```

Page  3

Exhibit 2
Page 22

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

1     APPEARANCES (Continued):

2

3     Videographer:

4          STEVEN TOGAMI

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

Exhibit 2
Page 23

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
 1      Los Angeles, California, Friday, January 26, 2018

 2                      9:14 a.m.

 3

 4          THE VIDEOGRAPHER:  Good morning.  We are on

 5      the record at 9:14 a.m. on January 26th, 2018.         09:14:45

 6          Please note that the microphones are

 7      sensitive and may pick up whispers, private

 8      conversations and cellular interference.  Audio and

 9      video recording will continue to take place unless

10      all parties agree to go off the record.               09:15:05

11          This is Media Unit Number 1 of the

12      video-recorded deposition of Ron Huston taken by

13      counsel for the defendants in the matter of Daniel

14      Turocy, et al. versus El Pollo Loco Holdings, Inc.,

15      et al., filed in the United States District Court,    09:15:31

16      Central District of California, Southern Division,

17      case number 8:15-cv-01343-DOC-KES.

18          This deposition is being held at Skadden Arps

19      located at 300 South Grand Avenue, Los Angeles,

20      California, 90071.                                     09:16:01

21          My name is Steven Togami from the firm

22      Veritext Legal Solutions, and I am the videographer.

23      The court reporter is Nadia Newhart from the firm

24      Veritext Legal Solutions.

25          I am not related to any party in this action,     09:16:19
```

Page 10

Exhibit 2
Page 24

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

1    nor am I financially interested in the outcome.  If

2    there are any objections to proceeding, please state

3    them at the time of your appearance.

4         At this time, will counsel and all present

5    please state their appearances and affiliations for      09:16:35

6    the record.

7         MR. FUMERTON:  Robert Fumerton, Michael

8    Restey, Skadden Arps for defendants.

9         MR. KIM:  Phil Kim, Rosen Law Firm for the

10   plaintiff, Mr. Huston.                                    09:16:51

11        THE WITNESS:  Ron Huston.

12        THE VIDEOGRAPHER:  Thank you.  Could we

13   please have the oath.

14

15                     RON D. HUSTON,

16      having been first duly sworn, was examined and

17                  testified as follows:

18

19

20

21                     EXAMINATION

22   BY MR. FUMERTON:

23     Q   Good morning, Mr. Huston.

24     A   Good morning.

25     Q   Please state your full name and address for      09:17:09

Page 11

Exhibit 2
Page 25

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
 1    the record.

 2        A    Ron Huston, ███████████████, Denver,

 3    Colorado, 80218.

 4        Q    Now, Mr. Huston, you understand you've sued a

 5    number of different defendants in this action; is       09:17:22

 6    that correct?

 7        A    Yes.

 8        Q    And if I refer to them as defendants

 9    throughout the deposition, you'll understand what I

10    mean?                                                   09:17:28

11        A    I will.

12        Q    If I refer to El Pollo Loco Holdings, Inc. as

13    EPL, will you also understand what I mean?

14        A    You might want to explain that one to me.

15        Q    If I just refer to El Pollo Loco as EPL --     09:17:41

16        A    I don't know what EPL is.

17        Q    EPL is an abbreviation for El Pollo Loco.

18        A    Ah, okay.  Okay.  Got you.

19        Q    You'll understand if I use the term "EPL" --

20        A    That's what you mean.                          09:17:50

21        Q    -- I'm referring to El Pollo Loco Holdings.

22        A    Thank you.  Got it.

23        Q    Mr. Huston, have you ever been deposed

24    before?

25        A    One time.                                      09:17:58
```

Page 12

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER



```
12      Q   If you go up a few rows, you made a purchase

13   on -- you made two purchases on May 15th, 2015.

14          Do you see that?

15      A   Yes.                                      11:08:04

16      Q   The first purchase on May 15th was 4,000

17   shares at $25 per share.

18          Do you see that?

19      A   I do.

20      Q   And then 6,000 shares at $24.88 per share.   11:08:18

21          Do you see that?

22      A   I do.

23      Q   And do you recall any reason that you

24   purchased those shares on that date other than what

25   you've testified about?                           11:08:34
```

Page 93

Exhibit 2
Page 27

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

1      A    No.   This -- this was strictly a price

2    awareness.   There was a big price drop, and I

3    thought a good company just went on sale.

4      Q    Do you recall why you made two separate

5    purchases on that day?                              11:08:45

6      A    I may have in- -- I may have input a couple

7    of limit order -- different limits just in case, you

8    know, there was a temporary dip, and it went back

9    up.  So I probably had two limits in there.

10     Q    And by limit orders, do you mean when it fell   11:09:03

11   to a certain price --

12     A    Yeah.

13     Q    -- you would -- you would buy?

14     A    Correct.

15     Q    Would you often do that in trading in EPL      11:09:10

16   securities?

17     A    I don't --

18          MR. KIM:  Objection to form.

19          THE WITNESS:  I don't know how to define

20   often, but it was a way I did it when I was trying    11:09:25

21   to dollar cost average into something, that I would

22   put in a lower level and if they hit it, it

23   triggered.  So probably yes.

24   BY MR. FUMERTON:

25     Q    And would you typically put your limit orders   11:09:37

                                                        Page 94

Exhibit 2
Page 28

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

1    as whole dollar amounts, like $25?



Page 95

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER



Page 96

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER



CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
 1          Do I think it was inflated or underinflated?

 2     Relative to my time in it, I thought it's another

 3     chance to dollar cost into a -- a company that I --

 4     that I think had good prospects.

 5        Q   And sitting here today, do you think that the    11:21:52

 6     stock price of EPL on August 14th, 2015 was

 7     artificially inflated?

 8          MR. KIM:  Objection to form --

 9     BY MR. FUMERTON:

10        Q   You can answer.                                  11:22:05

11          MR. KIM:  -- to the extent it calls for a

12     legal conclusion.

13          THE WITNESS:  In hindsight -- in hindsight, I

14     mean, I don't know.  It looks like it -- it could

15     have been.                                              11:22:32

16     BY MR. FUMERTON:

17        Q   Do you think the stock price of EPL was

18     artificially inflated at any time over the course of

19     your trades in EPL?

20          MR. KIM:  Objection to form to the extent it       11:22:44

21     calls for a legal conclusion.

22          THE WITNESS:  Could you re -- maybe

23     rephrase --

24          MR. FUMERTON:  Sure.

25          THE WITNESS:  -- or clarify?                        11:22:52
```

                                                   Page 106

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
 1          Maybe -- "inflated" maybe is not the right

 2     word.

 3     BY MR. FUMERTON:

 4       Q   Well, I'll ask a better question.

 5       A   Okay.                              11:22:57

 6     ▉    ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

   ▉   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

   ▉   ▉▉▉▉

   ▉      ▉▉▉▉▉▉▉▉▉▉▉

   ▉   ▉  ▉▉▉▉                                 11:23:06

11       Q   At any point in time in that time period, did

12     you think that the price of EPL stock was

13     artificially inflated, sitting here today?

14          MR. KIM:  Objection to form to the extent it

15     calls for a legal conclusion.            11:23:17

16          THE WITNESS:  I'm trying to think of what I

17     thought back then, but it -- it must have been

18     because I decided to -- to leave it at some point.

19     BY MR. FUMERTON:

20       Q   Right.  And so to be clear, sitting here      11:23:35

21     today, do you think the price of EPL stock was

22     artificially inflated at any point between

23     March 27th, 2015 and August 24th, 2015?

24          MR. KIM:  Same objection as before; form,

25     legal conclusion.                        11:23:54
```

Page 107

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
 1    BY MR. FUMERTON:

 2        Q    You can answer.

 3        A    Okay.  By artificial, meaning it was --

 4        Q    What's your understanding of the term

 5    "artificial inflation"?                          11:24:06

 6        A    Yeah, that it's artificially high, meaning if

 7    something would have been known that would have

 8    caused it to be lower; is that what you mean?

 9        Q    Use that -- use that definition.  That's

10    fine.                                            11:24:17

11        A    It would be artificially high if there was

12    information that whoever establishes pricing, the

13    market.
```

14

Page 108

Exhibit 2
Page 34

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER



Page 109

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER



Page 110

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER



25    you recall any reason that you decided to sell --    11:28:26

Page 111

Exhibit 2
Page 37

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

```
 1            I, the undersigned, a Certified Shorthand

 2    Reporter of the State of California, do hereby

 3    certify:

           That the foregoing proceedings were taken

 4    before me at the time and place herein set forth;

 5    that any witnesses in the foregoing proceedings,

 6    prior to testifying, were administered an oath; that

 7    a record of the proceedings was made by me using

 8    machine shorthand which was thereafter transcribed

 9    under my direction; that the foregoing transcript is

10    a true record of the testimony given.

11         Further, that if the foregoing pertains to the

12    original transcript of a deposition in a Federal

13    Case, before completion of the proceedings, review

14    of the transcript [ ] was [ ] was not requested.

15         I further certify that I am neither financially

16    interested in the action nor a relative or employee

17    of  any attorney or any party to this action.

18       IN WITNESS WHEREOF, I have this date subscribed

19    my name.

20    Dated: 2/9/2018

21

22

23              NADIA NEWHART

24              NADIA NEWHART

25              CSR NO. 8714
```

Page 159

Exhibit 2
Page 38

# Exhibit 3

CONFIDENTIAL

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                   SOUTHERN DIVISION

 4

    _____

 5  DANIEL TUROCY, et al.,        )

 6  individually and on behalf    )

    of all others similarly       )

 7  situated,                     )

 8            Plaintiffs,         )

         vs.                      )Case No.

 9  EL POLLO LOCO HOLDINGS,       )8:15-cv-01343-DOC-KES

10  INC., et al.,                 )(Consolidated)

11            Defendants.         )

    _____

12                  CONFIDENTIAL

13

14            VIDEOTAPED DEPOSITION OF

15          STEVEN P. FEINSTEIN, Ph.D., CFA

16              Los Angeles, California

17              Friday, February 9, 2018

18                    Volume I

19

20  Reported by:

21  LORI SCINTA, RPR

22  CSR No. 4811

23  Job No. 2783473

24

25  PAGES 1 - 235

                                         Page 1
```

CONFIDENTIAL

```
 1            UNITED STATES DISTRICT COURT

 2           CENTRAL DISTRICT OF CALIFORNIA

 3                 SOUTHERN DIVISION

 4

 5   _____

 6   DANIEL TUROCY, et al.,          )

 7   individually and on behalf      )

 8   of all others similarly         )

 9   situated,                       )

10           Plaintiffs,             )

11      vs.                          )Case No.

12   EL POLLO LOCO HOLDINGS,         )8:15-cv-01343-DOC-KES

13   INC., et al.,                   )(Consolidated)

14           Defendants.             )

15   _____

16

17

18       Videotaped deposition of STEVEN P.

19   FEINSTEIN, Ph.D., CFA, Volume I, taken on behalf of

20   Defendants, at 300 South Grand Avenue, Suite 3200,

21   Los Angeles, California, beginning at 9:09 A.M. and

22   ending at 3:19 P.M. on Friday, February 9, 2018,

23   before LORI SCINTA, RPR, Certified Shorthand

24   Reporter No. 4811.

25
```

Page 2

Exhibit 3
Page 40

CONFIDENTIAL

```
 1    APPEARANCES:

 2

 3   For Plaintiffs:

 4        ROBBINS GELLER RUDMAN & DOWD LLP

 5        BY:  RYAN A. LLORENS

 6        Attorney at Law

 7        655 West Broadway

 8        Suite 1900

 9        San Diego, California 92101

10        619.231.1058

11        Email:  rllorens@rgrdlaw.com

12             -- and --

13        THE ROSEN LAW FIRM

14        BY:  JOSH BAKER

15        Attorney at Law

16        275 Madison Avenue

17        34th Floor

18        New York, New York 10016

19        212.686.1060

20        Email:  jbaker@rosenlegal.com

21

22

23

24

25
```

Page 3

Exhibit 3
Page 41

CONFIDENTIAL

```
 1   APPEARANCES (Continued):

 2

 3   For Defendants:

 4        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

 5        BY:  ROBERT A. FUMERTON

 6             MICHAEL POWELL

 7        Attorneys at Law

 8        Four Times Square

 9        New York, New York 10036

10        212.735.3902

11        Email:  robert.fumerton@skadden.com

12

13   Videographer:

14        DAVID WEST

15

16

17

18

19

20

21

22

23

24

25

                                        Page  4
```

Exhibit 3
Page 42

CONFIDENTIAL

```
 1      Los Angeles, California, Friday, February 9, 2018

 2                      9:09 A.M.

 3

 4          THE VIDEOGRAPHER:  Good morning.  We are

 5   now on the record.  The time is 9:09 A.M.  The date    09:09:41

 6   today, February 9th, 2018.

 7          Please note that the microphones are

 8   sensitive and may pick up whispers, private

 9   conversations and cellular interference.  Please

10   turn off all cellphones or place them away from the    09:09:57

11   microphones as they can interfere with the

12   deposition audio.  Audio and video recording will

13   continue to take place unless all parties agree to

14   go off the record.

15          This is Media Unit 1 of the video-recorded      09:10:10

16   deposition of Steven P. Feinstein, Ph.D., CFA, taken

17   by counsel for defendant in the matter of Daniel

18   Turosy, et al. versus El Pollo Loco Holdings, Inc.,

19   et al., filed in the United States District Court,

20   Central District of California, Southern Division,     09:10:29

21   case No. 8:15-cv-01343-DOC-KES.

22          The deposition is being held at 300 South

23   Grand Avenue, Los Angeles, California.

24          My name is David West.  I am from Veritext.

25   I am the videographer.  The court reporter is          09:10:49
```

Page 9

Exhibit 3
Page 43

CONFIDENTIAL

```
 1    Lori Scinta.  She is also from Veritext.

 2            I am not authorized to administer an oath,

 3    I am not related to any party in this action, nor am

 4    I financially interested in the outcome.

 5            Counsel and all present in the room will        09:11:02

 6    now state their appearances and affiliations for the

 7    record.

 8            If there are any objections to proceeding,

 9    please state them at the time of your appearance,

10    beginning with the noticing attorney.                  09:11:12

11            MR. FUMERTON:  Robert Fumerton, Michael

12    Powell, from Skadden Arps for defendants.

13            MR. LLORENS:  Ryan Llorens from Robbins

14    Geller for plaintiffs.

15            THE VIDEOGRAPHER:  Thank you.                   09:11:22

16            The court reporter may now swear in the

17    witness and we will proceed.

18

19            STEVEN P. FEINSTEIN, Ph.D., CFA,

20    having been administered an oath, was examined and

21    testified as follows:

22

23                        EXAMINATION

24    BY MR. FUMERTON:

25        Q   Good morning, Dr. Feinstein.                    09:11:36
```

Page 10

Exhibit 3
Page 44

1    Project and Report," is that where you set forth the

2    scope of your engagement in this action?

3         A    Well, it's Paragraphs 1 and 2.

4         Q    And in Paragraph 1, you describe the first

5    part of your analysis which was determining whether        09:17:46

6    common stock of El Pollo Loco and options traded in

7    an efficient market; is that correct?

8         A    Yes.

9         Q    And then in Paragraph 2, you state, quote:

10                  "In addition, I have been asked to         09:17:59

11              opine on whether damages in this

12              matter can be computed using a common

13              methodology for all class members in

14              connection with their claims under

15              Section 10(b) of the Exchange Act of          09:18:09

16              1934 and U.S. Securities & Exchange

17              Commission Rule 10b-5 adopted

18              thereunder."

19              Do you see that?

20         A    Yes.                                           09:18:18

21         Q    Is it your testimony, though, that your

22    scope of your engagement also included damages under

23    Section 20A?

24         A    Ultimately, yes.

25              MR. LLORENS:  Objection.  Misstates the       09:18:27

Page 16

CONFIDENTIAL

```
 1    testimony.

 2    BY MR. FUMERTON:

 3         Q   You state "Ultimately, yes."

 4             What do you mean by "ultimately"?

 5         A   Not at the time that I finalized the report      09:18:32

 6    but subsequent I was asked whether what I said in

 7    the report would also cover 20A; and the answer is

 8    yes, it would.

 9         Q   And who asked you that question?

10         A   Mr. Llorens.                                     09:18:43

11         Q   You plan on submitting an additional report

12    with that opinion?

13         A   If asked.

14         Q   Has Mr. Llorens asked you to submit an

15    additional report with that opinion?                      09:18:52

16         A   No.

17         Q   Do you anticipate testifying at an

18    evidentiary hearing for class certification if

19    asked?

20         A   If asked, yes.                                   09:19:13

21         Q   And during that hearing would you opine on

22    whether Section 20A damages can be computed on a

23    class-wide basis?

24         A   If any of the parties ask me to, I would

25    answer the question.  Sure.                               09:19:25
```

Page 17

Exhibit 3
Page 46

```
 1        Q    But do you have an opinion as -- one way or
 2   the other -- strike that.
 3             I know it's not in your report, but do you
 4   have an opinion one way or the other as to whether
 5   the alleged misstatements on May 14th impacted the      12:02:16
 6   stock price reaction on May 15th?
 7        A    No --
 8             MR. LLORENS:  Objection.
 9             THE WITNESS:  Oh, sorry.
10             MR. LLORENS:  Beyond the scope of his         12:02:26
11   report --
12             THE WITNESS:  No, because --
13             MR. LLORENS:  -- and this deposition.
14             THE WITNESS:  -- this is a market
15   efficiency report, and it's not a price impact, loss    12:02:30
16   causation, or damages report.  Analysis for those I
17   haven't yet conducted.
18   BY MR. FUMERTON:
19        Q    What other information was conveyed to the
20   market on May 14th other than the alleged               12:02:43
21   misstatements that could have impacted the stock
22   price, if you know?
23        A    No.  I do know.  It's in the report.
24             I'm just thinking how to characterize it.
25   But rather than formulate new words, I should just      12:02:57
```

Page 125

CONFIDENTIAL

```
 1    these questions were leading back to the initial --

 2            MR. FUMERTON:   Counsel --

 3            MR. LLORENS:   -- question of what he would

 4    do if he was --

 5            MR. FUMERTON:   -- let's stick to making      12:16:58

 6    objections.  And if the witness is un- -- has any

 7    question about the questions, he can answer [sic].

 8            MR. LLORENS:   Okay.

 9    BY MR. FUMERTON:

10        Q   Did you under -- in this case, did you       12:17:11

11    undertake any independent analysis of the resulting

12    analysts reports in August 2015 that followed the

13    August 13th earnings calls?

14        A   Yes.

15        Q   In conducting that analysis, did you         12:17:26

16    determine whether the market was interpreting any

17    new information concerning the alleged

18    misstatements?

19        A   Yes.

20        Q   And what was your conclusion?               12:17:41

21        A   The analyst reports do reflect that the

22    market was apprised of new negative information

23    in -- as of the date of those reports after -- well,

24    new information that was provided to the marketplace

25    on August 14th, 2015.                               12:17:59
```

Page 138

Exhibit 3
Page 48

CONFIDENTIAL

```
 1        Q    And did that new negative information

 2   reveal the truth of any of the alleged

 3   misstatements?

 4            MR. LLORENS:  Objection.  Outside the scope

 5   of his market efficiency report and this deposition.   12:18:09

 6            THE WITNESS:  That conclusion I did not

 7   draw.  It was not part of the scope.  It wasn't

 8   necessary for assessing market efficiency.

 9   Everything up to that was integral to assessing

10   market efficiency or necessary for assessing --      12:18:23

11   BY MR. FUMERTON:

12        Q    Do you have any view --

13        A    -- market efficiency.

14            (Reporter clarification.)

15        Q    Do you have any view one way or the other   12:18:30

16   as to whether any of the negative information

17   revealed the truth of any of the alleged

18   misstatements?

19            MR. LLORENS:  Objection.

20            THE REPORTER:  I'm sorry.  Hold on.          12:19:07

21            (Reporter clarification.)

22            THE WITNESS:  I haven't formed an opinion

23   about that.  What I did form an opinion about

24   that -- or a finding -- what I found in my analysis,

25   which was a step in assessing market efficiency, was  12:19:23
```

Page 139

Exhibit 3
Page 49

CONFIDENTIAL

```
 1    that there was new negative information provided to

 2    the marketplace that hadn't been provided earlier,

 3    whether it -- whether it constitutes a corrective

 4    disclosure or proves price impact is -- are

 5    conclusions I did not need to draw and therefore did    12:19:50

 6    not draw in assessing market efficiency in doing --

 7    and in doing the analysis.

 8             (Exhibit 37 was marked for

 9             identification by the court reporter

10             and is attached hereto.)                        12:20:22

11             MR. FUMERTON:  Marking as Exhibit 37 a

12    William Blair analyst report on El Pollo Loco

13    Holdings, Inc., dated August 13, 2015.

14        Q   Do you recognize this document?

15        A   Yes.                                             12:20:49

16        Q   And, in fact, you excerpt this document in

17    Paragraph 126 of your report, correct?

18        A   Yes.

19        Q   In the second bullet, the second sentence

20    of this report states, quote:                           12:21:17

21             "Trends softened as the quarter

22             progressed, with expected weakness in

23             May (overlapping high-ticket LTOS of

24             both shrimp and carne asada that

25             obscured" EPL's "value message)               12:21:31
```

Page 140

Exhibit 3
Page 50

CONFIDENTIAL

1    softening that's not fully explained by the expected

2    weakness in May and the explanation for May that's

3    offered.

4         Q    Let's start with May 15th.

5              Is the May 15th analyst report attributing    12:27:10

6    the slowdown to the introduction of the overlapping

7    carne asada and shrimp LTOs?

8         A    I hate to do this but I just want to hear

9    your words again.

10        Q    Let me ask it to you differently.          12:27:48

11             Does the May 15th analyst report attribute

12   the slowdown in May to the introduction of the carne

13   asada and shrimp LTOs?

14        A    Essentially, yes.

15        Q    Does --                                     12:28:26

16        A    Although --

17             MR. LLORENS:  Let him finish the answer.

18             THE WITNESS:  But my only caveat is the

19   bullet point ends by saying this is what management

20   believes.                                             12:28:35

21             So they're saying they have no other

22   explanation.  They're presenting this as the

23   explanation and emphasizing that it's what

24   management has offered as the explanation.

25   BY MR. FUMERTON:                                      12:28:45

                                           Page 144

Exhibit 3
Page 51

CONFIDENTIAL

```
 1          Q    And the explanation to which you're

 2     referring is the overlapping of the shrimp and carne

 3     asada LTOs, correct?

 4          A    Right.

 5          Q    Turning back to the August 13th Blair        12:28:55

 6     analyst report, Exhibit 37.

 7               On August 13th is Blair attributing the

 8     weakness or slowdown in May to the overlapping LTOs

 9     of shrimp and carne asada?

10          A    Not fully because it says, "Trends softened  12:29:15

11     as the quarter progressed with expected weakness in

12     May...."

13               So at least some of the expected weakness

14     in May is for that reason, but it also says, "Trends

15     softened as the quarter progressed...."               12:29:32

16               And the rest of May is part of the rest of

17     the quarter.

18          Q    What is Blair attributing the expected

19     weakness in May to in this August 13, 2015, report?

20          A    Partially, the two-protein introduction but  12:29:55

21     they leave open that it's not just that because it

22     says, "Trends softened as the quarter

23     progressed...."

24          Q    And "as the quarter progressed" refers to

25     the more weakness in June with the launch of          12:30:16
```

Page 145

```
 1    hand-carved salads, correct?

 2        A    Not necessarily.  They do say there was

 3    more weakness in June but they don't say that these

 4    two explanations are the only explanations for the

 5    trends softening as the quarter progressed.         12:30:32

 6        Q    Do you see a parenthetical following the

 7    words "expected weakness in May"?

 8        A    I do.

 9        Q    What does that parenthetical refer to?

10        A    Well, it certainly refers to a component of   12:30:41

11    the weakness in May that was expected, that being

12    overlapping high-ticket, limited-time offerings of

13    both shrimp and carne asada.

14        Q    And does it attribute any other factor to

15    the weakness in May other than the overlapping of   12:31:03

16    shrimp and carne asada?

17        A    There are no other factors for May that are

18    explicitly cited, but it does say that "Trends

19    softened as the quarter progressed...," and the rest

20    of May is part of the quarter that progressed.      12:31:17

21             (Exhibit 39 was marked for

22             identification by the court reporter

23             and is attached hereto.)

24             MR. FUMERTON:  Mark as Exhibit 39 a

25    Morgan Stanley analyst report for El Pollo Loco     12:32:30
```

Page 146

Exhibit 3
Page 53

CONFIDENTIAL

```
 1    and indicated and quantified by an event study, then

 2    the inflation after that date would be higher and

 3    the inflation before that date would be lower.  So

 4    we would -- the methodology would identify when the

 5    inflation was introduced.                        01:23:10

 6         Q    Do you have a view as to whether there were

 7    any fraud-related residual price increases during

 8    this class period?

 9         A    I haven't done a damages analysis yet so

10    no.                                              01:23:22

11         Q    Is your belief that artificial inflation in

12    the stock price can vary over a class period?

13         A    It can.

14         Q    And you've just described an instance of

15    that?                                            01:23:35

16         A    Yes.

17         Q    Now, earlier we discussed the fact that

18    plaintiffs are asserting a claim under Section 20A,

19    cap A, of the Exchange Act against certain

20    defendants.                                      01:24:20

21         Do you recall that?

22         A    Yes.

23         Q    And you testified earlier that you'd made a

24    determination as to whether Section 28 damages could

25    be computable on a class-wide basis, correct?    01:24:29
```

Page 155

Exhibit 3
Page 54

CONFIDENTIAL

```
 1        A    Yes.
 2        Q    You did not include that in your report,
 3   though, however, correct?
 4        A    Not explicitly, correct.
 5        Q    Why didn't you include it in your report?    01:24:39
 6        A    I believe at the time of the initial
 7   engagement it wasn't explicitly spelled out as part
 8   of the scope but later, subsequently, it was
 9   commented on.
10        Q    You say "commented on."  Counsel didn't    01:24:54
11   tell you to opine on whether Section 20A damages
12   could be computable on a class-wide basis in your
13   report?
14        A    Well, just as it's not explicitly in my
15   report, but I believe it's addressed.  They didn't    01:25:08
16   explicitly include it in the scope but may have
17   considered it --
18        Q    Where is it --
19        A    -- part of the general scope.
20        Q    Where is it implicitly addressed in the    01:25:17
21   report?
22        A    Well, the -- where I reference that there
23   are statutory and case law formulas for damage
24   computation in these cases.
25             I mean, I'm not inventing these formulas.    01:25:31
```

Page 156

Exhibit 3
Page 55

CONFIDENTIAL

```
 1    These formulas were used in many cases by other

 2    people before me.  Same -- and when it comes to 20A,

 3    it's even more so the case that the damage formula

 4    is spelled out in the statute.

 5         Q   Have you ever offered an opinion          01:25:44

 6    calculating damages in connection with a Section 20A

 7    claim?

 8         A   I believe I have.

 9         Q   Have you ever offered a report?

10         A   I believe so.  I can't tell you exactly   01:25:53

11    which case but I believe so.

12         Q   In Paragraph 164, you state that plaintiffs

13    asked you to opine on whether Section 10(b) damages

14    could be computable on a class-wide basis, correct?

15         A   That's right.                             01:26:14

16         Q   You have no reference to Section 20A here

17    or anywhere else in the report?

18         A   That's right.

19         Q   At what point did counsel tell you to

20    determine whether Section 20A damages could be      01:26:28

21    computable on a class-wide basis?

22         A   You mean, chronologically?  When?

23         Q   Yes.

24         A   I believe it must have been within the last

25    week in preparation for the deposition.             01:26:38
```

Page 157

Exhibit 3
Page 56

CONFIDENTIAL

1          Q    Did counsel tell you why you should make a

2     determination as to whether Section 20A damages

3     should be computable on a class-wide basis?

4          A    No.

5          Q    How many times have you offered an opinion      01:27:02

6     on Section 20A damages?

7          A    I don't know.

8          Q    Fair to say multiple occasions?

9          A    Yes.

10         Q    And have you also opined as to whether          01:27:37

11    Section 20A damages could be calculated on a

12    class-wide basis?

13         A    I just don't recall specifics of other

14    cases with regard to that question.

15              (Exhibit 43 was marked for                      01:27:46

16              identification by the court reporter

17              and is attached hereto.)

18              MR. FUMERTON:   Marking as Exhibit 43 a

19    Report on Market Efficiency and Damages you

20    submitted on February 6, 2015, in an action            01:28:28

21    captioned Gordon v. Sonar Capital Management LLC,

22    et al., case No. 11-CV-9665, in the Southern

23    District of New York.

24         Q    Do you see that?

25         A    Yes.                                            01:28:48

                                                       Page 158

CONFIDENTIAL

```
 1              (Exhibit 45 was marked for
 2              identification by the court reporter
 3              and is attached hereto.)
 4              MR. FUMERTON:  We're marking as Exhibit 45
 5      15 U.S.C.A. Section 78-T1.                        01:51:22
 6              MR. BAKER:  That was 44.
 7              MR. FUMERTON:  Strike that.  Let's try
 8      again.
 9              Mark it as Exhibit 45 15 U.S.C.A.
10      Section 78bb.                                     01:51:41
11              THE WITNESS:  Okay.
12      BY MR. FUMERTON:
13          Q   Do you see that, sir?
14          A   Yes.
15          Q   And under Section (a) Limitation on       01:51:48
16      judgments, the statute states, quote:
17                  "No person permitted to maintain a
18              suit for damages under the provisions
19              of this chapter shall recover, through
20              satisfaction of judgment in one or       01:52:04
21              more actions, a total amount in excess
22              of the actual damages to that person
23              on account of the act complained of."
24              Do you see that?
25          A   I do.                                     01:52:15
```

Page 174

Veritext Legal Solutions
866 299-5127

Exhibit 3
Page 58

CONFIDENTIAL

```
 1          Q   And this was the actual damage or actual

 2    loss cap to which you testified about earlier,

 3    correct?

 4          A   Yes.

 5          Q   And it's your understanding that this cap      01:52:21

 6    applies to all claims under the Exchange Act,

 7    correct?

 8              MR. LLORENS:  Objection.  It's outside the

 9    scope of his market efficiency report and it calls

10    for a legal conclusion.                                  01:52:35

11    BY MR. FUMERTON:

12          Q   You're an expert on these statutes.  It's

13    your conclusion that this cap applies to all claims

14    under the Exchange Act, correct?

15              MR. LLORENS:  Objection.  It misstates his     01:52:43

16    prior testimony about being an expert to all these

17    statutes.

18              THE WITNESS:  Well, my opinion, as

19    expressed in the report, is that damages can be

20    calculated in a manner using a common methodology        01:53:09

21    for all class members.  That's the conclusion.

22              I'd want to review more of the

23    documentation in order to render an opinion that's

24    outside the report about whether this cap pertains

25    to all provisions in the Exchange Act.                   01:53:28
```

                                                  Page 175

Exhibit 3
Page 59

1    BY MR. FUMERTON:

2        Q   You see the words "provisions of this

3    chapter" in what I just read you?

4        A   Yes.

5        Q   Do you know what "provisions of this          01:53:51

6    chapter" is referring to?

7        A   Not 100 percent sure.

8            MR. LLORENS:  Objection.  Calls for a legal

9    conclusion.

10           (Reporter clarification.)                      01:54:03

11           THE WITNESS:  I'm not 100 percent sure

12   whether it's Section 10 or the entire Exchange Act.

13   BY MR. FUMERTON:

14       Q   So sitting here today, you have no idea

15   whether this provision applies to damages under        01:54:16

16   Section 20A.

17           Is that your testimony?

18       A   I don't spell that out in my report.  And

19   in order to render an opinion one way or the other,

20   I would want to review the documents more              01:54:32

21   thoroughly.

22       Q   What documents would you need to review to

23   answer that question about the application of this

24   provision?

25       A   The full text of the Exchange Act as          01:54:41

Page 176

Exhibit 3
Page 60

CONFIDENTIAL

```
 1    amended.
 2         Q    Did you apply this cap on 20A damages in
 3    the Gordon report?
 4         A    Yes.  But as I said, that may have been on
 5    account of instructions or recommendations from the    01:54:57
 6    attorneys to provide a conservative methodology for
 7    calculating damages in that particular case.
 8         Q    What do you mean by "conservative" there?
 9         A    A lower bound or a number that's more
10    conservative than what could reasonably be construed    01:55:44
11    from the application of the statute.
12         Q    You testified several times that you
13    opined -- strike that.
14              You testified several times today that you
15    formed an opinion as to whether Section 20A damages    01:55:58
16    and Section 10(b) damages could be computable on a
17    class-wide basis.  Do you recall that?
18         A    Yes.
19         Q    And in forming that opinion, you're unable
20    to tell me whether the limitation on judgments set    01:56:12
21    forth in 15 U.S.C.A. 78bb applies to either section?
22         A    Absolutely, because it doesn't -- it would
23    not affect that conclusion that the arithmetic
24    formula can be applied to all class members.
25              I mean, the inputs, the argument values in    01:56:35
```

Page 177

Exhibit 3
Page 61

CONFIDENTIAL

1    the formula, may be different from one investor to

2    another, but the formula would be common.

3        Q   You've testified earlier that you've

4    offered an opinion calculating Section 20A damages

5    in other cases, correct?                              01:56:50

6        A   Well, you just gave me -- yeah, I think we

7    have an example of one in front of me.

8        Q   And in performing that calculation would

9    you need to know whether Section 78bb entitled

10   "Limitation on judgments" applied to Section 20A     01:57:02

11   claims?

12           MR. LLORENS:  Objection.  Outside of the

13   scope of this market efficiency report.

14   BY MR. FUMERTON:

15       Q   You can answer.                               01:57:12

16       A   Not necessarily.  In fact, it's altogether

17   possible that what was explained and understood at

18   the time of this report from three years ago was

19   that there's some ambiguity in the statute and as a

20   result I should interpret the ambiguity in the most  01:57:27

21   conservative manner.

22       Q   Can you point to me any ambiguity in this

23   provision?

24       A   Yes.  We've been talking about it's not

25   clear whether it provide -- it pertains to           01:57:38

                                            Page 178

1    Section 20A as well as 10b-5.

2         You said that it's clear and that it says,

3    "provisions of this chapter," but exactly what it

4    means by "this chapter" is, at least at this point,

5    somewhat ambiguous to me --                          01:57:53

6         Q   Are you aware of case law applying this

7    provision to Section 20A claims?

8         A   Not as I sit here now, I can't cite for you

9    case law about that point in particular.

10        Q   Turning back to Paragraph 140 of the Gordon   01:58:06

11   report, you state, quote, "The statute" -- and,

12   again, we're talking about Section 20A; is that

13   correct?

14        A   Yes.

15        Q   -- "provides that persons engaged            01:58:32

16            in insider trading are liable for

17            damages to other market participants

18            who trade 'contemporaneously' with the

19            insiders."

20            Do you see that?                              01:58:42

21        A   Yes.

22        Q   Do you have any understanding of why this

23   contemporaneous requirement is contained in the

24   statute?

25        A   I'm not a lawyer.                             01:58:48

                                                   Page 179

```
 1              MR. LLORENS:  Objection.  Calls for a legal

 2      opinion.

 3      BY MR. FUMERTON:

 4          Q   I'm not asking you for your legal opinion.

 5      I'm asking you for your understanding.            01:58:52

 6          A   Well, I'm not a lawyer or a lawmaker so I

 7      can't speak to what the lawmaker's intent was when

 8      they included that word in that provision.

 9          Q   Do you have any understanding of the

10      contemporaneous requirement in Section 20A and the  01:59:06

11      reason it's in there?

12              MR. LLORENS:  Objection.  Vague and calls

13      for a legal conclusion.

14      BY MR. FUMERTON:

15          Q   You can answer.                            01:59:10

16          A   Not as an economist, but just -- I -- no.

17      I mean, I'm not -- I'm not going to offer a

18      professional opinion about the motivation for that

19      provision being included in the law.

20          Q   You're saying you're not going to offer one  01:59:29

21      because you can't?

22              MR. LLORENS:  Objection.  Misstates his

23      prior testimony.

24              THE WITNESS:  It was not -- well, it's not

25      part of my report.  It wasn't relevant to any of the  01:59:37
```

                                                    Page 180

Exhibit 3
Page 64

CONFIDENTIAL

```
 1    conclusions or analysis, methodology, findings or

 2    conclusions in my report.

 3            And although I might have some

 4    understanding, it's not derived from the expertise

 5    that I am holding out as -- in my credentials here    01:59:53

 6    today.

 7    BY MR. FUMERTON:

 8        Q    What is that understanding?

 9        A    Like I said, I'm not going to -- I'm not

10    going to speculate about the motivation of the        02:00:04

11    lawmakers for including that provision.  It's

12    outside my area of expertise, assessing and

13    speculating about their motivation.

14        Q    You just testified you had an understanding

15    of the reason the contemporaneous requirement's in    02:00:16

16    the statute.  I'm asking you what that understanding

17    was.

18            MR. LLORENS:  Objection.  Misstates his

19    prior testimony.

20    BY MR. FUMERTON:                                       02:00:23

21        Q    Answer the question.

22            MR. LLORENS:  If you can.

23            THE WITNESS:  Well, I'll caveat it by

24    saying that it's an understanding that's -- of law

25    that's derived from my experience working with these  02:00:34
```

Page 181

Exhibit 3
Page 65

CONFIDENTIAL

```
 1    provisions but not from my credentials and expertise

 2    that I -- that qualify me as an expert in this area,

 3    which is the reason I was reluctant to offer the

 4    understanding.

 5         But -- so your question is, then, as a          02:00:55

 6    layperson why might the lawmakers have included a

 7    provision that says that the damages are owed to the

 8    people who traded contemporaneously?

 9         With all of those caveats, it seems that

10    they are the ones who would have been damaged by the   02:01:13

11    insider trading; that if one person is benefitting

12    from trading at an -- from selling at an inflated

13    high price or buying at an -- at an artificially

14    deflated low price, that the person they're trading

15    with would have had the benefit of selling at a       02:01:32

16    higher price or buying at a lower price.

17    BY MR. FUMERTON:

18         Q   Now, when an insider sells their shares in

19    the open market is it possible to determine who

20    purchased those shares?                                02:01:44

21         MR. LLORENS:  Objection.  It's outside the

22    scope of his market efficiency report.

23    BY MR. FUMERTON:

24         Q   You can answer.

25         MR. LLORENS:  If you can.                         02:01:50
```

Page 182

CONFIDENTIAL

```
 1              THE WITNESS:  The shares are fungible so
 2     you can't usually, on an open-market transaction,
 3     trace exactly who received the shares that a
 4     particular seller is selling on a particular day.
 5     But you -- but that's not to say that you have no      02:02:17
 6     information whatsoever.
 7              I mean, you've -- you can assess -- you can
 8     narrow down the pool of the buyers to the people who
 9     bought that day and you can assess the probability
10     that they received those shares by -- based on the    02:02:33
11     size of a particular trader's trades relative to the
12     number of shares that traded that day.
13     BY MR. FUMERTON:
14          Q    Now, you --
15          A    So it's not like there's no information.     02:02:42
16     But you can't conclusively identify who received
17     particular shares if it's an open-market trade.
18          Q    I think you testified earlier that you are
19     aware that certain insiders sold shares during the
20     class period.                                          02:02:59
21          A    That's right.
22          Q    Is that correct?
23               And if you turn to Paragraph 11 of the
24     Third Amended Complaint, which is Exhibit 3 --
25          A    Okay.                                        02:03:32
```

                                          Page 183

CONFIDENTIAL

```
 1        Q    -- you see it lists various defendants, the

 2    date sold and the shares sold?

 3        A    Yes.

 4        Q    And the controlling shareholder defendants,

 5    Mr. Sather, Mr. Valle, are alleged to have all sold    02:03:42

 6    their shares on May 19th, 2015; is that correct?

 7        A    Yes.

 8        Q    And those three entities are alleged to

 9    have sold approximately 5 -- approximately 6 million

10    shares?                                                02:04:05

11        A    Yes, approximately.

12        Q    Do you have any understanding of who bought

13    the shares from these defendants on May 19th?

14            MR. LLORENS:  Objection.  It's outside the

15    scope of his --                                        02:04:15

16            (Speaking simultaneously.)

17    BY MR. FUMERTON:

18        Q    You can answer.

19            MR. LLORENS:  -- market efficiency report.

20            -- if you have an opinion on who bought        02:04:18

21    their shares --

22            (Speaking simultaneously.)

23            MR. FUMERTON:  For the record --

24            MR. LLORENS:  -- you can answer.

25            MR. FUMERTON:  -- the only reason it's         02:04:23
```

Page 184

Exhibit 3
Page 68

CONFIDENTIAL

```
 1    outside the scope of the report is because --

 2            MR. LLORENS:  Because it has nothing to do

 3    with market efficiency.  That's why.

 4            MR. FUMERTON:  Do not cut me off.  Let me

 5    finish.  I have not interrupted you once.  Do not      02:04:33

 6    cut me off.

 7            The only reason it's not in your report is

 8    because for some reason your expert failed to

 9    disclose his opinion that Section 20A damages could

10    be calculated on a class-wide basis.                   02:04:45

11        Q   Sir, answer the question.

12        A   My understanding is these shares were sold

13    through Jefferies or sold to Jefferies investment

14    bank.

15        Q   And they were sold in a block trade; is        02:04:56

16    that correct?

17        A   That's my understanding.

18        Q   What's a block trade?

19        A   A large trade off the -- off of the

20    exchange.                                              02:05:04

21            Sometimes off the -- it can be off the

22    exchange or it can be on the exchange but it can

23    often --

24            (Reporter clarification.)

25            -- it can also be off the exchange.            02:05:13
```

Page 185

Exhibit 3
Page 69

CONFIDENTIAL

```
 1              Shares sold in a block to an institution.

 2      Q    Are you aware whether these shares were

 3   sold off or on the market as part of this block

 4   trade?
                       is not
 5      A    This volume is included in market volume    02:05:23

 6   that day so it would have been off the market.

 7      Q    Who is the party who suffered damages as a

 8   result of this block trade?

 9      A    I did not do a damages calculation yet, or

10   damage assessment.                                  02:05:43

11      Q    I'm asking you as an economic matter, who

12   suffered damages as a result of this block trade on

13   May 19th, 2015?

14      A    I would need to do a loss causation and

15   damage calculation in order to answer that question, 02:05:56

16   neither of which I have done yet.

17      Q    Who are the universe of entities that could

18   have been damaged in a block trade to Jefferies on

19   May 19th, 2015?

20           MR. LLORENS:  Objection.  Outside the scope  02:06:11

21   of his market efficiency report and it's been asked

22   and answered.

23           THE WITNESS:  It takes time and effort and

24   attention and analysis to answer those sorts of

25   questions.  I'm not going to do it on the fly here   02:06:22
```

Page 186

Exhibit 3
Page 70

```
 1    without the benefit of documents and the requisite

 2    time.

 3    BY MR. FUMERTON:

 4         Q   In your view, could Jefferies have been

 5    damaged by the block trade on May 19th?              02:06:33

 6              MR. LLORENS:  Objection.  It's outside the

 7    scope of his market efficiency report.

 8    BY MR. FUMERTON:

 9         Q   You can answer.

10         A   I'm not going to speculate about the        02:06:41

11    conclusion of a damage analysis that I haven't yet

12    conducted.

13         Q   Answer the -- answer the question.

14              MR. LLORENS:  He just did.

15              If that's what your answer is, that's what  02:06:48

16    your answer is.  Don't let him bully you into saying

17    something --

18              THE WITNESS:  Okay.

19              MR. LLORENS:  -- you don't want to say.

20    BY MR. FUMERTON:                                     02:06:54

21         Q   Are you refusing to answer my question?

22              MR. LLORENS:  He answered your question.

23    BY MR. FUMERTON:

24         Q   Sitting here today with your expertise in

25    analyzing and quantifying damages under federal      02:07:03
```

Page 187

Exhibit 3
Page 71

1    statutes which you testified including Section 20A,

2    could Jefferies have been damaged by the block trade

3    on May 19th?

4          MR. LLORENS:  Objection.

5    BY MR. FUMERTON:                   02:07:13

6      Q  Yes or no?

7          MR. LLORENS:  It's outside the scope of his

8    market efficiency report --

9          (Speaking simultaneously.)

10   BY MR. FUMERTON:                   02:07:17

11      Q  Answer the question.

12         MR. LLORENS:  -- and it's been asked and

13   answered.

14         THE WITNESS:  Well, having the expertise to

15   conduct the analysis is not the same thing as doing  02:07:24

16   the analysis.  I haven't yet done a damages analysis

17   so I can't -- I don't have the answer to your

18   question because I haven't done the analysis yet.

19   BY MR. FUMERTON:

20      Q  Have you done an analysis of who has a   02:07:36

21   Section 20A claim here?

22      A  No.

23      Q  You have no idea who has a Section 20A

24   claim here?

25      A  Well, I haven't -- I've read the complaint.  02:07:49

                                    Page 188

CONFIDENTIAL

 1    I can see what the allegations are but I don't have

 2    an independent conclusion based on my own analysis

 3    of who has a claim or who suffered damages.

 4        Q    Who do plaintiffs allege have a Section 20A

 5    claim?                                          02:08:04

 6        A    I'm going to refer to the complaint for

 7    that.

 8             Paragraph 1 says that the complaint is:

 9                 "...on behalf of all purchasers of

10             El Pollo Loco securities between          02:08:19

11             May 15th, 2015 and August 13th, 2015,

12             inclusive..." "...seeking remedies

13             pursuant to" -- among other things --

14             "...Section 20A of the Securities

15             Exchange Act of 1934...."               02:08:35

16        Q    So your view, anyone who purchased between

17    May 15th, 2015 and August 13th, 2015, has a

18    Section 20A claim against defendants.

19             That's your testimony?

20        A    No.                                     02:08:51

21        Q    So let me ask you again.

22             Which plaintiffs here have a Section 20A

23    claim against defendants?

24        A    You say you're asking the question again.

25    I'll just say that my answer is the same as the last  02:09:03

                                                  Page 189

Exhibit 3
Page 73

```
 1    time you asked it.

 2        Q    Turning back to the Gordon report, in

 3    Paragraph 152 --

 4        A    Okay.

 5        Q    -- you calculate per-share 20A damages for      02:09:38

 6    six different time periods; is that correct?

 7        A    Yes.

 8        Q    And why did you calculate damages for these

 9    six periods?

10            MR. LLORENS:  Objection.  It's outside the      02:10:02

11    scope of his El Pollo Loco marketing efficiency

12    report.

13            THE WITNESS:  Well, the report explains

14    that -- Paragraph 141:

15                "Plaintiffs' attorneys instructed           02:10:21

16            me to consider various definitions of

17            contemporaneous periods in estimating

18            damages."

19            To that end, I provided estimates for six

20    different definitions of a contemporaneous period.      02:10:33

21    BY MR. FUMERTON:

22        Q    What are those six periods?

23        A    Paragraph 141 continues.

24                "The first definition of

25            contemporaneous period is the very              02:10:41
```

Page 190

```
 1              same day that defendants traded, which

 2              is denoted 'T+0.'  The second

 3              definition, denoted 'T+1,' comprises

 4              the day that defendants traded and the

 5              next trading day.  The next three          02:10:53

 6              definitions of contemporaneous period

 7              each include one additional

 8              incremental day after the defendants'

 9              trade date, respectively, and are

10              denoted 'T+3,' 'T+4,' and 'T+5.'"          02:11:04

11      Q    And do you have any view as to which of

12   these periods constitutes trading contemporaneously

13   with the insider?

14              MR. LLORENS:  Objection.  Calls for a legal

15   conclusion.                                           02:11:16

16              THE WITNESS:  You mean in the Gordon case

17   or in the --

18   BY MR. FUMERTON:

19      Q    In the Gor- -- in the Gordon case.

20      A    I believe the reason the attorneys asked      02:11:22

21   for several different definitions is there's some

22   ambiguity.  And so providing a range and a --

23   essentially, a scenario analysis, would provide the

24   court with information regardless of whichever

25   particular definition the court decided on.           02:11:39
```

Page 191

Exhibit 3
Page 75

```
 1              So, no, I didn't have a -- I didn't have an

 2      opinion, but it was my understanding that it would

 3      be determined in the course of the process of the

 4      case.

 5          Q   And the maximum length of time you went out    02:11:48

 6      from the trading date on this analysis was five

 7      days, correct?

 8          A   Five days beyond the current day.  So it's

 9      a group of six days.

10          Q   Were there any block trades at issue in the    02:11:59

11      Gordon case?

12          A   I don't recall.

13          Q   Would that have affected your Section 20A

14      analysis?

15          A   I don't think so but I don't recall with       02:12:06

16      certainty.

17          Q   So it's your testimony that under

18      Section 20A if you can identify precisely who

19      purchased the insider shares in an off-market block

20      trade, you can't tell me who has the Section 20A       02:12:21

21      claim?

22          A   I think that's a legal determination that

23      I'm not prepared to offer.

24          Q   You can't answer the question?

25          A   Well, the question is almost the definition    02:12:37
```

Page 192

Exhibit 3
Page 76

CONFIDENTIAL

```
1    of a legal conclusion and I'm not here to render

2    legal opinions.

3        Q   As an economic matter, who's damaged in a

4    block trade?

5            MR. LLORENS:  Objection.  It's outside the    02:12:53

6    scope of his market efficiency report.

7            THE WITNESS:  That's a complicated

8    question, which may not be completely addressed in

9    the statutes, in the legal statutes and case law.

10           I -- I can't offer an opinion about all the    02:13:24

11   people who are damaged but I can offer an opinion

12   that given the range of possible ways of

13   interpreting the law, the formula that is agreed

14   upon could be applied in a manner common for all

15   class members.                                        02:13:43

16   BY MR. FUMERTON:

17       Q   You can't answer the question as an

18   economic matter who's damaged in a block trade?

19           MR. LLORENS:  Objection.

20           THE WITNESS:  It's not as easy --            02:13:53

21           MR. LLORENS:  The question's been asked and

22   answered.

23           THE WITNESS:  Well, I mean, there's a lot

24   of considerations.  It's -- it's not as easy as you

25   might purportedly be trying to -- as you might be    02:14:02
```

Exhibit 3
Page 77

CONFIDENTIAL

1    trying to make it look.

2         There are certainly the traders who are

3    unwittingly trading at skewed prices.  There may be

4    other traders and market participants whose trades

5    are affected by those skewed prices and volumes.      02:14:27

6    BY MR. FUMERTON:

7         Q    Assume Jefferies purchased the 6 million

8    shares from the defendants -- which I believe you

9    testified that was your understanding, correct?

10        A    Yes.                                         02:14:38

11        Q    -- on May 19th, correct?

12        A    Okay.

13        Q    And Jefferies never resold those shares

14   into the market.

15             Are you with me?                            02:14:47

16        A    Well, I'll assume it for the sake of your

17   hypothetical, sure.

18        Q    As an economic matter, who suffered

19   damages, if anyone, in that transaction?

20             MR. LLORENS:  Objection.  Calls for a legal  02:15:00

21   conclusion, it's outside of the scope of his --

22             MR. FUMERTON:  Counsel, I asked as an

23   economic matter.  If that's not within the subject

24   of his expertise --

25             (Speaking simultaneously.)                  02:15:09

Page 194

Exhibit 3
Page 78

CONFIDENTIAL

```
 1              MR. LLORENS:  You just --

 2              MR. FUMERTON:  -- you have no --

 3              MR. LLORENS:  -- said you never cut me off.

 4          Are you going to let me finish my

 5      objection, or do you intend on cutting me off every    02:15:13

 6      time I make an objection?

 7              MR. FUMERTON:  I thought you were finished.

 8      I apologize.

 9              MR. LLORENS:  Do you want to ask it again

10      so I can object?                                       02:15:20

11              MR. FUMERTON:  Well, you ask -- you

12      objected on the grounds it called for a legal

13      conclusion when I asked him as an economic matter.

14      So the objection was frivolous.

15              MR. LLORENS:  It was not frivolous and I       02:15:33

16      didn't finish my objection.

17          The latter part of my objection is that

18      it's outside the scope of his market efficiency

19      report which is what we're here to discuss.

20      BY MR. FUMERTON:                                       02:15:43

21          Q   Sir, do you recall the hypothetical I've

22      given you?

23          A   Yes.

24          Q   Jefferies purchases all 6 million shares on

25      May 19th in the block trade off market, correct?      02:15:50
```

Page 195

CONFIDENTIAL

```
 1        A    Right.

 2        Q    Jefferies never resells them into the

 3   market, correct?

 4        A    Well, you're asking me to assume that.

 5        Q    As an economic matter, who, if anyone,        02:15:58

 6   suffered potential damages in that transaction?

 7             MR. LLORENS:  Same objections.

 8             THE WITNESS:  Well, if that's the scope of

 9   an engagement, I would begin extensive analysis and

10   perhaps some research in order to answer the           02:16:15

11   question.  It's not something that can be answered

12   without further research and analysis.

13   BY MR. FUMERTON:

14        Q    Is it possible that a party other than

15   Jefferies suffered damages --                          02:16:25

16        A    It's certainly possible.

17        Q    -- as part of that transaction?

18             MR. LLORENS:  Same objections.

19             THE WITNESS:  It's possible.

20   BY MR. FUMERTON:                                       02:16:32

21        Q    Under what circumstances could a party

22   other than Jefferies suffer damages as a result of

23   that block trade?

24             MR. LLORENS:  Same objections.

25             THE WITNESS:  It's the kind of thing I'd      02:16:39
```

Page 196

Exhibit 3
Page 80

```
 1    want to research in order to confidently answer the

 2    question.

 3           The trade may have skewed, impacted --

 4    "perturbed" is a word that's used in the

 5    profession -- prices and transaction considerations.   02:16:54

 6    I just wouldn't want to rule out that anyone else

 7    besides Jefferies suffered without doing the

 8    appropriate analysis.

 9           And we're -- let's take a break.

10    BY MR. FUMERTON:                                        02:17:07

11        Q   Answer the question.

12        A   I did just --

13        Q   We'll take a break after you answer the

14    question.

15        A   Well, I'm done with my answer.  And you        02:17:13

16    said at the beginning when there's no question

17    pending, I can call for a break.

18        Q   Okay.  I want to follow up and then we can

19    take a break.

20        A   Well, you said at the very beginning that I     02:17:21

21    can ask for a break --

22           MR. FUMERTON:  Counsel, if we take a break,

23    you cannot discuss this line of questioning in the

24    break room or else we'll stay on the record.

25           MR. LLORENS:  You're telling me what I can        02:17:29
```

Page 197

CONFIDENTIAL

1          I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby

3    certify:

4          That the foregoing proceedings were taken

5    before me at the time and place herein set forth;

6    that any witnesses in the foregoing proceedings,

7    prior to testifying, were duly sworn; that a record

8    of the proceedings was made by me using machine

9    shorthand which was thereafter transcribed under my

10   direction; that the foregoing transcript is a true

11   record of the testimony given.

12         Further, that if the foregoing pertains to

13   the original transcript of a deposition in a Federal

14   Case, before completion of the proceedings, review

15   of the transcript [  ] was [ ] was not requested.

16         I further certify I am neither financially

17   interested in the action nor a relative or employee

18   of any attorney or party to this action.

19         IN WITNESS WHEREOF, I have this date

20   subscribed my name.

21              Dated:2/12/2018

22

23

24              LORI SCINTA, RPR

25              CSR No. 4811

                                        Page  235

# Exhibit 4

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

CONFIDENTIAL

```
 1              UNITED STATES DISTRICT COURT
 2              CENTRAL DISTRICT OF CALIFORNIA
 3                   SOUTHERN DIVISION
 4     _____
                                   )
 5     DANIEL TUROCY, et al.,      )
       individually and on behalf  )
 6     of all others similarly     )
       situated,                   )
 7                                 )
              Plaintiffs,          )
 8                                 )
          vs.                      )Case No.
 9                                 )8:15-cv-01343-DOC-KES
       EL POLLO LOCO HOLDINGS,     )(Consolidated)
10     INC., et al.,               )
                                   )
11            Defendants.          )
       _____)
12     _____
13
14              C O N F I D E N T I A L
15         VIDEOTAPED DEPOSITION OF PETER KIM
16              Los Angeles, California
17            Tuesday, February 13, 2018
18                    Volume I
19
20
21     Reported by:
22     LORI SCINTA, RPR
23     CSR No. 4811
24     Job No. 2816992
25     PAGES 1 - 119
```

Page 1

Exhibit 4
Page 83

CONFIDENTIAL

```
 1              UNITED STATES DISTRICT COURT
 2             CENTRAL DISTRICT OF CALIFORNIA
 3                  SOUTHERN DIVISION
 4     _____
                                   )
 5     DANIEL TUROCY, et al.,       )
       individually and on behalf   )
 6     of all others similarly      )
       situated,                    )
 7                                  )
                Plaintiffs,         )
 8                                  )
           vs.                      )Case No.
 9                                  )8:15-cv-01343-DOC-KES
       EL POLLO LOCO HOLDINGS,      )(Consolidated)
10     INC., et al.,                )
                                    )
11              Defendants.         )
       _____)
12     _____
13
14              C O N F I D E N T I A L
15         Videotaped deposition of PETER KIM,
16     Volume I, taken on behalf of Defendants, at
17     300 South Grand Avenue, Suite 3200, Los Angeles,
18     California, beginning at 9:06 A.M. and ending at
19     12:33 P.M. on Tuesday, February 13, 2018, before
20     LORI SCINTA, RPR, Certified Shorthand Reporter
21     No. 4811.
22
23
24
25
```

                                          Page  2

Exhibit 4
Page 84

CONFIDENTIAL

```
 1   APPEARANCES:

 2

 3   For Plaintiffs:

 4        ROBBINS GELLER RUDMAN & DOWD LLP

 5        BY:  RYAN A. LLORENS

 6        Attorney at Law

 7        655 West Broadway

 8        Suite 1900

 9        San Diego, California 92101

10        619.231.1058

11        Email:  rllorens@rgrdlaw.com

12             -- and --

13        THE ROSEN LAW FIRM

14        BY:  JOSH BAKER

15        Attorney at Law

16        275 Madison Avenue

17        34th Floor

18        New York, New York 10016

19        212.686.1060

20        Email:  jbaker@rosenlegal.com

21        (Of record but not present)

22

23

24

25
```

Page 3

Exhibit 4
Page 85

CONFIDENTIAL

```
 1    APPEARANCES (Continued):

 2

 3    For Defendants:

 4         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

 5         BY:  ROBERT A. FUMERTON

 6              MICHAEL RESTEY

 7         Attorneys at Law

 8         Four Times Square

 9         New York, New York 10036

10         212.735.3902

11         Email:  robert.fumerton@skadden.com

12

13    Videographer:

14         DAVID WEST

15

16

17

18

19

20

21

22

23

24

25

                                        Page  4
```

Exhibit 4
Page 86

CONFIDENTIAL

```
 1      Los Angeles, California, Tuesday, February 13, 2018

 2                      9:06 A.M.

 3

 4           THE VIDEOGRAPHER:  Good morning.  We are on

 5      the record.  The time is 9:06 A.M.  The date today,      09:06:12

 6      February 13, 2018.  Please note that the microphones

 7      are sensitive and may pick up whispering, private

 8      conversations, and cellular interference.  Please

 9      turn off all cellphones or place them away from the

10      microphones as they can interfere with the                09:06:31

11      deposition audio.  Audio and video recording will

12      continue to take place unless all parties agree to

13      go off the record.

14           This is Media Unit 1 of the video-recorded

15      deposition of Peter Kim taken by counsel for             09:06:44

16      defendant in the matter of Daniel Turocy, et al.,

17      versus El Pollo Loco Holdings, Inc., et al., filed

18      in United States District Court, Central District of

19      California, Southern Division, case

20      No. 8:15-cv-01343-DOC-KES.                                09:06:58

21           The deposition is being held at 300 South

22      Grand Avenue, Suite 3200, Los Angeles, California.

23           My name is David West.  I am the

24      videographer.  The court reporter is Lori Scinta.

25      We are from Veritext Legal Solutions.                     09:07:22
```

Page 8

CONFIDENTIAL

```
1              I am not authorized to administer an oath.

2     I am not related to any party in this action, nor am

3     I financially interested in the outcome.

4              Counsel and all present in the room will

5     now state their appearances and affiliations for the      09:07:34

6     record.

7              If there are any objections to proceeding,

8     please state them at the time of your appearance,

9     beginning with the noticing attorney.

10             MR. FUMERTON:  Robert Fumerton,                    09:07:44

11    Michael Restey, from Skadden, Arps for defendants.

12             MR. LLORENS:  Ryan LLorens from Robbins

13    Geller for the witness and plaintiffs.

14             THE VIDEOGRAPHER:  Thank you.

15             THE WITNESS:  Peter Kim.                           09:07:55

16             THE VIDEOGRAPHER:  Thank you.

17             The court reporter may now swear in the

18    witness, and we will proceed.

19

20                  PETER KIM,                                    09:08:00

21    having been administered an oath, was examined and

22    testified as follows:

23

24    ///

25    ///
```

Page  9

Exhibit 4
Page 88

CONFIDENTIAL

```
 1                         EXAMINATION
 2    BY MR. FUMERTON:
 3         Q    Good morning, Mr. Kim.
 4         A    Good morning.
 5         Q    Please state your full name and address for   09:08:14
 6    the record.
 7         A    Peter Kim.  ███████████████████████
 8    La Habra, California 90631.
 9         Q    Mr. Kim, have you ever been deposed before?
10         A    Have I ever been?                             09:08:30
11         Q    Deposed before?
12         A    No.
13         Q    So I want to go over the ground rules.  I'm
14    going to ask a series of questions.  From time to
15    time your counsel may object but you have to answer   09:08:40
16    unless your counsel instructs you not to answer.
17              Understood?
18         A    Yes.
19         Q    Let's do our best not to talk over each
20    other.  The court reporter can only take down one of   09:08:49
21    us at a time.  Let me finish my questions before you
22    answer.  I'll do my best to let you finish your
23    answer before asking you another question.
24              Understood?
25         A    Understood.                                   09:08:59
```

Page 10

Exhibit 4
Page 89

CONFIDENTIAL

```
 1          I don't know how to answer that at this

 2    stage.

 3    BY MR. FUMERTON:

 4        Q   Sitting here today, do you believe that it

 5    was inflated on August -- strike that.            11:26:29

 6          Sitting here today, do you believe that the

 7    price of EPL stock was inflated on May 15th, 2015?

 8          MR. LLORENS:  Asked and answered.

 9          THE WITNESS:  I think the price was high in

10    May, if that's what you're asking.                11:26:46

11    BY MR. FUMERTON:

12        Q   No.  I'm asking do you think it was

13    inflated.

14        A   I don't know.

15        Q   Do you think that the price of EPL stock   11:26:53

16    was inflated on August 14th, 2015?

17        A   On August 14?

18        Q   On August 14, 2015.

19        A   Well, even at that point, we're at 14

20    compared to August 20, we're at 12.  It's definitely  11:27:28

21    higher.

22        Q   And do you have a view as to whether it was

23    inflated on August 14th?

24        A   I think it was higher.

25        Q   That's not what I asked you.  I asked:  Do  11:27:45
```

Page 79

Exhibit 4
Page 90

```
 1    you think the stock was inflated on August 14th?

 2           MR. LLORENS:  Objection.  Asked and

 3    answered and it's vague and ambiguous.

 4           THE WITNESS:  I don't recall.

 5    BY MR. FUMERTON:                                    11:27:58

 6       Q   I'm not asking whether you recall.

 7           Sitting here today, do you have a view one

 8    way or the other as to whether the price of EPL

 9    stock was inflated on August 14th --

10           MR. LLORENS:  Same objections.              11:28:08

11    BY MR. FUMERTON:

12       Q   -- 2015?

13       A   On August 14, was it inflated?  I think to

14    some degree.

15       Q   What caused the stock price to decline      11:28:39

16    between August 3rd and August 14th?

17       A   What caused the price to decline?

18           I don't recall exactly what -- if it was at

19    that time frame, but I think the -- and I'm not

20    sure, but I think maybe there's some things came    11:29:28

21    out -- some things came out that made the -- the

22    stock, EPL, not look as promising.

23       Q   And do you recall what those things that

24    came out were?

25       A   Well, time frame of it, not sure, but I do   11:29:51
```

Page 80

Exhibit 4
Page 91

CONFIDENTIAL

1    know that it was the -- the fact that they got rid

2    of their value pricing menu, and I think they were

3    conflicting as to whether they're -- they actually

4    are a QSR+ that -- now, that's supposed to be their

5    niche, but -- yeah.                                    11:30:38

6        Q    When did it come out that they were getting

7    rid of their value pricing menu?

8        A    I don't recall.

9        Q    Couldn't you just walk into an EPL

10   restaurant and see whether there was a value menu?    11:31:03

11       A    I guess I could have.

12       Q    But you didn't do that during this time

13   period?

14       A    I did not.

15       Q    What caused the price of EPL stock to        11:31:22

16   decline between August 14th, 2015 and August 20th,

17   2015?

18       A    For the most part, I think it's the same

19   answers, just depending on what was more revealed at

20   what time frame and not that I can exactly recall     11:31:55

21   what news came out when.  But whether it was the

22   quarterly report or what statements, the fact that

23   they sold -- you know, any of which -- like I don't

24   recall when what was done.

25       Q    But -- but more news concerning the alleged  11:32:28

                                                    Page 81

Exhibit 4
Page 92

```
1    misstatements came out between August 14th and
2    August 20th, 2015; is that correct?
3         A   I don't know.
4         Q   Can you think of any other reason why the
5    stock would have declined between August 14th and      11:32:43
6    August 20th, 2015?
7         A    Again, I don't know when statements are
8    made as to when the market knows, when the public
9    knows.
10        So those factors I don't know.                     11:32:59
11        Q   Now, after you sold your EPL stock on
12   August 20th, 2015, you bought EPL stock again at a
13   later date, correct?
14        A   Yes.
15        Q   And why did you do so?                          11:33:16
16        A   Same reasons.  I consider -- some of it
17   considering the fact that a lot of times you look at
18   a stock that you lost a lot of money on and
19   sometimes you reflect back on it, you wonder how
20   they're doing.  You look at the price and you think,    11:33:39
21   oh, maybe -- maybe now it's going to be okay.
22        Q   So turning back to the big bundle of
23   documents, which is Exhibit 48 --
24        A   Yes.
25        Q   -- I want you to flip to the Bates ending      11:34:03
```

Page 82

Exhibit 4
Page 93

CONFIDENTIAL

```
 1    in TDA 1092, which is your statement from

 2    November 2015.

 3         A    I'm sorry.  What's the date?

 4         Q    November 2015.  And it should -- the Bates

 5    should be ending in 1092.                          11:34:32

 6         A    Okay.  November 2015?

 7         Q    Correct.

 8    ███████████████████████████████████████

 ▌    ███████████████████████████████████

 ▌    ██████████████████████████  █████████  ██████

 ▌       █    ██████

 ▌       █    ████████████████████████████████

 ▌       █    ██████████████████████████

 ▌    ███████████████████████████████████

 ▌    █████████████████████████████████████  ██████

 ▌    ██████████████

17         Q    Now, you had already sued EPL for fraud by

18    November 2015, correct?

19         A    I don't remember the exact timeline, when

20    that started.  But -- but I do know -- or did know  11:35:55

21    when I made purchases afterwards that, yes.

22       █    █████████████████████████████████████

 ▌    █████████████████████████████████

 ▌       █    ██████

 ▌       █    ███████████████████████████████  ████████
```

                                                    Page 83

Exhibit 4
Page 94

CONFIDENTIAL



```
 1

11        MR. LLORENS:  Objection.  Misstates his

12   prior testimony.  He never said --

13   BY MR. FUMERTON:

14        Q    You can answer.

15
```

Page 84

Exhibit 4
Page 95

CONFIDENTIAL



```
24      A    (No audible response.)

25      Q    You have to answer.                    11:38:54
```

Page 85

CONFIDENTIAL

```
1              I, the undersigned, a Certified Shorthand
2    Reporter of the State of California, do hereby
3    certify:
4              That the foregoing proceedings were taken
5    before me at the time and place herein set forth;
6    that any witnesses in the foregoing proceedings,
7    prior to testifying, were duly sworn; that a record
8    of the proceedings was made by me using machine
9    shorthand which was thereafter transcribed under my
10   direction; that the foregoing transcript is a true
11   record of the testimony given.
12             Further, that if the foregoing pertains to
13   the original transcript of a deposition in a Federal
14   Case, before completion of the proceedings, review
15   of the transcript [  ] was [ ] was not requested.
16             I further certify I am neither financially
17   interested in the action nor a relative or employee
18   of any attorney or party to this action.
19             IN WITNESS WHEREOF, I have this date
20   subscribed my name.
21   Dated: 2/15/2018
22
23
24                    LORI SCINTA, RPR
25                    CSR No. 4811

                                        Page 119
```

Exhibit 4
Page 97

# Exhibit 5

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

DANIEL TUROCY, et al., Individually and on Behalf of All Others Similarly Situated,

     *Plaintiffs,*

  vs.

EL POLLO LOCO HOLDINGS, INC., et al.,

     *Defendants*

Case No. 8:15-cv-01343-DOC-KES

# REPORT OF DANIEL R. FISCHEL

March 8, 2018

Exhibit 5
Page 98

## I.    QUALIFICATIONS

1.      I am President of Compass Lexecon, a consulting firm that specializes in the application of economics to a variety of legal and regulatory issues.  I am also the Lee and Brena Freeman Professor of Law and Business Emeritus at The University of Chicago Law School.  I have served previously as Dean of The University of Chicago Law School, Director of the Law and Economics Program at The University of Chicago, and as Professor of Law and Business at The University of Chicago Graduate School of Business, the Kellogg School of Management at Northwestern University, and the Northwestern University Law School.

2.      Both my research and my teaching have concerned the economics of corporate law and financial markets.  I have published approximately fifty articles in leading legal and economics journals and am coauthor, with Judge Frank Easterbrook of the Seventh Circuit Court of Appeals, of the book *The Economic Structure of Corporate Law* (Harvard University Press, 1991).  Courts of all levels, including the Supreme Court of the United States, have cited my articles as authoritative.  My curriculum vitae, which contains a list of my publications, is attached hereto as Appendix A.

3.      I have served as a consultant or adviser on economic issues to, among others, the United States Department of Justice, the United States Securities and Exchange Commission, the National Association of Securities Dealers, the New York Stock Exchange, the Chicago Board of Trade, the Chicago Mercantile Exchange, the New York Mercantile Exchange, the United States Department of

Exhibit 5
Page 99

Labor, the Federal Deposit Insurance Corporation, the Resolution Trust

Corporation, and the Federal Trade Commission.

      4.    I am a member of the American Economic Association and the

American Finance Association.  I am also a former member of the Board of

Directors of the Center for the Study of the Economy and the State at The

University of Chicago, and former Chairman of the American Association of Law

Schools' Section on Law and Economics.  I have testified as an expert witness in

multiple proceedings in federal and state courts across the country, as detailed in

Appendix A.

## II.   INTRODUCTION, ASSIGNMENT, AND SUMMARY OF CONCLUSIONS

      5.    Lead Plaintiffs claim under Section 20A of the Securities

Exchange Act that while in possession of allegedly material non-public

information about El Pollo Loco Holdings, Inc. ("EPL" or the "Company"), two of

the three officer defendants (Chief Executive Officer Stephen J. Sather and Chief

Marketing Officer Edward J. Valle) and Defendant Trimaran Pollo Partners, L.L.C.

(together, the "20A Defendants")[1] sold 5,937,500 EPL shares on May 19, 2015

"contemporaneously with Lead Plaintiffs' purchases of El Pollo Loco common

stock during the Class Period," causing Lead Plaintiffs to suffer damages.[2]

---

1. Third Amended Complaint ("TAC") ¶¶ 1, 31 & 130.  Although named as
   defendants to Lead Plaintiffs' Section 20A claim, Defendants Trimaran Capital
   Partners and Freeman Spogli & Co. are not alleged to have traded EPL shares.
   *Id.* ¶¶ 92 & 133.
2. *Id.* ¶¶ 130-135.  I understand that the third officer defendant, Chief Financial
   Officer Laurance Roberts, did not sell any of his Company shares in the block

- 3 -

Exhibit 5
Page 100

6.      I have been asked by counsel for the 20A Defendants to analyze whether their sale of Company shares on May 19, 2015 caused Lead Plaintiffs to suffer economic injury.  In performing this work, I have received assistance from Compass Lexecon personnel working under my supervision.[3]  A list of materials we have relied upon in connection with the preparation of this report is attached as Appendix B.

7.      I have concluded that the EPL shares sold by the 20A Defendants on May 19, 2015 were purchased by a single counterparty, Jefferies LLC ("Jefferies"), not Lead Plaintiffs, and thus Lead Plaintiffs did not sustain economic injury as a result of that alleged insider-trading transaction.  The bases for this opinion are provided in the remainder of this report.

## III.   LEAD PLAINTIFFS DID NOT SUSTAIN ECONOMIC INJURY FROM THE 20A DEFENDANTS' SALE OF SHARES ON MAY 19, 2015

8.      I understand that the 20A Defendants sold EPL shares on May 19, 2015 to a single buyer, Jefferies, in a private, off-market transaction known as a "block trade."[4]  The price of the 20A Defendants' private block trade was $21.85 per share,[5] <u>below</u> the lowest intraday market price on May 19, 2015 of $23.20.[6] The number of shares sold by each 20A Defendant is set forth below:[7]

---

trade.  *Id.* ¶ 92.

3. Compass Lexecon bills for professional services at hourly rates, and also charges fees for administrative expenses and the use of its computer and databases.  My hourly rate is $1,500.
4. *See*, e.g., EPL-0003291-98.
5. TAC ¶ 133; we verified the sale price by reviewing the Forms 4 filed with the Securities and Exchange Commission.  *See*, e.g.,

- 4 -

Exhibit 5
Page 101

| Defendant | EPL Shares Sold to Jefferies on May 19, 2015 |
|---|---|
| Trimaran Pollo Partners, L.L.C. | 5,402,500 |
| Stephen J. Sather | 360,000 |
| Edward J. Valle | 175,000 |

9.     I understand that the private block trade was conducted pursuant to Securities and Exchange Commission Rule 144.  I further understand that as part of the block trade process, the parties exchanged letters setting forth the representations made by each party.[8]

10.     Lead Plaintiffs were not parties to that transaction and therefore did not suffer economic injury as a result.[9]

11.     The fact that Lead Plaintiffs were not the actual purchasers of the shares sold by the 20A Defendants is evident from the private nature of the block trade and the documents evidencing it, which set forth the parties engaged in the transaction.

12.     Moreover, Lead Plaintiffs and others who purchased EPL securities subsequent to the time of the 20A Defendants' trade actually paid less

---

https://www.sec.gov/Archives/edgar/data/1606366/000120919115045318/xslF345X03/doc4.xml.

6.  *See* CRSP US Stock and Index Databases ©2017 Center for Research in Security Prices (CRSP), The University of Chicago Booth School of Business. $21.85 is also below the closing price on May 18, 2015 of $24.27.  *See id.*

7.  TAC ¶ 133.

8.  *See*, e.g., EPL-0004469-75.

9.  In their complaint, Lead Plaintiffs list purchases they made on May 19, 2015, May 29, 2015, and June 2, 2015, i.e., up to nine trading days after the 20A Defendants sold their shares, at various purchase prices that all differ from the $21.85 price the 20A Defendants received:  $22.90, $23.21, $20.88, and $21.99. TAC ¶ 134.

Exhibit 5
Page 102

than they otherwise would have because of the 20A Defendants' sales.

Specifically, market participants were aware that Jefferies was selling the block

trade shares at a discount to the then-prevailing market price (but above the price

the 20A Defendants received) and the decline in EPL's stock price on May 20,

2015 was attributed to this news.[10]  Indeed, the statistical analysis of the

relationship between information and the Company's stock price movements

known as an "event study" that was prepared by Lead Plaintiffs' expert Steven

Feinstein shows that the residual return of EPL stock over the two-day period from

May 19, 2015 to May 20, 2015 was negative and statistically significant.[11]

13.     I have reviewed the transcript from the deposition of Professor

Feinstein, at which he stated that it may be possible that a party other than the

purchaser, Jefferies, suffered injury as a result of the block trade, but was unable to

provide any detail as to who could have suffered injury or what form such injury

would have taken.[12]

---

10. *See Reuters*, "BUZZ-El Pollo Loco Holdings Inc: Hit again on existing holder
sale," May 20, 2015 & *Investor's Business Daily*, "Shake Shack Hits New High
Amid NYC Flagship Reopening," May 20, 2015.  On May 21, 2015, the 20A
Defendants disclosed their sales on Forms 4 filed with the Securities and
Exchange Commission. (*See*, e.g.,
https://www.sec.gov/Archives/edgar/data/1606366/000120919115045318/xslF3
45X03/doc4.xml.)

11. Professor Feinstein describes his event study analysis in the Report on Market
Efficiency of Professor Steven P. Feinstein, Ph.D., CFA dated December 8,
2017 at ¶¶ 106-111.  We replicated this analysis and found that the two-day
stock residual return in log form is -8.15% and the two-day t-statistic is -2.23,
which is considered statistically significant at conventional levels of
significance.

12. *See* Transcript of Videotaped Deposition of Steven P. Feinstein, Ph.D., CFA
dated February 9, 2018 at 186:17-200:2.

Exhibit 5
Page 103

14.     Given Professor Feinstein's decision to exclude this opinion from his report and failure at his deposition to offer any theory or analysis as to how any other party could have been injured by the block trade, it is impossible to provide a specific response to Professor Feinstein's statement.  However, as described above, because Lead Plaintiffs were not the purchasers of the shares sold by the 20A Defendants in the alleged insider-trading transaction on May 19, 2015, they did not sustain injury from that private sale of shares.


Daniel R. Fischel

March 8, 2018

- 7 -

Exhibit 5
Page 104

# Appendix A

Exhibit 5
Page 105

**DANIEL R. FISCHEL**                                                      **March 2018**
Business Address:

Compass Lexecon
332 South Michigan Avenue
Chicago, Illinois  60604
Tel: 312-322-0209
dfischel@compasslexecon.com

## PROFESSIONAL EXPERIENCE

Lee and Brena Freeman Professor of Law and Business, University of Chicago Law School (7/89 – 12/2005, emeritus as of 1/1/2006); Dean of Law School (1/99 – 2/01); Professor of Law, University of Chicago Law School (1/84 - present); Visiting Professor of Law, University of Chicago Law School (7/82 - 6/83).

Professor of Law and Business, Northwestern University School of Law (1/1/2006 – 5/2011).

Professor, Kellogg School of Management (courtesy appointment, 1/1/2006 – 5/2011).

Jack N. Pritzker Distinguished Visiting Professor of Law, Northwestern University School of Law (6/02-6/03).

Professor of Law and Business, University of Chicago Graduate School of Business (7/87 - 6/90).

Director, Law and Economics Program, University of Chicago (1/84 - 6/91).

Assistant Professor of Law, Northwestern University School of Law (6/80 - 6/81); Associate Professor of Law, Northwestern University School of Law (6/81 - 6/82); promoted to full professor in 6/82.

Attorney with Levy and Erens, Chicago, Illinois (7/79 - 6/80).

Law Clerk for Associate Justice Potter Stewart of the United States Supreme Court (1978 - 1979).

Law Clerk for Judge Thomas E. Fairchild, Chief Judge of the Seventh Circuit Court of Appeals (1977 - 1978).

Exhibit 5
Page 106

## CONSULTING EXPERIENCE

President and Chairman, Compass Lexecon (formerly Lexecon).

## AREAS OF SPECIALIZATION

Securities and Financial Markets, Valuation and Financial Analysis, Bankruptcy and Financial Distress Litigation, ERISA Litigation, Class Certification, Damages, Corporate Governance.

## PUBLICATIONS

Payback: The Conspiracy to Destroy Michael Milken and His Financial Revolution, Harper Business (1995).

The Economic Structure of Corporate Law, Harvard University Press (1991) (with Frank H. Easterbrook).

## ARTICLES

The Use of Trading Models to Estimate Aggregate Damages in Securities Fraud Litigation: An Update, Briefly… Perspectives on Legislation, Regulation, and Litigation, Vol. 10, No. 3 (National Legal Center for the Public Interest, 2006) (with David J. Ross and Michael A. Keable).

The Hewlett-Packard Merger: A Case Study, in The New Investor Relations, Expert Perspectives on The State Of The Art (Bloomberg Press Princeton, 2004) (with Kenneth R. Cone, Gregory J. Pelnar and David J. Ross).

Market Evidence in Corporate Law, 69 U. Chi. L. Rev. 941 (2002).

Multidisciplinary Practice, The Business Lawyer, Vol. 55, (May 2000).

Government Liability for Breach of Contract, American L. & Econ. Rev. V1 N1/2 313 (1999) (with Alan Sykes).

Lawyers and Confidentiality, 65 U. Chi. L. Rev. 1 (1998).

The Law and Economics of Vanishing Premium Life Insurance, 22 Del. J. Corp. Law 1 (1997) (with Robert S. Stillman).

Clustering and Competition in Asset Markets, 20 J. Law & Econ. 23 (1997) (with Sanford J. Grossman, Merton H. Miller, Kenneth R. Cone and David J. Ross).

Corporate Crime, 25 J. Legal Studies 319 (1996) (with Alan O. Sykes).

Exhibit 5
Page 107

The Use of Trading Models to Estimate Aggregate Damages in Securities Fraud Litigation: A Proposal for Change, in Securities Class Actions: Abuses and Remedies (The National Legal Center for the Public Interest, 1994) (with David J. Ross).

Civil Rico After Reves: An Economic Commentary, 1993 Sup. Ct. Rev. 157 (with Alan O. Sykes).

Contract and Fiduciary Duty, 36 J. Law & Econ. 425 (1993) (with Frank H. Easterbrook).

Should the Law Prohibit "Manipulation" in Financial Markets?, 105 Harv. L. Rev. 503 (1991) (with David J. Ross).

Efficient Capital Markets, the Crash, and the Fraud on the Market Theory, 74 Cornell L. Rev. 907 (1989).

The Corporate Contract, 89 Colum. L. Rev. 1416 (1989) (with Frank H. Easterbrook); also published in Corporate Law and Economic Analysis (Cambridge University Press 1990) (Lucian Bebchuk ed.).

The Economics of Lender Liability, 99 Yale L. J. 131 (1989).

Should One Agency Regulate Financial Markets, in Black Monday and the Future of Financial Markets (R. Kormendi, R. Kamphuis & J. W. H. Watson, ed.) (Dow Jones-Irwin Inc., 1988).

ERISA's Fundamental Contradiction: The Exclusive Benefit Rule, 55 U. Chi. L. Rev. 1105 (1988) (with John H. Langbein).

From MITE to CTS: Takeovers, the Williams Act and the Commerce Clause, 1987 Sup. Ct. Rev. 47.

The Regulation of Banks and Bank Holding Companies, 73 Va. L. Rev. 301 (1987) (with Andrew M. Rosenfield and Robert S. Stillman).

The Regulation of Accounting: Some Economic Issues, 52 Brooklyn L. Rev. 1051 (1987).

Organized Exchanges and the Regulation of Dual Class Common Stock, 54 U. Chi. L. Rev. 119 (1987).

Comparable Worth and Discrimination in Labor Markets, 53 U. Chi. L. Rev. 891 (1986) (with Edward P. Lazear).

Comparable Worth: A Rejoinder, 53 U. Chi. L. Rev. 950 (1986) (with Edward P. Lazear).

Close Corporations and Agency Costs, 38 Stan. L. Rev. 271 (1986) (with Frank H. Easterbrook).

The Role of Liability Rules and the Derivative Suit in Corporate Law: A Theoretical and Empirical Analysis, 71 Corn. L. Rev. 261 (1986) (with Michael Bradley).

Regulatory Conflict and Entry Regulation of New Futures Contracts, 59 J. Bus. S85 (1985).

Optimal Damages in Securities Cases, 52 U. Chi. L. Rev. 611 (1985) (with Frank H. Easterbrook).

Exhibit 5
Page 108

The Business Judgment Rule and the Trans Union Case, 40 Bus. Law. 1437 (1985).

Insider Trading and Investment Analysts: An Economic Analysis of Dirks v. SEC, 13 Hofstra L. Rev. 127 (1984).

Limited Liability and the Corporation, 52 U. Chi. L. Rev. 89 (1985) (with Frank H. Easterbrook).

Labor Markets and Labor Law Compared with Capital Markets and Corporate Law, 51 U. Chi. L. Rev. 1061 (1984).

Customer Protection in Futures and Securities Markets, 4 J. Futures Markets 273 (1984) (with Sanford J. Grossman).

Mandatory Disclosure and the Protection of Investors, 70 Va. L. Rev. 669 (1984) (with Frank H. Easterbrook).

The Appraisal Remedy In Corporate Law, 1983 Am. Bar Found. Res. J. 875.

The Regulation of Insider Trading, 35 Stan. L. Rev. 857 (1983) (with Dennis W. Carlton).

Voting in Corporate Law, 26 J. Law & Econ. 395 (1983) (with Frank H. Easterbrook).

Auctions and Sunk Costs in Tender Offers, 35 Stan. L. Rev. 1 (1982) (with Frank H. Easterbrook).

The Corporate Governance Movement, 35 Vand. L. Rev. 1259 (1982).

Use of Modern Finance Theory in Securities Fraud Cases Involving Actively Traded Securities, 38 Bus. Law 1 (1982).

Antitrust Suits By Targets of Tender Offers, 80 Mich. L. Rev. 1155 (May 1982) (with Frank H. Easterbrook).

Corporate Control Transactions, 91 Yale L. J. 698 (1982) (with Frank H. Easterbrook).

The "Race to the Bottom" Revisited: Reflections on Recent Developments in Delaware Corporation Law, 76 Nw. Univ. L. Rev. 913 (1982).

Takeover Bids, Defensive Tactics and Shareholders' Welfare, 36 Bus. Law 1733 (1981) (with Frank H. Easterbrook).

The Law and Economics of Dividend Policy, 67 Va. L. Rev. 699 (1981).

The Proper Role of a Target's Management in Responding to a Tender Offer, 94 Harv. L. Rev. 1161 (1981) (with Frank H. Easterbrook) (awarded prize by Emory University for best paper written in law and economics for the year 1981).

Secondary Liability Under Section 10(b) of the Securities Act of 1934, 69 California L. Rev. 80 (1981).

Exhibit 5
Page 109

<u>Efficient Capital Market Theory, the Market for Corporation Control, and the Regulation of Cash Tender Offers</u>, 57 Tex. L. Rev. 1 (1978); reprinted in K. Scott and R. Posner ed., <u>Economic Perspectives on Corporation Law and Securities Regulation</u> (Little Brown 1980).

<u>Antitrust Liability for Attempts to Influence Government Action: The Basis and Limits of the Noerr-Pennington Doctrine</u>, 45 U. Chi. L. Rev. 80 (1977).

Comment, <u>The Demand and Standing Requirements in Stockholder Derivation Actions</u>, 44 U. Chi. L. Rev. 168 (1977).

Comment, <u>The Use of Government Judgments in Private Antitrust Litigation: Clayton Act Section 5(a), Collateral Estoppel, and Jury Trial</u>, 43 U. Chi. L. Rev. 338 (1976).

Exhibit 5
Page 110

## **EDUCATION**

<u>University of Chicago Law School</u>, Chicago, Illinois; J.D. 1977, cum laude; Order of the Coif; Comment Editor, Vol. 44, <u>University of Chicago Law Review</u>; Approximately top 1% of the Class. Awarded Casper Platt Award for best paper written by a student of the University of Chicago Law School; awarded Jerome N. Frank Prize for excellence in legal writing while a member of the University of Chicago Law Review, 1975 - 1977. Studied law and economics with Richard Posner and other members of the faculty.

<u>Brown University</u>, Providence, Rhode Island; M.A. 1974 in American History.

<u>Cornell University</u>, Ithaca, New York; major-American History; minor-Economics; B.A. 1972.

Exhibit 5
Page 111

## **TESTIMONY**

Deposition of Daniel R. Fischel In Re: Dr. Alan Sacerdote, et al. vs. New York University, In the United States District Court for the Southern District of New York, Civil Action No. 1:16-cv-6284-KBF (March 1, 2018).

Testimony of Daniel R. Fischel In Re: Lehman Brothers Holdings Inc., et al., in the United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No. 08-13555 (SCC) (December 4, 2017).

Deposition of Daniel R. Fischel In Re: Lehman Brothers Holdings Inc., et al., In the United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No. 08-13555 (SCC) (October 17, 2017).

Testimony of Daniel R. Fischel In Re: Genon Energy, Inc., et al, Debtors, In the United States Bankruptcy Court for the Southern District of Texas Houston Division, Chapter 11, Case No. 17-33695 (DRJ) (October 6, 2017).

Deposition of Daniel R. Fischel In Re: Genon Energy, Inc., et al, Debtors, In the United States Bankruptcy Court for the Southern District of Texas Houston Division, Chapter 11, Case No. 17-33695 (DRJ) (August 25, 2017).

Deposition of Daniel R. Fischel In Re: United States ex re. Hendrix et al., vs. JM Manufacturing Company, Inc., et al., In the United States District Court, Central District of California, Case No. ED CV 06-00055-GW (July 20, 2017).

Testimony of Daniel R. Fischel In Re: Syngenta AG MIR 162 Corn Litigation, In the United States District Court for the District of Kansas, Master File No. 2:14-MD-02591-JWL-JPO (June 19, 2017).

Testimony of Daniel R. Fischel In Re: In Re: Motors Liquidation Company, f/k/a General Motors Corporation, et al., Debtors, United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No.:09-50026 (MG) and Motors Liquidation Company Avoidance Action Trust, et al vs. JPMorgan Chase Bank, N.A., et al., United States Bankruptcy Court, Southern District of New York, Case No.: 09-00504 (MG) (May 2 and 3, 2017).

Deposition of Daniel R. Fischel In Re: Alere-Abbott Merger Litigation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 12963-VCG (April 4, 2017).

Testimony of Daniel R. Fischel In Re: Appraisal of AOL Inc., In the Court of Chancery of the State of Delaware, Consol C.A. No. 11204-VCG (March 20, 2017).

Deposition of Daniel R. Fischel In Re: City of Daytona Beach Policy and Fire Pension Fund, et al vs. Examworks Group, Inc., et al., In the Court of Chancery of the State of Delaware, C.A. No. 12481-VCL (February 22, 2017).

Deposition of Daniel R. Fischel In Re: Appraisal of AOL Inc., In the Court of Chancery of the State of Delaware, Consol C.A. No. 11204-VCG (February 14 and 15, 2017).

Exhibit 5
Page 112

Deposition of Daniel R. Fischel In Re: Motors Liquidation Company, f/k/a General Motors Corporation, et al., Debtors, United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No.:09-50026 (MG) and Motors Liquidation Company Avoidance Action Trust, et al vs. JPMorgan Chase Bank, N.A., et al., United States Bankruptcy Court, Southern District of New York, Case No.: 09-00504 (MG) (January 31, 2017).

Deposition of Daniel R. Fischel In Re: Syngenta Litigation, In the State of Minnesota District Court, County of Hennepin Fourth Judicial District, Court File No. 27-CV-15-3785 and In Re: Syngenta AG MIR 162 Corn Litigation, In the United States District Court for the District of Kansas, Case No. 2:14-md-2591-JWL-JPO (January 20, 2017).

Testimony of Daniel R. Fischel In the Matter of Motiva Enterprises LLC vs. Bechtel Corporation, Jacobs Engineering Group, Inc. and Bechtel-Jacobs CEP Port Arthur Joint Venture, International Institute for Conflict Prevention and Resolution (October 20, 2016).

Deposition of Daniel R. Fischel in Beaver County Employees Retirement Fund, et al., vs. Cyan, Inc., et al., Superior Court of the State of California, County of San Francisco, Lead Case No. CGC-14-538355 (Consolidated with No. CGC-14-539008) (October 11, 2016).

Deposition of Daniel R. Fischel In Re: Paragon Offshore PLC, et al, Debtors, In the United States Bankruptcy Court, District of Delaware, Case No. 16-10386 (September 23, 2016).

Deposition of Daniel R. Fischel In the Matter of Motiva Enterprises LLC vs. Bechtel Corporation, Jacobs Engineering Group, Inc. and Bechtel-Jacobs CEP Port Arthur Joint Venture, International Institute for Conflict Prevention and Resolution (August 25, 2016).

Deposition of Daniel R. Fischel In Re: Syngenta AG MIR162 Corn Litigation, In the United States District Court for the District of Kansas; Case No. 2;14-MD-02591-JWL-JPO and In Re: Syngenta Litigation, In the State of Minnesota District Court, County of Hennepin, Fourth Judicial District, Case No. 27-CV-15-385 (August 11, 2016).

Deposition of Daniel R. Fischel in The Western and Southern Life Insurance Company vs. The Bank of New York Mellon, Court of Common Pleas, Hamilton County, Ohio, Case No. A 1302490 (July 27, 2016).

Testimony of Daniel R. Fischel in Herbalife, Ltd., vs. KPMG LLP, Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution, CPR Case No. 1100076998 (May 19, 2016).

Testimony of Daniel R. Fischel in iHeart Communications, Inc., f/k/a Clear Channel Communications, Inc. vs. Benefit Street Partners, et al., In the District Court of Bexar County, Texas, Cause No. 2016 CI 04006 (May 17, 2016).

Deposition of Daniel R. Fischel in iHeart Communications, Inc., f/k/a Clear Channel Communications, Inc. vs. Benefit Street Partners, et al., In the District Court of Bexar County, Texas, Cause No. 2016 CI 04006 (May 12, 2016).

Testimony of Daniel R. Fischel in U.S. Commodity Futures Trading Commission v. Igor B. Oystacher and 3 Red Trading, LLC, In the United States District Court for the Northern District of Illinois, Eastern Division, Docket No. 15 C 9196 (May 6, 2016).

Testimony of Daniel R. Fischel in Merion Capital LP and Merion Capital II, LP vs. Lender Processing Services, Inc., In the Court of Chancery of the State of Delaware, C.A. No. 9320-VCL (May 4 and 5, 2016).

Exhibit 5
Page 113

Testimony of Daniel R. Fischel in iHeart Communications, Inc., f/k/a Clear Channel Communications, Inc. v. Benefit Street Partners LLC, et al., In the District Court of Bexar County, Texas, 285th Judicial District, Cause No. 2016-CI 04006 (April 5, 2016).

Deposition of Daniel R. Fischel in iHeart Communications, Inc., f/k/a Clear Channel Communications, Inc. v. Benefit Street Partners LLC, et al., In the District Court of Bexar County, Texas, 285th Judicial District, Cause No. 2016-CI 04006 (April 2, 2016).

Deposition of Daniel R. Fischel in Herbalife Ltd. vs. KPMG LLP, Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution, CPR Case No. 1100076998 (March 31, 2016).

Deposition of Daniel R. Fischel in U.S. Commodity Futures Trading Commission v. Igor B. Oystacher and 3 Red Trading, LLC, In the United States District Court, Northern District of Illinois, Eastern Division, No. 15-cv-09196 (March 25, 2016).

Deposition of Daniel R. Fischel in Merion Capital LP and Merion Capital II, LP vs. Lender Processing Services, Inc., In the Court of Chancery of the State of Delaware, C.A. No. 9320-VCL (March 15, 2016).

Deposition of Daniel R. Fischel in Lawrence E. Jaffe Pension Plan, On Behalf of Itself and All Others Similarly Situated v. Household International, Inc., et al., In the United States District Court, Northern District of Illinois Eastern Division, Lead Case No. 02-C-5893 (February 24, 2016).

Deposition of Daniel R. Fischel in Robert E. Morley, Jr. and REM Holdings 3, LLC vs. Square, Inc., Jack Dorsey, and James McKelvey, Jr., United States District Court for the Eastern District of Missouri, Eastern Division, Civil Action No. 14-CV-00172-SNLJ (February 19, 2016).

Testimony of Daniel R. Fischel In the Matter of the Application of U.S. Bank National Association, The Bank of New York Mellon, et al., Supreme Court of the State of New York, County of New York, Index No. 652382/2014 (January 20 and 21, 2016).

Testimony of Daniel R. Fischel in Sangeeth Peruri v. Ameriprise Financial, Inc., et al, American Arbitration Association Case No. 01-15-0002-3991 (December 7, 2015).

Deposition of Daniel R. Fischel In the Matter of the Application of U.S. Bank National Association, The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., et al, In the Supreme Court of the State of New York, County of New York, Index No. 652382/2014 (December 3, 2015).

Testimony of Daniel R. Fischel in Securities and Exchange Commission v. Arkadiy Dubovoy, et al, In the United States District Court for the District of New Jersey, Civil Case No. 15-cv-6076-MCA (October 8, 2015).

Deposition of Daniel R. Fischel in Steven A. Stender, Harold Silver and Infinity Clark Street Operating, L.L.C., on behalf of themselves and all others similarly situated v. Archstone-Smith Operating Trust, et al., in the United States District Court for the District of Colorado, Case No. 07-CV-02503-WJM-MJW (July 24, 2015).

Exhibit 5
Page 114

Testimony of Daniel R. Fischel In Re: Determination of Royalty Rates and Terms for Ephemeral Recording and Digital Performance of Sound Recordings (Web IV), in the United States Copyright Royalty Judges, The Library of Congress, Docket No. 14-CRB-0001-WR (2016-2020) (May 21 and 22, 2015).

Deposition of Daniel R. Fischel In Re: Determination of Royalty Rates and Terms for Ephemeral Recording and Digital Performance of Sound Recordings (Web IV), in the United States Copyright Royalty Judges, The Library of Congress, Docket No. 14-CRB-0001-WR (2016-2020) (April 1, 2015).

Deposition of Daniel R. Fischel in MacDermid, Incorporated vs. Cookson Group, PLC, Cookson Electronics and Enthone, Inc., in the Superior Court, Judicial District of Waterbury, Docket No. UWY-CV-12-6016356-S (January 21, 2015)

Testimony of Daniel R. Fischel in the Securities and Exchange Commission vs. Samuel E. Wyly and Donald R. Miller, Jr., in his capacity as the Independent Executor of the Will and Estate of Charles J. Wyly, Jr., in the United States District Court, Southern District of New York, 10 Civ. 5760 (SAS) (November 17, 2014).

Deposition of Daniel R. Fischel In Re: Activision Blizzard, Inc. Stockholder Litigation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 8885-VCL (October 17, 2014).

Testimony of Daniel R. Fischel in Hugh M. Caperton, Harman Development Corporation, Harman Mining Corporation, and Sovereign Coal Sales, Inc. v. A.T. Massey Coal Company, Inc., In the Circuit Court for Buchanan County, Case No. 027CL10000771-00 (May 20 and 21, 2014).

Deposition of Daniel R. Fischel in Center Partners, Ltd., et al v. Urban Shopping Centers, L.P., et al., In the Circuit Court of Cook County, Illinois, County Department, Law Division, Case No. 04 L 012194 (April 24, 2014).

Deposition of Daniel R. Fischel in Third Point LLC v. William F. Ruprecht, et al and Sotheby's, In the Court of Chancery of the State of Delaware, C.A. No. 9469-VCP (April 19, 2014).

Deposition of Daniel R. Fischel in Hugh M. Caperton, Harman Development Corporation, Harman Mining Corporation, and Sovereign Coal Sales, Inc. v. A.T. Massey Coal Company, Inc., In the Circuit Court for Buchanan County, Case No. 027CL10000771-00 (March 14, 2014).

Deposition of Daniel R. Fischel in Corre Opportunities Fund, LP, Zazove Associates LLC, DJD Group LLLP, First Derivative Traders LP, and Kevan A. Fight vs. Emmis Communications Corporation, United States District Court, Southern District of Indiana, Indianapolis Division, Case No. 1:12-cv-0491-SEB-TAB (October 4, 2013).

Testimony of Daniel R. Fischel In the Matter of the Application of The Bank of New York Mellon, (As Trustee Under Various Pooling and Servicing Agreements and Indenture Trustee under various indentures), Petitioner, for an order, pursuant to CPLR §7701, seeking judicial instructions and approval of a proposed settlement, Index No. 651786/11, Supreme Court of the State of New York, County of New York: Trial Term Part 39 (September 9 and 10, 2013).

Exhibit 5
Page 115

Testimony of Daniel R. Fischel In Re: September 11 Litigation, Case No. 21 MC 97 (AKH), United States District Court for the Southern District of New York, (July 16, 2013)

Deposition of Daniel R. Fischel in Cantor Fitzgerald & Co., et al v. American Airlines, Inc., et al, Case No. 21 MC 101 (AKH), 04 CV 7318 (AKH), United States District Court, Southern District of New York (July 1, 2013).

Deposition of Daniel R. Fischel In Re: Pfizer Inc. Securities Litigation, Case No. 04 Civ. 9866 (RO) In The United States District Court for the Southern District of New York (June 28, 2013).

Testimony of Daniel R. Fischel in William T. Esrey, Julie C. Esrey, Ronald T. LeMay and Casondra C. Lemay v. Ernst & Young LLP Arbitration, Case No. 13 107 Y 02332 11 (May 29, 2013).

Deposition of Daniel R. Fischel in Christine Bauer-Ramazani and Carolyn B. Duffy, on behalf of themselves and all other similarly situated v. Teachers Insurance and Annuity Association of America – College Retirement and Equities Fund (TIAA-CREF), et al, in the United States District Court, District of Vermont, Docket No. 1:09-cv-190 (May 21, 2013).

Deposition of Daniel R. Fischel In Re: Google Inc. Class C Shareholder Litigation, In the Court of Chancery of the State of Delaware, Case No. 7469CS (May 17, 2013).

Deposition of Daniel R. Fischel In the Matter of the application of The Bank of New York Mellon (as Trustee under various Pooling and Servicing Agreements and Indenture Trustee under various Indentures), et al., Supreme Court of the State of New York, County of New York, Index No. 651786/2011 (May 9, 2013).

Deposition of Daniel R. Fischel in William T. Esrey, Julie C. Esrey, Ronald T. Lemay, and Casondra C. Lemay v. Ernst & Young, L.L.P., Before the American Arbitration Association, Case No. 1234 (May 7, 2013).

Deposition of Daniel R. Fischel in Archer Well Company, Inc. v. GW Holdings LLC and Wexford Capital LP, in the United States District Court, Southern District of New York, ECF Case No. 1 1:12-cv-06762-JSR (April 5, 2013).

Testimony of Daniel R. Fischel in Meso Scale Diagnostics, LLC , Meso Scale Technologies, LLC v. Roche Diagnostics GmbH, et al., In the Court of Chancery of the State of Delaware, Civil Action No. 5589-VCP (February 27, 2013).

Deposition of Daniel R. Fischel in Center Partners, Ltd. et al v. Urban Shopping Centers, L.P., et al, Circuit Court of Cook County, Illinois, No. 04 L 012194 (February 6 and 7, 2013).

Deposition of Daniel R. Fischel In Re: September 11 Litigation, United States District Court, Southern District of New York, Civil Action No. 21 MC 101 (AKH) (January 11, 2013).

Deposition of Daniel R. Fischel in Meso Scale Diagnostics, LLC, Meso Scale Technologies, LLC v. Roche Diagnostics GmbH, et al., In the Court of Chancery of the State of Delaware, Case No: 5589-VCP (November 12, 2012).

Testimony of Daniel R. Fischel in Stuart Bederman, et al. v. Archstone, f/k/a Archstone-Smith Operating Trust, Arbitration before the Honorable Bruce W. Kauffman (October 17, 2012).

Exhibit 5
Page 116

Deposition of Daniel R. Fischel in <u>David E. Brown, et al. v. Authentec, Inc. et al.</u>, In the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, Civil Division, Case No. 05-2012-CA-57589 (September 18, 2012).

Deposition of Daniel R. Fischel in <u>Stuart Bederman, et al. v. Archstone, f/k/a Archstone-Smith Operating Trust,</u> Arbitration before the Honorable Bruce W. Kauffman (September 14, 2012).

Testimony of Daniel R. Fischel in <u>Tronox, Incorporated, et al., v. Kerr-McGee Corporation, et al.,</u> United States Bankruptcy Court, Southern District of New York, Adversary Proceeding No. 09-10098(ALG) (August 7, 8 and 9, 2012).

Deposition of Daniel R. Fischel <u>In re McAfee, Inc. Shareholder Litigation</u>, Superior Court of the State of California, County of Santa Clara, Lead Case No. 1:10-cv-180413 (August 2, 2012).

Testimony of Daniel R. Fischel in <u>Kraft Foods Global, Inc., v. Starbucks Corporation</u>, Arbitration Before JAMS, Arbitration No. 1340008345 (July 31, 2012).

Deposition of Daniel R. Fischel in <u>Altana Pharma AG, and Wyeth v. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd.,</u> In the United States District Court, District of New Jersey, Consolidated Civil Action Nos. 04-2355 (JLL)(CCC), 05-1966 (JLL)(CCC), 05-3920 (JLL)(CCC) and 05-3672 (JLL)(CCC) (June 1, 2012).

Deposition of Daniel R. Fischel in <u>Kraft Foods Global, Inc. v. Starbucks Corporation</u>, Arbitration before JAMS, Arbitration No. 1340008345 (May 15, 2012).

Deposition of Daniel R. Fischel in <u>Capital One Financial Corporation v. John A. Kanas and John Bohlsen</u>, In the United States District Court for the Eastern District of Virginia, Alexandria Division, Civil Action No. 1:11-cv-750 (LO/TRJ) (May 10, 2012).

Deposition of Daniel R. Fischel <u>In Re: Pfizer Inc. Securities Litigation</u>, In the United States District Court, Southern District of New York, Case 1:04-cv-09866-LTS-HBP (May 3, 2012).

Deposition of Daniel R. Fischel in <u>Willie R. Pittman, Susan B. Seales and Stephen T. Selzer vs. J. Coley Clark, Moneygram International, Inc., et al.,</u> In the Court of Chancery of the State of Delaware, C.A. No. 6387-VCL (April 26, 2012).

Deposition of Daniel R. Fischel in <u>Chona Allison, et al v. CRC Insurance Services, Inc.,</u> In the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 10-3313 (March 14 and 15, 2012).

Deposition of Daniel R. Fischel <u>In Re: Tronox Incorporated, et al., Debtors</u>, In the United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No. 09-10156 (ALG) (February 24, 2012).

Testimony of Daniel R. Fischel <u>In Re: BankAtlantic Bancorp, Inc. Litigation</u>, In the Court of Chancery of the State of Delaware, Consolidated Civil Action No. 7068-VCL (January 27 and 30, 2012).

Exhibit 5
Page 117

Deposition of Daniel R. Fischel in <u>Hildene Capital Management, LLC et al v. BankAtlantic
Bancorp, Inc., et al</u>, In the Court of Chancery of the State of Delaware, C.A. No. 7068-
VCL (January 19, 2012).

Deposition of Daniel R. Fischel in <u>Advanced Analogic Technologies, Incorporated v. Skyworks
Solutions, Inc. and Powerco Acquisition Corp.</u>, In the Court of Chancery of the State of
Delaware, Arbitration No. 005-A-CS (November 18, 2011).

Testimony of Daniel R. Fischel in <u>Prudential Retirement Insurance and Annuity Company v.
State Street Bank and Trust Company and State Street Global Advisors, Inc.</u>, United
States District Court, Southern District of New York, Case No. 07-CV-8488 (October 13,
2011).

Deposition of Daniel R. Fischel <u>In re: Inkeepers USA Trust, et al v. Cerberus Series Four
Holdings, LLC.</u>, et al, United States Bankruptcy Court, Southern District of New York,
Case No. 10-13800 (SCC) (October 5, 2011).

Deposition of Daniel R. Fischel in <u>Mary K. Jones, et al v. Pfizer, Inc., et al</u>, United States District
Court, Southern District of New York, Civil Action No. 10-cv-03864 (AKH) ECF (October 4,
2011).

Testimony of Daniel R. Fischel in <u>Marina Del Rey Country Club Apartments, et al. vs. Archstone
and Archstone Multifamily Series I Trust</u>, Ruby/Archstone Arbitration (August 30, 2011).

Deposition of Daniel R. Fischel in <u>Maher Terminals, LLC v. The Port Authority of New York and
New Jersey</u>, Before the Federal Maritime Commission, FMC Docket No. 08-03 (August
25, 2011).

Testimony of Daniel R. Fischel in <u>Securities and Exchange Commission v. Joseph P. Nacchio,
Robert S. Woodruff, Afshin Mohebbi, James J. Kozlowski and Frank T. Noyes</u>, United
States District Court for the District of Colorado, Civil Action No. 05-cv-480-MSK-CBS
(August 16, 2011).

Affidavit of Daniel R. Fischel in <u>Glenhill Capital LP, et al v. Porsche Automobil Holding, SE, f/k/a
Dr. Ing. h.c. F. Porsche AG</u>, Supreme Court of the State of New York, County of New York,
Index Number 650678/2011 (August 15, 2011).

Deposition of Daniel R. Fischel in <u>Fairfax Financial Holdings Limited and Crum & Forster
Holdings Corp. v. S.A.C. Capital Management, LLC, et al.</u>, Superior Court of New Jersey,
Law Division: Morris County, Docket No. MRS-L-2032-06 (July 27, 2011).

Deposition of Daniel R. Fischel <u>In re: Lyondell Chemical Company, et al v. Leonard Blavatnik</u>, et
al., United States Bankruptcy Court, Southern District of New York, Chapter 11 Case No.
09-10023 – (REG) (Jointly Administered) (July 25, 2011).

Deposition of Daniel R. Fischel <u>In Re Constar Int'l Inc. Securities Litigation</u>, United States
District Court, Eastern District of Pennsylvania, Master File No. 03cv05020 (June 28,
2011).

Affidavit of Daniel R. Fischel <u>In Re Massey Energy Co. Derivative and Class Action Litigation</u>, In
The Court of Chancery of the State of Delaware, C.A. No. 5430-VCS (May 20, 2011).

Exhibit 5
Page 118

Deposition of Daniel R. Fischel in <u>Marina Del Rey Country Club, et al v. Archstone and</u>
<u>Archstone Multifamily Series I Trust</u>, Ruby/Archstone Arbitration (May 9, 2011).

Testimony of Daniel R. Fischel in <u>The Dow Chemical Company v. Petrochemical Industries</u>
<u>Company (K.S.C.)</u>, International Chamber of Commerce, International Court of
Arbitration, ICC Case No. 16127/JEM/MLK (April 7, 2011).

Testimony of Daniel R. Fischel <u>In Re: Tribune Company, et al., Debtors</u>, In the United States
Bankruptcy Court for the District of Delaware, Chapter 11, Case No. 08-13141 (KJC)
(March 10, 2011).

Deposition of Daniel R. Fischel <u>In Re: Tribune Company, et al., Debtors</u>, In the United States
Bankruptcy Court for the District of Delaware, Chapter 11, Case No. 08-13141 (KJC)
(March 2, 2011).

Deposition of Daniel F. Fischel <u>In Re: Genetically Modified Rice Litigation</u>, In the United States
District Court for the Eastern District of Missouri, Eastern Division, Case No. 4:06 MD
1811 CDP (February 15, 2011).

Deposition of Daniel R. Fischel in <u>Riceland Food, Inc. v. Bayer Cropscience LP, et al</u>, In the
United States District Court, Eastern District of Missouri, Eastern Division, Case No. 4:09-
cv-00433 CDP (January 18, 2011).

Deposition of Daniel R. Fischel <u>In Re: Genetically-Modified Rice Litigation</u>, In the United States
District Court for the Eastern District of Missouri, Case No. 4:06-MD-1811 (November 11,
12, 2010).

Deposition of Daniel R. Fischel in <u>Coleen Witmer, Individually, and on Behalf of All Others</u>
<u>Similarly Situated v. Dynegy Inc.</u>, In the District Court of Harris County, Texas, 234th
Judicial District (November 6, 2010).

Testimony of Daniel R. Fischel in <u>Terra Firma (GP) 2 Investments Limited v. Citigroup Inc.</u>,
United States District Court for the Southern District of New York, No. 1:09-CV-10459
(JSR) (November 2, 2010).

Testimony of Daniel R. Fischel in <u>Terra Firma (GP) 2 Investments Limited v. Citigroup Inc.</u>,
United States District Court for the Southern District of New York, No. 1:09-CV-10459
(JSR) (October 22, 2010).

Testimony of Daniel R. Fischel in <u>Air Products and Chemicals, Inc. v. Airgas, Inc., Peter</u>
<u>McCausland, et al</u>, In the Court of Chancery of the State of Delaware, C.A. No. 5249-CC
(October 5, 2010).

Deposition of Daniel R. Fischel in <u>Air Products and Chemicals, Inc. v. Airgas, Inc., Peter</u>
<u>McCausland, et al</u>, In the Court of Chancery of the State of Delaware, C.A. No. 5249-CC
(September 8, 2010).

Deposition of Daniel R. Fischel in <u>Terra Firma (GP) 2 Investments Limited v. Citigroup Inc.</u>,
United States District Court for the Southern District of New York, No. 1:09-CV-10459
(JSR) (July 28, 2010).

Exhibit 5
Page 119

Deposition of Daniel R. Fischel in <u>Citadel Investment Group, L.L.C. et al v. Mikhail Malyshev and
Jace Kohlmeier</u>, In the American Arbitration Association, Case No.AAA No. 51 166 00969
09 (July 13, 2010).

Testimony of Daniel R. Fischel <u>In Re: United States of America v. Joseph P. Nacchio</u>, in the
United States District Court for the District of Colorado, Case No. 05-CR-00545-EWN
(June 23, 2010).

Deposition of Daniel R. Fischel in <u>Cantor Fitzgerald Securities, Cantor Fitzgerald & Co., Cantor
Fitzgerald Partners v. The Port Authority of New York and New Jersey</u>, in the Supreme
Court of the State of New York, County of New York, Case No. 105447/94 (June 4, 2010).

Deposition of Daniel R. Fischel in <u>Alaska Retirement Management Board on behalf of State of
Alaska Public Employees' Retirement System and State of Alaska Teachers' Retirement
System v. Mercer (US), Inc., Mercer Human Resources Consulting, Inc., and William M.
Mercer, Inc.</u>, in The Superior Court for the State of Alaska, First Judicial District at Juneau,
Case No. 1JU-07-974CI (April 29, 2010).

Deposition of Daniel R. Fischel <u>In Re: ACS Shareholders Litigation</u>, in The Court of Chancery of
the State of Delaware, Consolidated Case No. 4940-VCP (April 26, 2010).

Testimony of Daniel R. Fischel in <u>Securities and Exchange Commission v. Carl W. Jasper</u>, in the
United States District Court for the Northern District of California, San Jose Division, Case
No. C-07-06122-JW (April 16, 2010).

Deposition of Daniel R. Fischel in <u>Prudential Retirement Insurance and Annuity Company v.
State Street Bank and Trust Company and State Street Global Advisors, Inc.</u>, in the United
States District Court, Southern District of New York, Case No. 07 CIV 8488 (April 9, 2010).

Deposition of Daniel R. Fischel <u>In re: Lyondell Chemical Company, et al., Debtors. Official
Committee of Unsecured Creditors, on behalf of the Debtors' Estates v. Citibank, N.A., et
al.</u>, in the United States Bankruptcy Court, Southern District of New York, Chapter 11 Case
No. 09-10023 – (RED) (December 2, 2009).

Deposition of Daniel R. Fischel in <u>Securities and Exchange Commission v. Carl W. Jasper</u>, In
the United States District Court, Northern District of California, San Jose Division, Case
No. CV 07-6122 (HRL) (October 22, 2009).

Testimony of Daniel R. Fischel in <u>Ventas, Inc. v. HCP, Inc.</u>, In the United States District Court of
the Western District of Kentucky at Louisville, Civil Action No. 3:07-cv-00238-JGH
(September 2, 2009).

Deposition of Daniel R. Fischel in <u>Frank K. Cooper Real Estate #1, Inc., et al vs. Cendant
Corporation f/k/a Hospitality Franchise Systems and Century 21 Real Estate Corporation</u>,
Superior Court of New Jersey, Law Division: Morris County, Docket No. MRS-L-377-02
(August 10, 2009).

Deposition of Daniel R. Fischel in <u>Ventas, Inc. v. HCP, Inc.</u>, In the United States District Court of
the Western District of Kentucky at Louisville, Civil Action No. 3:07-cv-00238-JGH (August
3, 2009).

Exhibit 5
Page 120

Deposition of Daniel R. Fischel in <u>U.S. Commodity Futures Trading Commission v. Amaranth Advisors, L.L.C., Amaranth Advisors (Calgary) and Brian Hunter</u>, in the United States District Court, Southern District of New York, Case No. 07 CIV 6682 (July 8, 2009).

Declaration and Expert Surrebutal Report of Daniel R. Fischel in <u>Ventas, Inc. v. HCP, Inc.</u>, In The United States District Court for the Western District of Kentucky at Louisville, Case No. 3:07-CV-00238-JGH (June 22, 2009).

Testimony of Daniel R. Fischel in <u>NRG Energy, Inc. v. Exelon Corporation and Exelon Exchange Corporation</u>, in the United States District Court, Southern District of New York, Case No. 09-CV-2448 (JGK) (DFE), (June 3, 2009).

Deposition of Daniel R. Fischel In <u>Re: Delphi Corporation v. Appaloosa Management L.P., et al.</u>, In the United States Bankruptcy Court, Southern District of New York; Chapter 11, Case No. 05-44481(RDD) (Jointly administered), (June 2, 2009).

Deposition of Daniel R. Fischel in <u>NRG Energy, Inc. v. Exelon Corporation and Exelon Exchange Corporation</u>, in the United States District Court, Southern District of New York, Case No. 09-CV-2448 (JGK) (DFE), (May 31, 2009).

Deposition of Daniel R. Fischel in <u>e-Bay Domestic Holdings, Inc. v. Craig Newmark and James Buckmaster and Craigslist, Inc.</u>, in the Court of Chancery of the State of Delaware, Case No. 3705-CC (May 29, 2009)

Testimony of Daniel R. Fischel <u>In Re: Lawrence E. Jaffe Pension Plan, et al v. Household International, Inc., et al</u>, in the United States District Court for the Northern District of Illinois, Eastern Division, No. 02-C-5893 (April 16, 20, 28 and 29, 2009).

Deposition of Daniel R. Fischel <u>In Re: Rohm and Haas Company v. The Dow Chemical Company and Ramses Acquisition Corp.</u>, In the Court of Chancery of the State of Delaware, C.A. No. 4309-CC (March 4, 2009).

Deposition of Daniel R. Fischel <u>In the Matter of Hoffman, et al. v. American Express Travel Related Services Company, Inc., et al.</u>, in the Superior Court of the State of California, in and for the County of Alameda, Case No. 2001-022881 (January 15, 2009).

Deposition of Daniel R. Fischel <u>In Re: TyCom Ltd. Securities Litigation</u>, in the United States District Court, District of New Hampshire, Docket No. 03-CV-1352 (September 22, 2008).

Deposition of Daniel R. Fischel <u>In Re: Hexion Specialty Chemicals, Inc., et al v. Huntsman Corp.</u>, in the Court of Chancery of the State of Delaware, Civil Action No. 3841-VCL (September 4, 2008).

Deposition of Daniel R. Fischel <u>In Re: Stone Energy Corp. Securities Litigation</u>, in the United States District Court, Western District of Louisiana, Lafayette-Opelousas Division, Civil Action No. 6:05CV2088 (LEAD) (July 16, 2008).

Deposition of Daniel R. Fischel <u>In Re: Initial Public Offering Securities Litigation</u>, in the United States District Court, Southern District of New York, Master File No. 21 MC 92 (SAS) (April 3 and 4, 2008).

Exhibit 5
Page 121

Deposition of Daniel R. Fischel In Re: Lawrence E. Jaffe Pension Plan, et al v. Household International, Inc., et al, in the United States District Court for the Northern District of Illinois, Eastern Division, No. 02-C-5893 (March 21, 2008).

Deposition of Daniel R. Fischel In Re: IAC/InteractiveCorp and Barry Diller v. Liberty Media Corporation, in the Court of Chancery of the State of Delaware in and for New Castle County, Consolidated Case Number 3486-VCL (February 29, 2008).

Testimony of Daniel R. Fischel In Re: Immunicon Corporation v. Veridex LLC, before the American Arbitration Association (Commercial Arbitration Rules), Case Number 50 180T 00192 07 (January 17, 2008).

Deposition of Daniel R. Fischel In Re: Unitedglobalcom Shareholders Litigation, in the Court of Chancery of the State of Delaware in and for New Castle County, Consolidated C.A. No. 1012-N (November 19, 2007).

Deposition of Daniel R. Fischel In Re: Cendant Corporation Litigation, in the United States District Court for the District of New Jersey, Master File No. 98-1664 (WHW) (November 15, 2007).

Deposition of Daniel R. Fischel In Re: Cendant Corporation Litigation, in the United States District Court for the District of New Jersey, Master File No. 98-1664 (WHW) (October 16, 2007).

Deposition of Daniel R. Fischel In Re Schering-Plough Corporation Securities Litigation, in the United States District Court for the District of New Jersey, Master File No. 01-CV-0829 (KSH/RJH) (October 12, 2007).

Deposition of Daniel R. Fischel In Re: Carpenters Health & Welfare Fund, et al. vs. The Coca-Cola Company, in the United States District Court, Northern District of Georgia, Atlanta Division, File No. 1:00-CV-2838-WBH (Consolidated) (September 26, 2007).

Deposition of Daniel R. Fischel In Re: Parker Freeland, et al., vs. Iridium World Communications, Ltd., et al., in the United States District Court for the District of Columbia, Civil Action No. 99-1002 (August 7, 2007).

Deposition of Daniel R. Fischel In Re: Chuck Ginsburg v. Philadelphia Stock Exchange, Inc., et al., In the Court of Chancery of the State of Delaware in and for New Castle County, C.A. No. 2202-N (June 12, 2007).

Testimony of Daniel R. Fischel In Re: Holcombe T. Green and HTG Corp. v. McKesson, Inc., et al, In the Superior Court for the County of Fulton, State of Georgia, Civil Action File No. 2002-CV-48407 (June 5, 2007).

Affidavit of Daniel R. Fischel In Re: Lear Corporation Shareholders Litigation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 2728-VCS (May 30, 2007).

Affidavit of Daniel R. Fischel In Re: Aeroflex, Inc. Shareholder Litigation, in the Supreme Court of the State of New York, County of Nassau: Commercial Division, Index No. 07-003943 (May 23, 2007).

Exhibit 5
Page 122

Deposition of Daniel R. Fischel In Re: Holcombe T. Green and HTG Corp. v. McKesson, Inc.,
HBO & Company, Albert Bergonzi, and Jay Gilbertson, in the Superior Court for the
County of Fulton, State of Georgia, Civil Action File No. 2002W48407 (May 21, 2007).

Deposition of Daniel R. Fischel In Re: Adelphia Communications Corp. v. Deloitte & Touche LLP,
et al, in the Court of Common Pleas, Philadelphia County, Pennsylvania, Case No. 000598
(May 3 and 4, 2007).

Testimony of Daniel R. Fischel In Re: United States of America v. Joseph P. Nacchio, in the
United States District Court for the District of Colorado, Case No. 05-CR-00545-EWN
(April 9, 2007).

Deposition of Daniel R. Fischel In Re: MK Resources Company Shareholders Litigation, in the
Court of Chancery for the State of Delaware in and for New Castle County, C.A. No. 1692-
N (February 22, 2007).

Deposition of Daniel R. Fischel In Re: Starr International Company, Inc. v. American
International Group, Inc., In the United States District Court, Southern District of New York,
Case No. 05 CV 6283 (January 26, 2007).

Written testimony of Daniel R. Fischel In Re: Verizon Communications Inc. and Verizon Services
Corp. v. Christopher G. Pizzirani, In the United States District Court for the Eastern District
of Pennsylvania, Case No. 2:06-cv-04645-MK (November 6, 2006).

Testimony of Daniel R. Fischel In Re: Northeast Savings, F.A. v. United States of America, In
The United States Claims Court, Case No. 92-550 C (November 2 and 9, 2006).

Testimony of Daniel R. Fischel In Re: United States of America v. Sanjay Kumar and Stephen
Richards, United States District Court, Eastern District of New York, 04 Civ. 4104 (ILG)
(October 25, 2006).

Affidavit of Daniel R. Fischel In Re: Lionel I. Brazen and Nancy Hammerslough, et al v. Tyco
International Ltd., et al, In the Circuit Court of Cook County, Illinois County Department,
Chancery Division, No. 02 CH 11837 (September 18, 2006).

Deposition of Daniel R. Fischel In Re: Tele-Communications, Inc. Shareholders Litigation, in the
Court of Chancery of the State of Delaware in and for New Castle County, Consolidated
C.A. No. 16470 (September 15, 2006).

Affidavit of Daniel R. Fischel In Re: United States of America v. Sanjay Kumar and Stephen
Richards, United States District Court, Eastern District of New York, 04 Civ. 4104 (ILG)
(September 8, 2006).

Deposition of Daniel R. Fischel In Re: James Gilbert v. McKesson Corporation, et al., in the
State Court of Fulton County, State of Georgia, Civil Action File No. 02VS032502C
(September 7, 2006).

Supplemental Declaration of Daniel R. Fischel In Re: United States of America v. Jeffrey K.
Skilling, in the United States District Court, Southern District of Texas, Houston Division,
Crim. No. H-04-25 (Lake, J.) (August 25, 2006).

Exhibit 5
Page 123

Affidavit of Daniel R. Fischel In Re: United States of America v. Sanjay Kumar and Stephen Richards, United States District Court, Eastern District of New York, 04 Civ. 4104 (ILG) (August 22, 2006).

Declaration of Daniel R. Fischel In Re: United States of America v. Jeffrey K. Skilling, in the United States District Court, Southern District of Texas, Houston Division, Crim. No. H-04-25 (Lake, J.) (August 3, 2006).

Deposition of Daniel R. Fischel In Re: Enron Corporation Securities Litigation, in the United States District Court, Southern District of Texas, Houston Division, Case Number: H-01-3624 (May 24, 2006).

Testimony of Daniel R. Fischel In Re: Guidant Corporation Shareholders Derivative Litigation, in the United States District Court, Southern District of Indiana, Indianapolis Division, Master Derivative Docket No. 1:03-CV-955-SEB-WTL (January 20, 2006).

Testimony of Daniel R. Fischel In Re. Hideji Jumbo Tanaka v. Cerberus Far East Management, L.L.C., et al., AAA Case No. 50 T 116 00284 03, (December 15, 2005).

Deposition of Daniel R. Fischel In Re: McKesson HBOC, Inc. Securities Litigation, in the United States District Court for the Northern District of California, No. C-99-20743-RMW (August 16, 2005).

Testimony of Daniel R. Fischel In the Matter of Visconsi Companies Ltd., et al. and Lehman Brothers, et al., National Association of Securities Dealers Department of Arbitration, Grievance No. 03-07606 (July 26, 2005).

Testimony of Daniel R. Fischel in re: John P. Crowley, as Receiver of Ambassador Insurance Company v. Doris June Chait, et al., in the United States District Court for the District of New Jersey, Case No. 85-2441 (HAA) (July 21 and 22, 2005).

Deposition of Daniel R. Fischel In re: Electronic Data Systems Corporation Securities Litigation, in the United States District Court for the Eastern District of Texas, Tyler Division, Case No. 6:03-MD-1512 (July 20, 2005).

Testimony of Daniel R. Fischel in re: United States of America v. Philip Morris, Inc., et al, in the United States District Court for the District of Columbia, Case No. 1:99CV02496 (May 26 and 27, 2005).

Deposition of Daniel R. Fischel in re: Cordis Corporation v. Boston Scientific Corporation, et ano, in the United States District Court for the District of Delaware, Case No. 03-027-SLR (May 25, 2005).

Deposition of Daniel R. Fischel in re: United States of America v. Philip Morris, Inc., et al, in the United States District Court for the District of Columbia, Case No. 1:99CV02496 (May 16, 2005).

Testimony of Daniel R. Fischel in re: Drury Industries, Inc. v. Drury Properties, Inc., in the First Judicial District Court of the State of Nevada in and for Carson City, Nevada (April 6 and 7, 2005).

Exhibit 5
Page 124

Deposition of Daniel R. Fischel in re: <u>Jerry R. Summers and George T. Lenormand, et al v. UAL Corporation ESOP Committee, Marty Torres, Barry Wilson, Doug Walsh, Ira Levy, Don Clements, Craig Musa, and State Street Bank and Trust Company</u>, in the United States District Court for the North District of Illinois, Eastern Division, No. 03 C 1537 (March 9, 2005).

Deposition of Daniel R. Fischel in re: <u>Drury Industries, Inc. v. Drury Properties, Inc.</u>, in the First Judicial District Court of the State of Nevada in and for Carson City, Nevada (March 7 and 10, 2005).

Testimony of Daniel R. Fischel In the Matter of <u>Fyffes PLC v. DCC PLC, S&L Investments Limited, James Flavin and Lotus Green Limited</u>, in The High Court, Dublin, Ireland (2002 No. 1183P) (February 1 and 2, 2005).

Deposition of Daniel R. Fischel <u>In the Matter of the Arbitration between The Canada Life Assurance Company and The Guardian Life Insurance Company of America</u> (January 12, 2005).

Deposition of Daniel R. Fischel <u>In Re: IDT Corporation vs. Telefonica, S.A., et al</u>, in the United States District Court, District of New Jersey, Civil Action No. 01-CV 471 (December 14, 2004).

Deposition of Daniel R. Fischel <u>In Re: DQE, Inc. Securities Litigation</u>, in the United States District Court, Western District of Pennsylvania, Master File No. 01-1851 (December 7, 2004)

Testimony of Daniel R. Fischel <u>In Re United States of America v. Daniel Bayly, James A Brown, Robert S. Furst, Daniel O. Boyle, William R. Fuhs and Sheila K. Kahanek</u>, in the United States District Court of Southern Texas Houston Division, Case No. H-CR-03-363 (November 4, 2004).

Testimony of Daniel R. Fischel <u>In the Matter of the Arbitration Between The Canada Life Assurance Company, Petitioner v. Caisse Centrale De Reassurance, Respondent</u>, (November 2, 2004).

Testimony of Daniel R. Fischel <u>In Re Yankee Atomic Electric Company, Connecticut Yankee Atomic Power Company, and Maine Yankee Atomic Power Company v. The United States</u>, in the United States Court of Federal Claims, Case Nos. 98-126C, 98-154C and 98-474C (August 9, 2004).

Affidavit of Daniel R. Fischel <u>In Re Oracle Corp. Derivative Litigation</u>, in the Court of the Chancery of the State of Delaware In and For New Castle County, Consolidated Civil Action No. 18751 (June 8, 2004).

Deposition of Daniel R. Fischel in re: <u>Reading International, Inc., et al v. Regal Entertainment Group, et al</u>, (Delaware Chancery Court) (May 30, 2004) .

Affidavit of Daniel R. Fischel in re: <u>Reading International, Inc., et al v. Regal Entertainment Group, et al</u>, (Delaware Chancery Court) (May 28, 2004) .

Deposition of Daniel R. Fischel in re: <u>Northeast Savings, F.A. v. United States of America</u>, in the United States Claims Court, Case No. 92-550-C (May 4, 5 and 6, 2004).

Exhibit 5
Page 125

Deposition of Daniel R. Fischel in re: <u>Tyson Foods, Inc. Securities Litigation</u>, in the United
States District Court for the District of Delaware, Civil Action No. 01-425-SLR (March 18,
2004).

Testimony of Daniel R. Fischel Re: <u>In the Matter of Coram Healthcare Corp. and Coram, Inc.,
Debtors</u>, In the United States Bankruptcy Court for the District of Delaware, Case No. 00-
3299 Through 00-3300 (MFW) (March 4, 2004).

Testimony of Daniel R. Fischel in <u>Tracinda Corporation v. DaimlerChrysler AG, et al</u>, in the
United States District Court for the District of Delaware, Civil Action No. 00-984 (February
11, 2004).

Deposition of Daniel R. Fischel in <u>Gerald K. Smith, as Plan Trustee for and on behalf of the
Estates of Boston Chicken, Inc., et al. v. Arthur Anderson LLP, et al.</u>, in the United States
District Court for the Northern District of Illinois, Case Nos. CIV-01-218-PHX-PGR, CIV-01-
246-PHX-EHC, CIV-02-1162-PHX-PGR, CIV-02-1248-PHX-PGR (Consolidated) (October
29 and 30, 2003).

Deposition of Daniel R. Fischel in <u>Irene Abrams, on behalf of herself and all others similarly
situated v. Van Kampen Funds, Inc., Van Kampen Investment Advisory Corp., Van
Kampen Prime Rate Income Trust, Howard Tiffen, Richard F. Powers III, Stephen L. Boyd,
Dennis J. McDonnell and Jeffrey W. Maillet</u>, in the United States District Court for the
Northern District of Illinois, Eastern Division, Case No. 01-C-7538 (October 21, 2003).

Deposition of Daniel R. Fischel Re: <u>In the Matter of Coram Healthcare Corp. and Coram, Inc.,
Debtors</u>, In the United States Bankruptcy Court for the District of Delaware, Case No. 00-
3299 Through 00-3300 (MFW) (October 13, 2003).

Testimony of Daniel R. Fischel in <u>Transcore Holdings, Inc. v. Rocky Mountain Mezzanine Fund
II, LP; Hanifen Imhoff Mezzanine Fund, LP; Moramerica Capital Corporation; and
NDSBIC, LP and W. Trent Ates and Fred H. Rayner, In Re: Jams Arbitration</u>, Case No.
1410003193 (September 24, 2003).

Deposition of Daniel R. Fischel in <u>Transcore Holdings, Inc. v. Rocky Mountain Mezzanine Fund
II, LP; Hanifen Imhoff Mezzanine Fund, LP; Moramerica Capital Corporation; and
NDSBIC, LP and W. Trent Ates and Fred H. Rayner, In Re: Jams Arbitration</u>, Case No.
1410003193 (May 13, 2003).

Deposition of Daniel R. Fischel in <u>AT&T Broadband Management Corporation v. CSG Systems,
Inc.</u>, American Arbitration Association No. 77 181 00159 02 VSS (April 9, 2003).

Deposition of Daniel R. Fischel <u>In Re: DaimlerChrysler AG Securities Litigation</u>, in the United
States District Court for the District of Delaware, Civil Action No. 00-993-JJF (February 11
and 12, 2003).

Deposition of Daniel R. Fischel in <u>David T. Bard, Commissioner of Banking and Insurance for
the State of Vermont, as Receiver for Ambassador Insurance Company v. Arnold Chait, et
al</u>, in the United States District Court for the District of New Jersey, Civil Action No. 85-
2441 (December 12, 2002).

Exhibit 5
Page 126

Testimony of Daniel R. Fischel in <u>MHC Financing Limited Partnership, et al vs. City of San Rafael, et al</u>, in the United States District Court, Northern District of California, Case No. C 00-3785 VRW (November 6, 2002).

Deposition of Daniel R. Fischel in <u>MHC Financing Limited Partnership, et al vs. City of San Rafael, et al</u>, in the United States District Court, Northern District of California, Case No. C 00-3785 VRW (October 16, 2002).

Deposition of Daniel R. Fischel in <u>Maine Yankee Atomic Power Company v. United States of America</u>, In the United States Court of Federal Claims, Case No. 98-474 C (October 8 and 9, 2002).

Testimony of Daniel R. Fischel in <u>California Federal Bank, FSB v. The United States of America</u>, In the United States Court of Federal Claims, Case No. 92-138C (September 20 and 23, 2002).

Deposition of Daniel R. Fischel in <u>Maine Yankee Atomic Power Company v. United States of America</u>, In the United States Court of Federal Claims, Case No. 98-474 C (September 4 and 6, 2002).

Deposition of Daniel R. Fischel <u>In the Matter of RDM Sports Group, Inc., et al v. Smith, Gambrell, Russell, L.L.P.; et al</u>, In the United States Bankruptcy Court for the Northern District of Georgia, Newnan Division, Case No. 00-1065 (May 14 and 15, 2002).

Deposition of Daniel R. Fischel in <u>Walter B. Hewlett, individually and as Trustee of the William R. Hewlett Revocable Trust, and Edwin E. van Bronkhorst as Co-Trustee of the William R. Hewlett Revocable Trust v. Hewlett-Packard Company</u>, in the Court of the Chancery of the State of Delaware in and for New Castle County (April 24, 2002).

Deposition of Daniel R. Fischel in <u>California Federal Bank, FSB, v. The United States of America</u>, in the United States District Court of Federal Claims, Case No. 92-138C (April 16 and 17, 2002).

Deposition of Daniel R. Fischel <u>In Re: Computer Associates Class Action Securities Litigation</u>, in the United States District Court, Eastern District of New York, File No. 98-CV-4839 (TPC) (MLO) (March 19 and 20, 2002).

Deposition of Daniel R. Fischel in <u>United States of America v. David Blech</u>, In the United States District Court, Southern District of New York, Case No. S1 97 Cr. 402 (KTD) (February 13, 2002).

Testimony of Daniel R. Fischel Re: <u>In the Matter of Coram Healthcare Corp. and Coram, Inc., Debtors</u>, In the United States Bankruptcy Court for the District of Delaware, Case No. 00-3299 Through 00-3300 (MFW) (December 14, 2001).

Deposition of Daniel R. Fischel in <u>Re: Sunbeam Securities Litigation</u>, In the United States District Court, Southern District of Florida, Miami Division, Case No. 98-8258-CIV – Middlebrooks (December 4, 5 and 6, 2001).

Affidavit of Daniel R. Fischel in Re: <u>Jack M. Webb, Special Deputy Receiver ForAmerican Eagle Insurance Company v. Elvis Mason, Mason Best Company, L.P., Don D. Hutson, American Eagle Group, Inc., Marion Phillip Guthrie, Frederick G. Anderson, George F. Cass, Richard</u>

Exhibit 5
Page 127

M. Kurz, Patricia S. Pickard, Arthur Andersen & Co., L.L.P., and Towers, Perrin Forester & Crosby, Inc., D/B/A Tillinghast, In the District Court of Travis County, Texas, 201st Judicial District, Cause No. 99-08253 (September 7, 2001).

Declaration of Daniel R. Fischel Re: In the Matter of Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities: Before the Federal Communications Commission, Washington DC, GN Docket No. 00-185, (Declaration with K. Arrow, G. Becker, D. Carlton, R. Gertner, J. Kalt, H. Sider, and Gustavo Bamberger) (July 24, 2001).

Declaration of Daniel R. Fischel in Re: Walter Green, on behalf of himself and all others similarly situated v. Merck-Medco Managed Care, L.L.C., United States District Court, Southern District of New York, Civil Action No. 99 CIV 0847 (CLB) (June 18, 2001).

Testimony of Daniel R. Fischel in Re:Tyson Foods, Inc. and Lasso Acquisition Corporation v. IBP, Inc., Delaware Chancery Court, (May 25, 2001).

Deposition of Daniel R. Fischel in Re:Tyson Foods, Inc. and Lasso Acquisition Corporation v. IBP, Inc., Delaware Chancery Court, (May 10, 2001).

Deposition of Daniel R. Fischel in Re: Myron Weiner, Nicholas Sitnycky, Ronald Anderson and Robert Furman on behalf of themselves and all others similarly situated v. The Quaker Oats Company and William D. Smithburg, United States District Court, Northern District of Illinois, Case No. 98 C 3123, (January 24, 2001).

Deposition of Daniel R. Fischel in Re: Retsky Family Limited Partnership v. Price Waterhouse, LLP, United States District Court, Northern District of Illinois, Eastern Division, No. 97 C 7694, (October 31, 2000).

Joint Affidavit of Daniel R. Fischel and David J. Ross in Re: Floyd D. Wilson, for himself and all others similarly situated v. Massachusetts Mutual Life Insurance Company, in the First Judicial District Court, County of Santa Fe, State of New Mexico, No. D0101 CV-98-02814 (August 4, 2000).

Affidavit of Daniel R. Fischel in Re: T. Rowe Price Recovery Fund, L.P., and Carl Marks Management Co., L.P., individually and derivatively on behalf of Seaman Furniture Co., Inc. v. James Rubin, M.D. Sass Associates, Inc., Resurgence Asset Management, L.L.C., M.D. Sass Corporation Resurgence Partners, L.P. , M.D. Sass Corporate Resurgence International, Ltd., Robert Symington, Byron Haney, Alan Rosenberg, Steven H. Halper, and Peter McGeough and Seaman Furniture Co., Inc., In the Court of Chancery of the State of Delaware in and for New Castle County, C.A. No. 18013, (June 7, 2000).

Testimony of Daniel R. Fischel in Re: Bank United of Texas, FSB, et al., v. United States of America, United States Court of Federal Claims, Case Number 95-437C, (October 12 and 14, 1999).

Deposition of Daniel R. Fischel in Re: Bank United of Texas, FSB, et al., v. United States of America, United States Court of Federal Claims, Case Number 95-437C, (September, 26, 1999; July 10, 1999; and June 16, 17, 1999),

Testimony of Daniel R. Fischel in Re: C. Robert Suess, et al., v. The United States, United States Court of Federal Claims, No. 90- 981C (May 17, 1999).

Exhibit 5
Page 128

Testimony of Daniel R. Fischel in Re: Lexecon, Inc. v. Milberg Weiss Bershad Specthrie &
Lerach, et al. in the United States District Court, Northern District of Illinois Eastern
Division, Case No. 92 C 7768 (March 8, 9, 10 and 15, 1999).

Testimony of Daniel R. Fischel in Re: California Federal Bank v. United States, in the United
States Court of Federal Claims, Case Number 92-138C, (February 4 and 11, 1999).

Deposition of Daniel R. Fischel in Re: California Federal Bank v. United States, in the United
States Court of Federal Claims, Case Number 92-138C, (February 6, 1999; January 27
and 30, 1999).

Deposition of Daniel R. Fischel in Re: C. Robert Suess, et al., v. The United States, United
States Court of Federal Claims, No. 90- 981C (October 27 and 28, 1998).

Deposition of Daniel R. Fischel in Re: Connector Service Corporation v. Jeffrey Briggs, United
States District Court, Northern District of Illinois, Eastern Division, No. 97-C-7088 (August
28, 1998).

Deposition of Daniel R. Fischel in Re: Statesman Savings Holding Corp., et al. v. United States
of America, United States Court of Federal Claims, Case No. 90-773C, (May 4, 1998 and
February 12, 1998).

Testimony of Daniel R. Fischel in Re: Glendale Federal Bank FSB v. United States of America,
United States Court of Federal Claims, No. 90-772C, (March 24, 25 and 26, 1998;
September 2, 3, 4, 5, 8, 9, 10, 11, 12, 24, 25, 26 and 27, 1997; October 7, 9, 16, 17, 30
and 31, 1997; December 8, 9 and 10, 1997).

Affidavit of Daniel R. Fischel and David J. Ross in Re: Publicis Communication v. True North
Communications Inc., et al., United States District Court, Northern District of Illinois,
Eastern Division, Case No. 97-C-8263, (December 7, 1997).

Deposition of Daniel R. Fischel in Re: Glendale Federal Bank FSB v. United States of America,
United States Court of Federal Claims, No. 90-772C, (August 27 and 28, 1997).

Testimony of Daniel R. Fischel in Re: AUSA Life Insurance Company, et al. v. Ernst & Young, in
the United States District Court, Southern District of New York, Master File No. 94 CIV.
3116 (CLB) (July 7 and 8, 1997).

Deposition of Daniel R. Fischel in Re: Santa's Best, f/k/a National Rennoc, an Illinois general
partnership, and Tinsel/Ruff Group Limited Partnership, an Illinois limited partnership v.
Rennoc Limited Partnership, a New Jersey limited parternship, v. Tinsel/Ruff Group
Limited Parternship, an Illinois limited partnership, in the Circuit Court of Cook, Illinois
County Department - Chancery Division, No. 95 CH 12160, (June 17, 1997).

Arbitration of Daniel R. Fischel in Re: Lerner v. Goldman Sachs, et. al., Before the American
Arbitration Association, 75-136-00090-94 (April 10, 1997).

Affidavit of Daniel R. Fischel in Re: Hilton Hotels Corporation and HLT Corporation v. ITT
Corporation, United States District Court, District of Nevada, CV-S-97-00095-PMP (RLH)
(March 24, 1997).

Exhibit 5
Page 129

Deposition of Daniel R. Fischel in Re: <u>Glendale Federal Bank, FSB</u> v. <u>United States of America</u>, Washington, D.C., Case No. 90-772C, (March 19, 1997; January 30 and 31, 1997).

Deposition of Daniel R. Fischel in Re: <u>Statesman Savings Holding Corporation</u> v. <u>United States of America</u>, Washington, D.C., Case No. 90-773-C, (February 19 and 20, 1997).

Testimony of Daniel R. Fischel in Re: <u>Westcap Enterprises, Inc. and Westcap Corporation</u>, Debtor; in the United States Bankruptcy Court, for the Southern District of Texas, Houston Division, Houston, Texas; Case No. 96-43191-H2-11, (November 1996).

Testimony of Daniel R. Fischel in Re: <u>United States of America</u> v. <u>Robert R. Krilich</u>, in the United States District Court, Northern District of Illinois, Eastern Division, No. 94 CR 419, (August 20, 1996 and July 15, 1996)

Deposition of Daniel R. Fischel in Re: <u>McMahan & Company, Froley, Revy Investment Co., Inc. and Wechsler & Krumholz, Inc.</u> v. <u>Wherehouse Entertainment, Inc., Louis A. Kwiker, George A. Smith, Michael T. O'Kane, Lawrence K. Harris, et al.</u>, United States District Court, Southern District of New York, Index No. 88 Civ. 0321 (SS) (AJP), (July 16, 1996 and June 10, 1996).

Deposition of Daniel R. Fischel in Re: <u>Joseph W. and Helen B. Teague, Steven Allen Barker, Rita Strahowski, Swannee Beck, and Lifetime Partners of PTL, as representatives of a nationwide class consisting of 150,129 Lifetime Partners and of 27,839 persons who have partially paid for Lifetime Partnerships</u> v. <u>James O. Bakker</u>, in the United States District Court for the Western District of North Carolina, Civil Action No. 3:87CV514, (June 28, 1996).

Deposition of Daniel R. Fischel in Re: <u>Snapple Beverage Corporation Securities Litigation</u>, in the United States District Court, Eastern District of New York, Master File No. CV 94-3647 (May 30, 1996).

Testimony of Daniel R. Fischel in Re: <u>Chuck Quackenbush, Insurance Commissioner of the State of California, in his capacity as Trustee of Mission Insurance Company Trust, et al.</u> v. <u>Borg-Warner Corporation, Borg Warner Equities Corporation, Borg-Warner Insurance Service, Inc., et al.</u>, for the Superior Court of the State of California, for the County of Los Angeles, No. C688487 (April 18, 1996).

Deposition of Daniel R. Fischel in Re: <u>Chuck Quackenbush, Insurance commissioner of the State of California, in his capacity as Trustee of Mission Insurance Company Trust, et al.</u> v. <u>Borg-Warner Corporation, Borg Warner Equities Corporation, Borg-Warner Insurance Service, Inc., et al.</u>, for the Superior Court of the State of California, for the County of Los Angeles, No. C688487 (April 17, 1996).

Deposition of Daniel R. Fischel in Re: <u>Household Commercial Financial Services, Inc. a citizen of the states of Delaware and Illinois</u> v. <u>Julius Trump, a citizen of the State of Florida, Edmond Trump, a citizen of the state of Florida, James M. Jacobson, a citizen of the State of New York, and Parker, Chapin, Flattau & Klimpl, a citizen of the states of New York and New Jersey</u>, in the United States District Court, for the Northern District of Illinois Eastern Division, 92 C 5010 (February 1, 1996).

Exhibit 5
Page 130

Deposition of Daniel R. Fischel in Re: <u>JWP, Inc. Securities Litigation</u>, in the United States
District Court, Southern District of New York, Master File No. 92 Civ. 5815 (CLB); <u>AUSA
Life Insurance Company, et al.</u> v. <u>Ernst & Young</u>, in the United States District Court,
Southern District of New York, Master File No. 94 Civ. 3116 (CLB) (November 30, 1995;
November 9, 1995; October 18 and 19, 1995; September 28, 1995).

Deposition of Daniel R. Fischel in Re: <u>City of Houston Municipal Employees Pension System, a
Texas association</u> v. <u>PaineWebber Group Inc., et al.</u>, in the United States District Court,
Eastern District of Missouri, Eastern Division, No. 4:94CV0073CAS (November 15 and 16,
1995).

Testimony of Daniel R. <u>Fischel In Re: American Continental Corporation/Lincoln Savings & Loan
Securities Litigation - Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach and Kevin P.
Roddy</u>, in the United States District Court , District of Arizona, Civ-93-1087-PHX-JMR (July
25 and 26, 1995).

Deposition of Daniel R. Fischel in Re: <u>Keith C. Bogard, et al.</u>, v. <u>National Community Bank Inc.,
et al.</u>, in the United States District Court, District of New Jersey, No. 90-5-32 (HAA)
(December 20, 1994).

Deposition of Daniel R. Fischel in Re: <u>Harvey Rosen, Ben Rogers and Julie Rogers</u> v. <u>Deloitte
& Touche, Elias Zinn, Julius Zinn, Dennis Lamm, and Ronald Begnaud</u>, in the 268th
Judicial District Court, of Fort Bend County, Texas, Cause No. 84-482 (November 9,
1994).

Testimony of Daniel R. Fischel in Re: <u>PPM America, Inc., et al.</u> v. <u>Marriott Corporation et al.</u>, in
the United States District Court, for the District of Maryland, Civil Docket No. H-92-3068
(October 12, 1994).

Deposition of Daniel R. Fischel in Re: <u>Browning-Ferris Industries, Inc., Securities Litigation</u>,
United States District Court, for the Southern District of Texas, Houston Division, Civil
Action H-903477 (September 1, 1994).

Testimony of Daniel R. Fischel in Re: <u>Computer Associates International Inc. Securities
Litigation</u>, United States District Court, Eastern District of New York, CV-90-2398 (JBW)
(May 26 and 27, 1994).

Deposition of Daniel R. Fischel in Re: <u>PPM America, Inc., et al</u>. v. <u>Marriott Corporation et al.</u>,
United States District, for the District of Maryland, H-92-3068 (May 10, 1994 and March 8,
1994).

Deposition of Daniel R. Fischel in Re: <u>Securities and Exchange Commission</u> v. <u>Shared Medical
Systems Corporation, R. James Macaleer, James C. Kelly and Clyde M. Hyde</u>, United
States District Court, for the Eastern District of Pennsylvania, Civil Action - Law: No. 91-
CV-6549 (February 22, 1994).

Testimony of Daniel R. Fischel in Re: <u>Peter M. Schultz and Pamela A. Schultz</u> v. <u>Rhode Island
Hospital Trust National Bank, N.A., et al.</u>, United States District Court, District of
Massachusetts, Civil Action No. 88-2870-T (February 16, 1994).

Exhibit 5
Page 131

Deposition of Daniel R. Fischel in Re: <u>Henry T. Endo, et al.</u> v. <u>John M. Albertine, et al.</u>, United States District Court, Northern District of Illinois, Eastern Division, No. 88 C 1815 (November 11 and 12, 1993; October 28, 1993).

Deposition of Daniel R. Fischel in Re: <u>Computer Associates International Inc. Securities Litigation</u>, United States District Court, Eastern District of New York, CV 90-2398 (JBW) (November 2, 1993 and February 4, 1993).

Affidavit of Daniel R. Fischel in Re: <u>Peter M. Schultz and Pamela A. Schultz</u> v. <u>Rhode Island Hospital Trust National Bank, N.A. et al.</u>, United States District Court, District of Massachusetts, Civil Action No. SS-2870-T (October 28, 1993).

Deposition of Daniel R. Fischel in Re: <u>Alpheus John Goddard, III, etc.</u> v. <u>Continental Bank N.A., etc.</u>, State of Illinois, County of Cook, Circuit Court of Cook County, County Department-Chancery Division, No. 89 CH 1081 (September 10, 1993).

Deposition of Daniel R. Fischel in Re: <u>Taxable Municipal Bond Section "G" Securities Litigation</u>, United States District Court, Eastern District of Louisiana, MDL No. 863 (September 2, 1993).

Reply Affidavit of Daniel R. Fischel in Re: <u>Columbia Securities Litigation</u>, United States District Court Southern District of New York, 89 Civ. 6821 (LBS) (August 30, 1993).

Affidavit of Daniel R. Fischel in Re: <u>Consumers Gas & Oil, Inc.</u> v. <u>Farmland Industries, Inc., et al.</u>, United States District Court, for the District of Colorado, Civil Action No. 92-F-1394 (August 26, 1993).

Declaration of Daniel R. Fischel in Re. <u>Equitec Rollup Litigation</u>, United States District Court for the Northern District of California, Master file No. C90 2064 CAL (July 28, 1993).

Deposition of Daniel R. Fischel in Re: <u>United Telecommunications, Inc. Securities Litigation</u>, United States District Court for the District of Kansas, No. 90-2251-0 (July 22, 1993, April 21 and 22, 1993).

Deposition of Daniel R. Fischel in Re: <u>Consumers Gas & Oil, Inc., a Colorado farm cooperative in liquidation, on behalf of itself and others similarly situated</u> v. <u>Farmland Industries, Inc., a Kansas farm cooperative, et al.</u>, United States District Court, District of Colorado, 92-F-1394 (June 18, 1993).

Deposition of Daniel R. Fischel in Re. <u>Rosalind Wells</u> v. <u>HBO & Company</u>, United States District Court, Northern District of Georgia, Atlanta Division, 8-87-CV-657A (JTC) (June 10, 1993 and May 24, 1993).

Deposition of Daniel R. Fischel in Re: <u>Equitec Rollup Litigation</u>, United States District Court, Northern District of California, No. C-90-2064 CAL (June 2 and 3, 1993).

Supplemental Declaration of Daniel R. Fischel in Re: <u>Oracle Securities Litigation</u>, United States District Court, Northern District of California, Master File No. C 90 0931 VRW (May 20, 1993).

Exhibit 5
Page 132

Affidavit of Daniel R. Fischel and Kenneth R. Cone in Re: <u>Raymond P. Hayden, et al.</u> v. <u>Jeffrey L. Feldman, et al.</u>, United States District Court, Southern District of New York No. 88 Civ. 8048 (JES) (May 12, 1993).

Testimony of Daniel R. Fischel in Re: <u>Melridge, Inc., Securities Litigation</u>, United States District Court for the District of Oregon, CV No. 87-1426-FR (May 4 and 5, 1993).

Declaration of Daniel R. Fischel in Re: <u>Oracle Securities Litigation</u>, United States District Court, Northern District of California, Master File No. C 90 0931 VRW (April 20, 1993).

Deposition of Daniel R. Fischel in Re: <u>Gillette Securities Litigation</u>, United States District Court, District of Massachusetts, No. 88-1858-K (April 1, 1993).

Affidavit of Daniel R. Fischel in Re: <u>Columbia Securities Litigation</u>, United States District Court, Southern District of New York, 89 Civ. 6821 (LBS) (March 25, 1993).

Deposition of Daniel R. Fischel in Re: <u>Westinghouse Securities Litigation</u>, United States District Court, Western District of Pennsylvania, CV No. 91 354 (March 23, 1993).

Declaration of Daniel R. Fischel in Re: <u>Oracle Securities Litigation</u>, United States District Court, Northern District of California, Master File No. C 90-0931 VRW (March 22, 1993).

Deposition of Daniel R. Fischel in Re: <u>Kroy, Inc., a Minnesota corporation et al.</u> v. <u>Bankers Trust New York Corporation, et al.</u>, Superior Court of the State of Arizona in and for the County of Maricopa, No. CV 89-35680 (March 18, 1993).

Deposition of Daniel R. Fischel in Re: <u>Amos M. Ames, Helen M. Ames, Robert F. Bourke, Louise L. Bourke, Leo E. Corr, April C. Corr, Wence M. Horak, Ruth Horak, Robert T. Freas, Maurita Freas, Bruce Fink, Jr., William H. Jones, Candace A. Jones, Richard Paul, William L. Paul, Carole Paul, Steven J. Paul, Best Power Technology, Incorporated, and Best Power Technology Sales Corporation</u>, in the State of Wisconsin, Circuit Court, Juneau County, Consolidated Case Nos. 92-CV-31, 92-CV-32 (January 26, 1993).

Deposition of Daniel R. Fischel in Re: <u>Federal Express Corporation Shareholder Litigation</u>, in the United States District Court, Western District of Tennessee, Master File No. 90-2359-4B (December 3, 1992).

Deposition of Daniel R. Fischel in Re: <u>Raymond Snyder, Individually and on behalf of all those similarly situated</u> v. <u>Oneok, Inc., et al.</u>, in the United States District Court, Northern District of Oklahoma, Civil Action No. 88 C 1500 E (October 15 and 16, 1992).

Deposition of Daniel R. Fischel in Re: <u>Melridge, Inc. Securities Litigation, Consolidated Actions</u>, United States District Court, District of Oregon, Master File No. CV87-1426-JU and Nos. 387-06589-P11, 88-05-JU, 88-221-JU, 88-0699-PA, 88-1266-JU (September 17, 1992; July 25 and 26, 1991).

Deposition of Daniel R. Fischel in Re: <u>Maxus Corporate Company</u> v. <u>Kidder, Peabody & Co. Incorporated, Martin A. Siegel and Ivan F. Boesky</u>, in the District Court Dallas County, Texas, 298th Judicial District, No. 87-15583-M (September 11, 1992; August 18 and 19, 1992).

Exhibit 5
Page 133

Deposition of Daniel R. Fischel in Re: <u>Jennifer A. Florin and Alan L. Mundt, on behalf of themselves and all others similarly situated</u> v. <u>Wesray Capital Corp., Citizens and Southern Trust Company, a subsidiary of Citizens and Southern Corporation, Robert K. Barton, Leonard S. Gaby, Allen G. Lacoe, Robert A. Magnusson, Anthony A. Saliture, Harlan B. Smith, Thomas F. Stutzman, Raymond G. Chambers, Frank E. Richardson, E. Burke Ross, Jr., William E. Simon and Frank W. Walsh, Jr.</u>, in the United States District Court, Western District of Wisconsin, Civil Action No. 91C-0948 (August 12, 1992).

Deposition of Daniel R. Fischel in Re: <u>Pearl Newman, Shanna Lehmann & Athanasios Tsivelekidis, on their own behalf and on behalf of all other persons similarly situated</u> v. <u>On-Line Software International, Inc. Jack M. Berdy, John C. Crocker, Richard A. Granger, Richard R. Holtmeier, Michael S. Juceam, Edward J. Siegel, Howard P. Sorgen and Richard Ward</u>, United States District Court, District of New Jersey, Consolidated Civil Action Nos. 88-3247, 88-3411 (July 28 and 29, 1992).

Deposition of Daniel R. Fischel in Re: <u>Crazy Eddie Securities Litigation, Oppenheimer-Palmieri Fund, I.P., et al.</u> v. <u>Peat Marwick Main & Co., et al.</u>, United States District Court for the Eastern District of New York, 87 Civ. 0033 (EHN), 88 Civ. 3481 (EHN) (June 11, 1992; March 26 and 27, 1992).

Testimony of Daniel R. Fischel in Re: <u>American Continental Corporation/Lincoln Savings and Loan Securities Litigation</u>, in the United States District Court, for the District of Arizona MDL Docket No. 834 (June 4, 1992; May 26, 27 and 28, 1992).

Testimony of Daniel R. Fischel in Re: <u>State of West Virginia</u> v. <u>Morgan Stanley & Co. Incorporated</u>, in the Circuit Court of Kanawha County, State of West Virginia, Civil Action No. 89-C-3700 (April 27, 1992).

Affidavit of Daniel R. Fischel in Re: <u>William Steiner, on behalf of himself and all others similarly situated</u> v. <u>Tektronix, Inc., et al.</u>, in the United States District Court, District of Oregon, Civil No. 90-587-JO (March 23, 1992).

Deposition of Daniel R. Fischel in Re: <u>Martin Kaplan and Selma Kaplan, on Behalf of Themselves and All Others Similarly Situated</u> v. <u>VICORP Restaurants, Inc., Charles R. Frederickson, Robert S. Benson, Emerson B. Kendall, Robert T. Marto and Johyn C. Hoyt</u>, United States District Court, District of Colorado, Civil Action No. 90-C-2182 (February 11, 1992).

Deposition of Daniel R. Fischel in Re: <u>Interco Incorporated</u> v. <u>Wasserstein, Perella & Co., Inc.</u>, United States District Court, Eastern District of Missouri, Eastern Division, No. 91-0151-C-6 (February 3, 1992 and December 12, 1991).

Statement of Daniel R. Fischel in Re: <u>Far West Federal Bank, S.B., et al.</u> v. <u>Director, Office of Thrift Supervision, et al.</u>, United States District Court for the District of Oregon, Civil Action No. 90-103 PA (February 3, 1992).

Deposition of Daniel R. Fischel in Re: <u>Capital Bank of California</u> v. <u>Morgan Stanley & Co., Incorporated</u>, United States District Court, Central District of California, No. 91-1650-R (January 24, 1992).

Exhibit 5
Page 134

Deposition of Daniel R. Fischel in Re: <u>Trinity Ventures, et al.</u> v. <u>Federal Deposit Insurance Corporation</u>, in its own capacity and as successor to the Federal Savings and Loan Insurance Corporation, United States District Court, for the District of Oregon, No. 90-103-PA (January 6, 1992).

Deposition of Daniel R. Fischel in Re: <u>First Republicbank Securities Litigation</u>, United States District Court, Northern District of Texas, Dallas Division, Civil Action No. 3-88-0641-H (January 2, and 3, 1992; November 26, 1991).

Deposition of Daniel R. Fischel in Re: <u>State of West Virginia</u> v. <u>Morgan Stanley & Co. Incorporated; Salomon Brothers Inc.; and Goldman Sachs & Co.</u>, in the Circuit Court of Kanawha County, State of West Virginia, Civil Action No. 89-C-3700 (December 19 and 20, 1991).

Deposition of Daniel R. Fischel in Re: <u>The Regina Company, Inc. Securities Litigation</u>, United States District Court, District of New Jersey, Civil Action No. 88-4149 (HAA) (October 31, 1991).

Affidavit of Daniel R. Fischel in Re: <u>Gillette Securities Litigation</u>, United States District Court, District of Massachusetts, Civil Action No. 88-1858-K (October 7 1991).

Deposition of Daniel R. Fischel in Re: <u>Capital Maritime Corporation</u> v. <u>Amfels, Inc., Far East Levingston Shipbuilding Ltd., John B. Allison and Patrick A. McDermid</u>, United States District Court for the Southern District of Texas Houston Division, C.A. No. H-90-3417 (September 12, 1991).

Deposition of Daniel R. Fischel in Re: <u>Thomas J. Caldarone, Jr.</u> v. <u>Isidore Brown, et al.</u>, and <u>John E. Washburn, et al.</u> v. <u>Isidore Brown, et al.</u>, United States District Court, Northern District of Illinois, Eastern Division, Docket Nos. 80 C 6251 and 81 C 1475 (August 28, 29, and 30, 1991).

Testimony of Daniel R. Fischel in <u>Re: Apple Securities Litigation</u>, United States District Court, Northern District of California, Northern Division, Docket No. C-84-20148 (May 20 and 21, 1991).

Testimony of Daniel R. Fischel in Re: <u>The Stuart-James Co., Inc., et al. Litigation</u>, United States of America before the Securities & Exchange Commission, in Denver, Colorado, Administrative Proceeding File No. 3-7164 (May 6, 1991).

Deposition of Daniel R. Fischel in Re: <u>Jennie Farber on behalf of herself and all others similarily situated</u> v. <u>Public Service Company of New Mexico; Jerry D. Geist; John P. Bundrant and Albert J. Robison</u>, United States District Court for the District of New Mexico, CIV 89-456 JB WWD (April 17 and 18, 1991).

Affidavit of Daniel R. Fischel in Re: <u>Moise Katz, Frederick Rand, Elias Weissman, Richard D. Morgan, Marion R. Morgan and Mortimer Schulman</u> v. <u>Raymond A. Hay</u>, United States District Court, Southern District of New York, No. 86 Civ. 5640 (JES) (March 29, 1991).

Deposition of Daniel R. Fischel in Re: <u>Standard Chartered PLC., a United Kingdom corporation, et al.</u> v. <u>Price Waterhouse, a general partnership</u>, Superior Court of the State of Arizona, in and for the County of Maricopa, CV 88-34414 (March 13 and 14, 1991).

Exhibit 5
Page 135

Affidavit of Daniel R. Fischel in Re: <u>United States of America</u> v. <u>AVX Corporation</u>, and <u>Commonwealth of Massachusetts</u> v. <u>AVX Corporation</u>, United States District Court, District of Massachusetts, Civil Action Nos. 83-3882-Y and 83-3899-Y (January 29, 1991).

Deposition of Daniel R. Fischel in Re: <u>Apple Computer Securities</u>, United States District Court Northern District of California, San Jose Division, No. C-84-20148 (a) JW (December 13 and 14, 1990).

Deposition of Daniel R. Fischel in Re: <u>Polycast Technology Corporation, and Uniroyal Plastics Acquisition Corp.</u> v. <u>Uniroyal, Inc., et al.</u>, United States District Court Southern District of New York, No. 87 Civ. 3297 (December 6, 1990 and November 28, 1990).

Deposition of Daniel R. Fischel in Re: <u>Ellen Rudd, on behalf of herself and all others similarly situated, and Mayer Corporation on behalf of themselves, and all others similarly situated, and Louis Brandt, and Israel Baker, Jay R. Kuhne, Pininfarina Corp., and American Transfer Co., on behalf of themselves and all others similarly situated</u> v. <u>Kirk Kerkorian, et al.</u>, Superior Court of the State of California, County of Los Angeles, Nos. CA 000980, CA 000981, CA 001017, CA 620279 (June 21, 1990).

Testimony of Daniel R. Fischel in Re: <u>City of San Jose</u> v. <u>Paine, Webber, Jackson & Curtis, Incorporated, et al., and related counter- and Third-Party Claims</u>, United States District Court, Northern District, No. C-84-20601 RPA (May 23 and 24, 1990).

Deposition of Daniel R. Fischel in Re: <u>City of San Jose</u> v. <u>Paine, Webber, Jackson & Curtis, Incorporated, et al., and related counter- and Third-Party Claims</u>, United States District Court, Northern District, No. C-84-20601 RPA (May 22, 1990), No. RPA 84-20601 (November 16, 1989 and September 8, 1989).

Testimony of Daniel R. Fischel in Re: <u>Kulicke and Soffa Industries, Inc. Securities Litigation</u>, United States District Court for the Eastern District of Pennsylvania, No. 86-1656 (March 20 and 21, 1990).

Deposition of Daniel R. Fischel in Re: <u>Kulicke and Soffa Industries, Inc. Securities Litigation</u>, United States District Court for the Eastern District of Pennsylvania, No. 86-1656 (March 9, 1990; December 19 and 21, 1989).

Affidavit of Daniel R. Fischel in Re: <u>Viacom International Inc.</u> v. <u>Carl C. Icahn, et al.</u>, v. <u>Ralph M. Baruch, et al.</u>, United States District Court, Southern District of New York, No. 86 Civ. 4215 (RPP) (March 8, 1990).

Deposition of Daniel R. Fischel in Re: <u>Technical Equities Coordination Litigation</u>, Superior Court of the State of California for the County of Santa Clara, Master File No. 1991, Santa Clara County Superior No. 600306 (March 1, 1990).

Deposition of Daniel R. Fischel in Re: <u>Amalgamated Clothing and Textile Workers Union, AFL-CIO, et al.</u> v. <u>David A. Murdock, et al.</u>, United States District court for the Central District of California, No. CV-86-6410 IH (February 8, 1990).

Deposition of Daniel R. Fischel in Re: <u>Connecticut National Life Insurance Company, et al.</u> v. <u>Peter A.. Sprecher and Laventhol & Horwath</u>, United States District Court, Central District of California, No. CV 87-1945 WJR (Tx) (January 30, 1990).

Exhibit 5
Page 136

Deposition of Daniel R. Fischel in Re: <u>Consolidated Capital Securities Litigation</u>, United States
District Court, Northern District of California, No. C-85-7332 AJZ (January 22, 1990).

Declaration of Daniel R. Fischel in Re Plaintiffs' Damages in Re: <u>Liquidity Fund, et al.</u> v.
<u>Southmark Corporation, et al.</u> in the Superior Court of the State of California for the County
of San Mateo, No. 332435 (January 18, 1990).

Deposition of Daniel R. Fischel in Re: <u>Norman Kamerman, Shirley Brown, Edward Rosen,
Lexim Investors Corp., and Dohsa Anstalt, on behalf of themselves and all others similarly
situated, and Barnett Stepak</u> v. <u>Saul Steinberg, Reliance Group Holdings, Inc., Reliance
Group, Inc., Reliance Financial Services corp., and Reliance Insurance Company</u>, United
States District Court, Southern District of New York, No. 84 Civ. 4440 (September 13,
1989).

Affidavit of Daniel R. Fischel in Re: <u>Edward A. Taylor, et al.</u> v. <u>A. O. Smith Corporation et al.</u>,
Circuit Court for Lincoln County, Tennessee, No. 098-84 (August 11, 1989).

Deposition of Daniel R. Fischel in Re: <u>Container Products Inc.</u> v. <u>Pace Industries</u>, United States
District Court, Southern District of New York, No. 88-CIV. 3549 (KMW) (July 19, 1989).

Deposition of Daniel R. Fischel in Re: <u>Joseph B. Moorman, et al.</u> v. <u>Southmark Corporation, et
al., Liquidity Fund, et al.</u> v. <u>Southmark Corporation, et al.</u>, Superior Court of the State of
California for the County of San Mateo, Nos. 322135 and 332435 (July 11, 1989).

Testimony of Daniel R. Fischel in Re: <u>Tessie Wolfson, et al.</u> v. <u>Frederick S. Hammer</u>, and
<u>Meritor Financial Group</u>, United States District Court for the Eastern District of
Pennsylvania, Civil Action No. 87-8471 (June 20, 1989).

Deposition of Daniel R. Fischel in Re: <u>Richard J. Heckmann, et al.</u> v. <u>C. L. Ahmanson, et al.,
and Consolidated Cases</u>, Superior Court of the State of California for the County of Los
Angeles, Nos. CA000851 and C642081 (June 8, 1989).

Deposition of Daniel R. Fischel in Re: <u>Tessie Wolfson, et al.</u> v. <u>Frederick S. Hammer</u>, United
States District Court for the Eastern District of Pennsylvania, Civil Action No. 87-8472 (May
11, 1989).

Testimony of Daniel R. Fischel in Re: <u>Tessie Wolfson, et al.</u> v. <u>Frederick S. Hammer</u>, United
States District Court for the Eastern District of Pennsylvania, Civil Action No. 87-8472
(April 13, 1989).

Deposition of Daniel R. Fischel in Re: <u>National Union Fire Insurance Company of Pittsburgh,
PA</u> v. <u>Wells Fargo Bank, N.A.</u>, District Court of Harris County, Texas, 125th Judicial District,
No. 88-49246 (April 10 and 11, 1989).

Deposition of Daniel R. Fischel in Re: <u>Susan Rothenberg, as Custodian for Stephen J.
Rothenberg</u> v. <u>Charles E. Hurwitz, United Financial Corporation, United Savings
Association of Texas, et al.</u>, United States District Court for the Southern District of Texas,
Houston Division, Civil Action No. H-86-1435 (March 30, 1989).

Deposition of Daniel R. Fischel in Re: <u>Jose Nodar, et al.</u> v. <u>William Weksel, Albert Bromberg,
Henry B. Turner, IV, Frank L. Bryant, Leo Kuperschmid, Bennett S. Lebow, Ernst &
Whinney and Oppenheimer & Co., Inc.</u>, United States District Court, Southern District of

Exhibit 5
Page 137

New York, No. 84 Civ. 3870 (VLB) and consolidation case No. 84 Civ. 5132 (VLB)
(December 15 and 16, 1988).

Deposition of Daniel R. Fischel in Re: <u>William Steiner, et al.</u> v. <u>Whittaker Corporation, et al.</u>,
Superior Court of the State of California for the County of Los Angeles, No. CA000817
(December 7, 1988).

Deposition of Daniel R. Fischel in Re: <u>Arnold I. Laven, et al.</u> v. <u>Western Union Corporation, et
al.,</u> United States District Court for the District, Western District of Washington, MDL No.
551 (August 30 and 31, 1988).

Deposition of Daniel R. Fischel in Re: <u>Washington Public Power Supply System Securities
Litigation</u>, United States District Court, Western District of Washington, MDL No. 551
(August 16 and 22, 1988).

Affidavit of Daniel R. Fischel in Re: <u>District Business Conduct Committee for District No. 3</u> v.
<u>Blinder, Robinson & Company Inc., et al.,</u> National Association of Securities Dealers, Inc.
National Business Conduct Committee, Complaint No. DEN-666 (July 21, 1988).

Deposition of Daniel R. Fischel in Re: <u>Joseph Seidman, et al.</u> v. <u>Stauffer Chemical Company, et
al</u>, United States District Court for the District of Connecticut, No. B 84-543 (TFGD) (June
10, 1988 and May 5, 1987).

Deposition of Daniel R. Fischel in Re: <u>Edlin Cattle Co., Inc., and James Edlin</u> v. <u>A. O. Smith
Harvestore Products, Inc., et al.</u>, United States District Court for the Northern District of
Texas, Amarillo Division, No. CA-2-86-0122 (May 12, 1988).

Deposition of Daniel R. Fischel in Re: <u>MicroPro Securities Litigation</u>, United States District
Court for the Northern District of California, No. C-85-7428-EFL (A) (May 2, 1988).

Affidavit of Daniel R. Fischel in Re: <u>Pizza Time Theatre Securities Litigation</u>, United States
District Court for the Northern District of California, Civil File No. 84-20048-(A)-RPA (March
25, 1988).

Affidavit of Daniel R. Fischel and Robert A. Sherwin in Re: <u>First National Bank of Louisville</u> v.
<u>Brooks Farms, and George C. Brooks, et al., Third-Party Plaintiffs</u> v. <u>A. O. Smith
Corporation, et al.,</u> Circuit Court for Maury County, Tennessee, No. 2058 (March 3, 1988).

Testimony of Daniel R. Fischel in Re: <u>Nucorp Energy Securities Litigation</u>, United States District
Court for the Southern District of California, M.D.L. 514 (March 15, 16, 17, and 18, 1988).

Deposition of Daniel R. Fischel in Re: <u>Nucorp Energy Securities Litigation</u>, United States
District Court for the Southern District of California, M.D.L. 514 (January 27, 1988).

Deposition of Daniel R Fischel in Re: <u>Anheuser-Busch Companies, Inc.</u> v. <u>W. Paul Thayer, et
al.,</u> United States District Court for the Northern District of Texas, Dallas Division, No. CA-
3-85-0794-R (January 21, 1988; December 4, 1987; and November 5, 1987).

Testimony of Daniel R. Fischel in Re:  <u>Securities and Exchange Commission</u> v. <u>First City
Finance Corporation Ltd., and Marc Belzberg</u>, United States District Court for the District of
Columbia, Civil Action No. 86-2240 (December 18, 1987).

Exhibit 5
Page 138

- 34 -

Testimony of Daniel R. Fischel in Re. The Irvine Company v. Athalie Irvine Smith and Athalie R. Clarke, Trustee, State of Michigan Circuit Court for the county of Oakland, Civil Action No. 8327011-CZ (December 14, 15, and 16, 1987).

Deposition of Daniel R. Fischel in Re: Securities and Exchange Commission v. First City Finance Corporation, Ltd. and Marc Belzberg, United States District Court for the District of Columbia, Civil Action No. 86-2240 (December 11, 1987).

Affidavit of Daniel R. Fischel in Re: Gerald D. Broder and Constance D. Broder v. Alphonse H. Bellac and William B. Weinberger v. Combustion Equipment Associates, Inc., et al., and William B. Weinberger v. Coopers & Lybrand, United States District Court for the Southern District of New York, 80 CIV 6175 (CES) 80 CIV 6839 (CES) 84 CIV 8217 (CES) (July 22, 1987).

Deposition of Daniel R. Fischel in Re: The Irvine Company v. Athalie Irvine Smith and Athalie R. Clarke, Trustee, State of Michigan, Circuit Court for the County of Oakland, Civil Action No. 83270011-CZ (June 1, 1987).

Deposition of Daniel R. Fischel in Re: Fortune Systems Securities Litigation, United States District for the Northern District of California, Master File No. 83-3348A-WHO (May 7, 1987).

Deposition of Daniel R. Fischel in Re: Victor Technologies Securities Litigation, United States District Court for the Northern District of California, Master File No. C-83-3906(A)-RFP (FW) (January 8, 1987 and October 30, 1986).

Reply Declaration of Daniel R. Fischel in Support of the Motion by the Activision Defendants for Summary Judgment in Re: Activision Securities Litigation, United States District Court for the Northern District of California, Master File No. C-83-4639(A)-MHP (October 27, 1986).

Testimony of Daniel R. Fischel in Re: NVHomes, L.P. v. Ryan Homes, Inc.; and Ryan Homes, Inc. v. NVHomes, L.P., et al., United States District Court for the Western District of Pennsylvania, Civil Action No. 86-2139 (October 24, 1986).

Supplemental Affidavit of Daniel R. Fischel in Re: NVHomes, L.P. v. Ryan Homes, Inc.; and Ryan Homes, Inc. v. NVHomes, L.P. and NVAcquisition L.P., et al., United States District Court the Western District of Pennsylvania, Civil Action No. 86-2139 (October 24, 1986).

Affidavit of Daniel R. Fischel in Support of the Motion by the Activision Defendants for Summary Judgment in Re: Activision Securities Litigation, United States District Court for the Northern District of California, Master File No. C-86-2139 (October 20, 1986).

Declaration of Daniel R. Fischel in Support of the Motion by the Activision Defendants for Summary Judgment in Re: Activision Securities Litigation, United States District Court for the Northern District of California, Master File No. C-83-4639(A)-MHP (October 2, 1986).

Affidavit in Support of Defendants Motion for Summary Judgment in Re: MCorp Securities Litigation, United States Court for the Southern District of Texas, Civil Action No. H-85-5894 (September 25, 1986).

Deposition of Daniel R. Fischel in Re: Activision Securities Litigation, United States District Court for the Northern District of California, No. C 83 4639 (August 18 and 19, 1986).

Exhibit 5
Page 139

Deposition of Daniel R. Fischel in Re: John Mancino v. James A. McMaghan, et al., United
States District Court for the Northern District of California, Civil No. C-84-0407-TEH
(August 14, 1986).

Testimony of Daniel R. Fischel in Re: Charles W. Leigh, et al. and George Johnson, et al. v.
Clyde William Engle, et al., United States District Court for the Northern District of Illinois,
Eastern Division, Case No. 78 C 3799 (August 1, 1986).

Reply Affidavit of Daniel R. Fischel in Re: The Amalgamated Sugar Company v. NL Industries,
United States District Court for the Southern District of New York, 86 Civ. 5010 (VLB) (July
28, 1986).

Affidavit of Daniel R. Fischel in Re: The Amalgamated Sugar Company v. NL Industries, United
States District Court for the Southern District of New York, 86 Civ. 5010 (VLB) (July 18,
1986).

Deposition of Daniel R. Fischel in Re: Charles W. Leigh, et al. and George Johnson, et al. v.
Clyde William Engle, et al., United States District Court for the Northern District of Illinois,
Eastern Division, Case No. 78 C 3799 (July 1, 1986).

Deposition of Daniel R. Fischel in Re: Seafirst Corporation v. William M. Jenkins, et al.; and
Seafirst Corporation v. John R. Boyd, et al., United States District Court for the Western
District of Washington at Seattle, Case No. C83-771R (February 27, 1986).

Deposition of Daniel R. Fischel in Re: Kreindler v. Sambo's Restaurants, Inc., United States
District Court for the Southern District of New York, Case No. 79 Civ. 4538 (December 17,
1985).

Affidavit of Daniel R. Fischel in Re: United States of America v. S. Richmond Dole and Clark J.
Matthews II (March 19, 1985).

Deposition of Daniel R. Fischel in Re: Craig T. McFarland, et al. v. Memorex Corporation,
United States District Court for the Northern District of California, No. C 79-2926-WAI, C
79-2007-WAI, C 79-241-WAI (February 26, 1985; January 29 and 30, 1985).

Testimony of Daniel R. Fischel in Re: Robert J. Lawrence v. Grumman Corp. Pension Plan, et
al., United States District Court for the Eastern District of New York, No. CV-81-3530
(December 19, 1983).

Testimony of Daniel R. Fishel in Re: Telvest, Inc. v. Junie L. Bradshaw, et al. and American
Furniture Company, United States District Court, for the Eastern District of Virginia
Richmond Division, No. CA-79-0722-R (December 4, 1981).

Exhibit 5
Page 140

## **OTHER ACTIVITIES**

Member, American Economic Association, American Finance Association.

Member of the Board of Overseers of the Becker-Friedman Institute at the University of Chicago.

Former Advisor to the Harvard Program on Corporate Governance at Harvard University.

Former Member, Board of Directors, Center for the Study of the Economy and the State.

Former Member, Mid-America Institute Task Force on Stock Market Collapse.

Have acted as a consultant and/or advisor to the New York Stock Exchange, the National Association of Securities Dealers, the Chicago Board of Trade, the Chicago Board Options Exchange, the Chicago Mercantile Exchange, the New York Mercantile Exchange, the Federal Trade Commission, the Department of Labor, the Securities and Exchange Commission, the Canadian Securities and Exchange Commission, the United States Department of Justice, the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the Federal Housing Finance Agency, and the Office of Thrift Supervision.

Referee, Journal of Financial Economics, Journal of Law and Economics, Journal of Legal Studies.

Participant and speaker at multiple conferences on the Economics of Corporate, Securities and Commodities Law and the Regulation of Financial Markets.

Former Chairman, American Association of Law Schools' Section on Law and Economics.

Exhibit 5
Page 141

# Appendix B

Exhibit 5
Page 142

## Materials Relied Upon

Court Document

Third Amended Complaint, April 17, 2017

Expert Report

Report on Market Efficiency of Steven P. Feinstein, Ph.D., CFA dated December 8, 2017

Deposition

Transcript of Videotaped Deposition of Steven P. Feinstein, Ph.D, CFA, February 9, 2018

Bates Stamped Documents

EPL-0003291-98

EPL-0004469-75

FEINSTEIN 0002854.xlsx

SEC Filings

Form 4 filed by Stephen J. Sather, May 21, 2015

Form 4 filed by Edward J. Valle, May 21, 2015

Form 4 filed by Trimaran Pollo, May 21, 2015

Amended Form 4 filed by Trimaran Pollo, May 22, 2015

Exhibit 5
Page 143

News Articles

*Reuters*, "BUZZ-El Pollo Loco Holdings Inc: Hit again on existing holder sale," May 20, 2015

*Investor's Business Daily*, "Shake Shack Hits New High Amid NYC Flagship Reopening," May 20, 2015


Data

CRSP US Stock and Index Databases ©2017 Center for Research in Security Prices (CRSP), The University of Chicago Booth School of Business.

Bloomberg, L.P.

- 2 -

Exhibit 5
Page 144