# EXHIBIT C

Exhibit C
Page 012

```
 1            UNITED STATES DISTRICT COURT
 2            CENTRAL DISTRICT OF CALIFORNIA
 3                  SOUTHERN DIVISION
 4
 5   DANIEL TUROCY, et al.,         )
 6   Individually and on behalf     )
 7   of all others similiarly       )
 8   situated                       )
 9              Plaintiffs,         )
10   vs.                            ) Case No.
11   EL POLLO LOCO HOLDINGS,        ) 8:15-cv-01343-DOC-KES
12   INC., et al.                   )
13              Defendants.         )
     _____
14       Videotaped Deposition of DANIEL FISCHEL
15            Thursday, April 12, 2018
16                  10:00 a.m.
17              155 North Wacker Drive
18              Chicago, Illinois 60606
19
20   Reported by:
21   JO ANN LOSOYA, CSR
22   C.S.R. No. 84-002437
23   JOB No. 2853211
24
25   PAGES 1 - 89
```

Page 1

Veritext Legal Solutions
866 299-5127

Exhibit C
Page 013

```
 1         Q.    Are you aware there were 276 market
 2    makers of El Pollo Loco stock during the class
 3    period?
 4         A.    I don't recall if I was ever aware of
 5    that.
 6         Q.    Is that a lot of market makers for a
 7    company?
 8               MR. FUMERTON:  Objection to form.
 9    BY THE WITNESS:
10         A.    It's a pretty vague question.
11         Q.    Well, in comparison to other stocks, is
12    276 market makers high or low, somewhere in the
13    middle?
14               MR. FUMERTON:  Same objection.
15    BY THE WITNESS:
16         A.    I don't know without checking.
17         Q.    Mr. Fischel, when a market maker
18    facilitates a public stock transaction, is that
19    considered two separate transactions?
20               MR. FUMERTON:  Objection to form.
21    BY THE WITNESS:
22         A.    I don't know what you mean by "consider."
23         Q.    So if someone sells a stock on the open
24    market and a market maker is utilized and there's a
25    corresponding purchase of those stocks, does the
```

1    market maker buy those stocks from the seller and
2    then sell those stocks to the purchaser in two
3    separate transactions or is that just one
4    transaction?
5              MR. FUMERTON:  Objection to form.
6    BY THE WITNESS:
7         A.   I'm not sure how to answer that question.
8    If there are two separate transactions, then it is
9    two separate transactions.  If there aren't, then
10   it's not two separate transactions.
11        Q.   So there's not -- Strike that.
12                  So there isn't a typical manner in
13   which a market maker performs its duties in a stock
14   transaction?
15             MR. FUMERTON:  Same objection.
16   BY THE WITNESS:
17        A.   I didn't say that either.
18        Q.   Is there a typical manner in which a
19   market maker performs its duties in a stock
20   transaction?
21             MR. FUMERTON:  Same objection.
22   BY THE WITNESS:
23        A.   I think it could depend on the relevant
24   facts and circumstances.
25        Q.   I'm just referring to a typical open

```
 1                    (Deposition Exhibit 59 was
 2                     marked for identification.)
 3    BY MR. LLORENS:
 4         Q.   Mr. Fischel, I'm going to hand you what
 5    is being marked as Exhibits 57, 58 and 59.
 6                    Exhibit 57, Mr. Fischel, is the Form
 7    144 of Trimaran Capital Partners.  And Exhibit 58 is
 8    the Form 144 of Steven Sather, and Exhibit 59 is the
 9    Form 144 of Edward Valle.
10                    Do you recognize these documents?
11         A.   Do you mean do I remember seeing them
12    before?
13         Q.   Yes.  Have you reviewed these before?
14         A.   No, not that I recall.
15         Q.   So, you don't know that Jefferies is
16    listed as either a broker or a market maker on these
17    documents?
18              MR. FUMERTON:  Objection, form.
19    BY THE WITNESS:
20         A.   No, I didn't know that.  It's not really
21    relevant for purposes of my opinion.
22         Q.   Why not?
23         A.   Because it doesn't change what I said
24    about my understanding of Jefferies being the
25    purchaser.
```

```
 1          Q.    What was Skadden Arps' role in the
 2    Rule 144 transaction?
 3          A.    I don't know.
 4          Q.    Did you ask anyone?
 5          A.    No.
 6          Q.    That didn't concern you?
 7          A.    No.
 8          Q.    Is there anywhere in this representation
 9    letter where it supports a statement that Jefferies
10    was the actual purchaser in the Rule 144
11    transaction?
12                MR. FUMERTON:  Objection to form.
13    BY THE WITNESS:
14          A.    I don't see those words, but obviously
15    the document speaks for itself.
16          Q.    In fact, there is a space there for a
17    broker to be filled in, correct?
18                MR. FUMERTON:  Objection to form.
19    BY MR. LLORENS:
20          Q.    If you look at the very first sentence.
21          A.    Yes, I see that.
22          Q.    Do you see a space anywhere for a
23    purchaser to be filled in?
24                MR. FUMERTON:  Objection to form.
25
```

Page 61

```
 1    BY THE WITNESS:
 2         A.    Do I see the word "purchaser"?
 3         Q.    Correct.
 4         A.    Again, I think the document speaks for
 5    itself, but I don't see the word "purchaser."
 6         Q.    Do you see a bracket for the word "buyer"
 7    to be filled in?
 8               MR. FUMERTON:  Same objection.
 9    BY THE WITNESS:
10         A.    Do I see the word "buyer," no.  Again the
11    document speaks for itself but...
12         Q.    Do you know when the document was signed?
13         A.    No.
14         Q.    And, in fact, there isn't even a date on
15    the document, correct?
16         A.    Not a specific date.  There's a year.
17    But not a day that I saw, but again, the document
18    speaks for itself.
19         Q.    Do you know if there's a final version of
20    this document?
21         A.    No.
22               MR. FUMERTON:  Objection to form.
23               MR. LLORENS:  We can take a break.
24               THE VIDEOGRAPHER:  We are going off the
25    record at 11:32 a.m.  This is the end of Media Set
```

Page 62

```
 1   marked as Exhibit 62.
 2                    (WHEREUPON, discussion was had
 3                    off the record.)
 4            THE VIDEOGRAPHER:  We are back on the
 5   record at 11:47 a.m.
 6                    (Deposition Exhibit 62 was
 7                    marked for identification.)
 8   BY MR. LLORENS:
 9        Q.   Exhibit 62 is El Pollo Loco's Second
10   Quarter 2015 Form 10-Q.  Have you reviewed this
11   document before, Mr. Fischel?
12        A.   I think I said earlier I may have seen it
13   or certainly may have seen it described in pleadings
14   or briefs that I have seen.
15        Q.   You did not rely on this document in
16   forming your opinion though, correct?
17        A.   I don't think I specifically relied on
18   this document, correct.
19        Q.   Can you turn to Page 21 of the 10-Q.
20        A.   Okay.
21        Q.   If you go down to Note E.  Note E states:
22   "In the second quarter 2015, LLC, are our largest
23   shareholder, which was at the time our majority
24   shareholder, and which possesses under stockholders
25   agreement registration rights for which we bear the
```

Page 68

```
 1    costs sold 5.4 million shares of common stock in a
 2    block trade to various investors."
 3              Do you see that?
 4        A.    I do.
 5        Q.    Have you read that before?
 6        A.    Again, I just don't recall whether I have
 7    read it or whether I have seen it in a pleading in
 8    this case.
 9        Q.    So this indicates that the shares were --
10    the 144 transaction was to a number of purchasers,
11    and not just Jefferies, correct?
12              MR. FUMERTON:  Objection to form.  The
13    document speaks for itself.
14    BY THE WITNESS:
15        A.    I don't know whether it says that or not.
16        Q.    What do you read it to say?
17        A.    Exactly what it says.
18        Q.    And you do agree that this note is
19    referring to Trimaran's shares in the 144
20    transaction, correct?
21              MR. FUMERTON:  Same objection.
22    BY THE WITNESS:
23        A.    You know, I just don't want to
24    characterize the document exactly what's being
25    referred to other than what's stated in Note E.
```

Page 69